IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Tammy Barker, Timothy Robert Barker, and Melisa Merryman, on behalf of themselves and on behalf of those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 50015 |
| v. | ) ) | Judge Reinhard |
| | ) | Magistrate Judge Mahoney |
| Local 150, International Union of Operating Engineers, AFL-CIO, | ) ) ) | Trial by Jury Demand |
| Defendant. | ) ) | |

**LOCAL 150's MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS OR STAY**

On February 22, 2008, Plaintiffs filed their four-count First Amended Complaint. In Count I, Plaintiffs allege a violation of the Drivers Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721, *et seq.*, on behalf of Tammy Barker, Timothy Robert Barker, Melisa Merryman, and an unnamed class of 5,000,000 of other plaintiffs (Complaint ¶¶ 1, 19, 30). Counts II, III, and IV are only filed on behalf of Tammy Barker. In Count II, Ms. Barker seeks a declaration from this Court that Local 150 has engaged in unlawful, non-privileged conduct and further seeks an injunction prohibiting Local 150 from picketing (id. at ¶¶ 69-73). In Counts III and IV, Ms. Barker alleges the torts of intentional infliction of emotion distress and invasion of privacy/intrusion upon seclusion, respectively (id. at ¶¶ 74-88). Local 150 now moves pursuant to Rules 12(b)(1) and (6) to dismiss or stay the Complaint in its entirety, or, in the alternative, stay these proceedings pending the resolution of MES, *et al.* v. Local 150, *et al.*

**BACKGROUND**

Tammy Barker is an employee of Professional Service Industries, Inc. ("PSI"). PSI is a non-union company that is currently embroiled in a labor dispute with Local 150 (Complaint ¶ 47).[1] PSI provides materials testing services at construction sites throughout northern Illinois. Local 150 has been picketing PSI to protest its commission of an unfair labor practice since 2005. When an employer's worksite is not fixed (like in the manufacturing setting), federal law gives a union the right to engage in an "ambulatory" picket and follow the struck employer from jobsite to jobsite. Santa Anna Lumber Co., 87 NLRB No. 135 (1940); NLRB v. Brewery Workers, 272 F.2d 817 (10th Cir. 1959); Coca-Cola Bottling, 184 NLRB 84, 94 (1970); Superior Sanitation, Inc., 234 NLRB 454 (1978); Geske & Sons, 317 NLRB No. 26 (1995).

**PROCEDURAL HISTORY**

On February 10, 2005, PSI and two other non-union construction materials testing firms ("MES Plaintiffs") filed a seven-count complaint in this Court against Local 150 and various others, MES, *et al.* v. Local 150, *et al.*, Case No. 05 C 50023 (MES Complaint attached hereto as Exhibit A).[2] There, the MES Plaintiffs alleged, *inter alia*, that agents of Local 150 violated various provisions of the Illinois Criminal Code in their dealings with Ms. Barker (Ex. A at 55-56). The MES Plaintiffs supported their Complaint with a 44-paragraph affidavit from Ms. Barker (Ex. A at Exhibit A). In the course of the litigation, Ms. Barker has served as a party representative of Plaintiff PSI at depositions and court proceedings (see Transcript of March 17, 2008 hearing before Judge Kapala (attached hereto as Exhibit B) at 140).

On March 17, 2005, the MES Plaintiffs and Local 150 entered into an Agreed Temporary Restraining Order wherein all parties agreed to refrain from "causing unsafe motoring conditions

---

[1] All citations to Plaintiffs' First Amended Complaint as made as (Complaint ¶ __).
[2] The MES Complaint has since been amended three times.

on the highways of Illinois," including exceeding posted speed limits, failing to stop at traffic control signals, cutting in front of vehicles in an unsafe manner, and following vehicles at unsafe distances (March 17, 2005 Order attached hereto as Exhibit C). The Agreed Order has not been vacated or modified; it is still in effect. At no time has this Court found any party to be in violation of the Agreed Order.

On May 15, 2006, the MES Plaintiffs attempted for a second time to enjoin Local 150 from picketing based largely on the allegations provided in an affidavit from Ms. Barker. On May 24, 2006, this Court denied the MES Plaintiffs' motion for a temporary restraining order and for a hearing on a preliminary injunction because it concluded that it lacked subject-matter jurisdiction to enjoin Local 150's picketing (May 24, 2006 hearing transcript attached hereto as Exhibit D). Specifically, Judge Reinhard explained (id.) [emphasis added]:

> However, I look at this in a more practical sense in the whole scheme of [the] Norris-LaGuardia [Act, 29 U.S.C. 101, *et seq*.], which essentially says that these matters are not for the court except for certain exceptions, and I have to determine whether the relief sought here, that is, injunctive relief, is relief that the court feels falls within any of the exceptions. I find it does not.
>
> And I find that – and I think the major premise or argument that plaintiffs have is a fraud exception, and that comes the closest to my finding that the court might have jurisdiction. However, in looking at the cases, I think—and the [A]ct—I think that there is an argument that the matter grows out of a labor dispute. It originally grew out of a labor dispute. The lawsuit was filed. And, granted, the picketing that is going on now relates to the lawsuit. It still grows out of a labor dispute. ***

On November 20, 2006, Ms. Barker filed with the Circuit Court of McHenry County a five-count complaint and petition for injunctive relief against Local 150 (McHenry County Complaint attached hereto as Exhibit E). On November 27, 2006, the Court denied Plaintiff's Emergency Motion for a Temporary Restraining Order (Order attached hereto as Exhibit F). On December 15, 2006, Local 150 moved to dismiss Ms. Barker's claim, in part, because her state

3

torts (including the tort of IIED) were preempted by federal labor law. On January 9, 2007, Ms. Barker dismissed her Complaint (Order attached hereto as Exhibit G).

On May 17, 2007, the MES v. Local 150 case was transferred from Judge Reinhard to Judge Kapala (MES docket #347). On March 5, 2008, Plaintiff PSI filed a motion in MES v. Local 150 in which it sought to enjoin preliminarily all ambulatory picketing at the home and/or surrounding the home of Tammy Barker (MES docket #391). PSI supported its Motion with a 47-paragraph Declaration from Ms. Barker (Barker Declaration attached hereto as Exhibit H; see also MES docket #395). The allegations in Ms. Barker's Declaration are virtually identical to the allegations found in this Complaint in paragraphs 49(a) through 49(ppp). On March 7, 2008, Judge Kapala entered an Agreed Temporary Restraining Order that provided, in part (Order attached hereto as Exhibit I):

1. This matter is set for preliminary injunction on Plaintiff PSI's Request for injunctive relief enjoining all picketing at the home and/or surrounding the home of PSI employee Tammy Barker until the hearing in this Court on March 13, 2008, at 9:00 a.m.

2. Without waiving any other claims or defenses, the parties agree that Local 150 will not monitor and/or follow Ms. Barker from her home provided she commutes first to the PSI shop in Elgin, Illinois and does not leave for work sites from home, and returns to the PSI shop prior to ending her work day.

On March 13 and 17, 2008, the parties presented testimony to Judge Kapala on the preliminary injunction motion; the matter has been continued until April 14, 2008 (MES docket #408). Ms. Barker has already called the following local law enforcement officials to testify in support of her motion: Sergeant Richard Riggle, West Dundee Police Department (Ex. B at 24); Chief of Police Edward Fetzer, Cary Police Department (Ex. B. at 65); Officer Arturo Garcia, East Dundee Police Department (Ex. B at 102); and Officer Michael Orsi, Cary Police Department (Ex. B at 120-21). All of Ms. Barker's witnesses denied witnessing any acts of

violence or criminal conduct directed at Ms. Barker by any agents of Local 150 (Ex. B at 55, 57, 94, 111, 112, 140, 141, 142, 144, 145, 147). Ms. Barker has already testified on direct; her cross-examination will begin on April 14th. In the proceedings before Judge Kapala, Ms. Barker has been identified as the party representative of Plaintiff PSI and has been personally represented at the hearing by Mr. Hanlon, who is counsel of record in this case (Ex. C at 140).

## STANDARD OF REVIEW

Rule 12(b)(1) provides for the dismissal of an action for lack of subject-matter jurisdiction. United Phosphorous, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." Id. A Rule 12(b)(6) motion allows a court to dismiss a matter when the plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." Pugel v. Univ. of Ill., 378 F.3d 659, 662 (7th Cir. 2004). Although the pleading requirements under FRCP 8 are minimal, a plaintiff can plead himself out of court by including factual allegations that show his legal rights were not invaded. Pugel, 378 F.3d at 667. In ruling on a motion to dismiss, a court may take judicial notice of pleadings and orders entered in previous cases. General Elect. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-82 (7th Cir. 1997). A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. Menominee Indian Tribe of Wisc. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998).

## ARGUMENT

**I.    This Entire Matter Should Be Dismissed or Stayed Pending Resolution of *MES, et al. v. Local 150, et al.***

"It is the duty of a federal district court to avoid duplicative litigation in more than one federal court." Whirlpool Fin. Corp. v. Metropolis Capital Group, Case No. 90 C 5845, 1991 U.S. Dist. LEXIS 14243 at *9 (N.D. Ill. Oct. 7, 1991), citing, Colorado River Water

5

Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  "When related cases are pending in two federal courts, there is an inherent power in each of those courts, when presented with an appropriate motion, to stay the proceedings before it in deference to the related action."  Id. "Generally, when suits involving same parties, and issues are filed in two federal district courts, the first case takes priority."  M Credit, Inc. v. Cadlerock, LLC, Case No. C 1690, 2003 U.S. Dist. LEXIS 13319 at *9 (N.D. Ill. July 31, 2003).

As explained above, the Complaint in the MES matter was accompanied by a 44-paragraph affidavit from Tammy Barker.  The MES Plaintiffs have moved for injunctive relief at least three times.  In May of 2006, this Court denied the MES Plaintiffs' motion to enjoin Local 150's ambulatory picketing on the grounds that it lacked jurisdiction under the Norris-LaGuardia Act to enjoin picketing (Ex. D; see also MES docket #255).  After the MES matter was transferred to Judge Kapala, the MES Plaintiffs brought another motion to enjoin ambulatory picketing involving PSI employee Tammy Barker.  Notably, the motion for preliminary injunctive relief filed in the MES case is supported by a Declaration from Ms. Barker that contains allegations virtually identical to the allegations in Paragraphs 49(a)-(ppp) of the Complaint in this case.  Barker has already testified in the MES case and was represented at the hearing by her counsel of record in this case, Mr. Hanlon.  Thus, the MES case and this case involve the same issues (the legality of Local 150's ambulatory picket), the same parties and/or their privities (Local 150 and Ms. Barker), and Ms. Barker has been personally represented by the same lawyer, Mr. Hanlon, in both proceedings.  The two actions are duplicative, and this Court should stay these proceedings in deference to the proceedings before Judge Kapala.

Importantly, the third and likely final day of testimony on the MES Plaintiffs' Motion for Preliminary Injunction is scheduled for April 14th.  The parties' Rule 56 Motions are currently

6

due on April 17, 2008. The MES Plaintiffs have requested a permanent injunction prohibiting Local 150 from picketing any of its employees, including Tammy Barker. In contrast, the parties in this case have not even commenced discovery. Given the posture of the two cases, the MES case is far closer to a final judgment than is this case. Significantly, given Ms. Barker's status as a party representative of PSI and the full and fair litigation of the issues affecting Ms. Barker, a final judgment entered in the MES case would have preclusive effect in this case under principles of collateral estoppel.

Finally, Local 150 has been defending various attacks from Ms. Barker since 2005. The cumulative effect of the spurious motions, the frivolous state court lawsuit, and now this lawsuit (all challenging the same conduct) has been extremely burdensome on Local 150. After over three years of delay by the MES Plaintiffs, a final resolution of the MES case is in sight. Local 150 ought not be required to undergo duplicative proceedings in this case to resolve the same issue at play in the MES case, i.e., the legality of Local 150's ambulatory picket. This entire case should be dismissed or, at a minimum, stayed pending final resolution of the MES case.

## II.     Tammy Barker's Declaratory Judgment Action Should Be Dismissed.

In Count II, Ms. Barker "seeks a Declaration by this Court that the actions of Local 150, in stalking, following, intimidating and harassing Mrs. Barker . . . are unlawful and not privileged . . ." (Complaint ¶¶ 1, 73(a)). In addition, in Count II Ms. Barker seeks preliminary and permanent injunctions prohibiting Local 150 from engaging in an ambulatory picket of Ms. Barker (id. at ¶¶ 73(b) and (c)). Local 150 has argued from the outset of the MES case that its ambulatory picketing is protected by Section 7 of the NLRA. This Court accepted Local 150's argument when it denied the MES Plaintiffs' Motion for Preliminary Injunction (see Ex. D; MES docket #255). At no time has Local 150 argued that its picketing was "privileged."

For the purposes of this Motion, Local 150 shall assume that Barker seeks a declaration that Local 150's ambulatory picket is not *protected* by Section 7 of the NLRA. Conspicuously absent from the pleading is the jurisdictional basis for Count II. Local 150 shall assume that Plaintiff brings Count II pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

      **A.**      **Ms. Barker May Not Use the Declaratory Judgment Act to Obtain a Declaration that Local 150's Conduct Was Unlawful.**

The Declaratory Judgment Act, "provides a means for adjudicating the rights of parties prior to the point at which the dispute can be adjudicated by a suit for damages or other affirmative relief." Wireless Mktg. Corp. v. Cherokee, Inc., Case No. 98 C 1406, 1998 U.S. Dist. LEXIS 16114 at *5 (N.D. Ill. Oct. 6, 1998) (emphasis added), citing, Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987). The "primary purpose of [the Declaratory Judgment Act] is 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'" Anderson v. Capital One Bank, 224 FRD 444, 448 (N.D. Ill. 2004), quoting, Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167-68 (7th Cir. 1969). In other words, a declaratory judgment action allows a plaintiff to understand its rights and liabilities so it can adjust its future action to avoid accruing avoidable damages. Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 577 (7th Cir. 1994); see also Steffel v. Thompson, 415 U.S. 452, 480 (1974) (Rehnquist, J. concurring) ("the declaratory judgment procedure is an alternative to the [plaintiff's] pursuit of the arguably illegal activity").

Importantly, a party may not bring a declaratory judgment suit on behalf of its adversary. International Paper Co. v. Androscoggin Energy LLC, Case No. 00 C 6215, 2003 U.S. Dist. LEXIS 10563 at *9 (N.D. Ill. June 20, 2003); see, e.g., In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 340 (N.D Ill 2002) (plaintiff's request for declaration that defendant violated

8

federal law "is not the type of action contemplated by the Declaratory Judgment Act); Household Fin. Serv., Inc. v. Northern Trade Mortgage Corp., Case 99 C 2840, 1999 U.S. Dist. LEXIS 15039 at *8 (N.D. Ill. Sept. 27, 1999) (plaintiff sought declaration that defendant breached parties' agreement and therefore "incorrectly couch[ed] a breach of contract action as a request for declaratory judgment"). In International Paper Co., 2003 U.S. Dist. LEXIS 10563 at *9, the Court summarized the foregoing principles as follows:

> In essence, a declaratory judgment suit allows a party to ask a court if it can do something without incurring liability. It does not permit a party to ask if an adversary can do something without incurring liability.

In this case, Ms. Barker does not seek clarification of her rights or responsibilities in order to adjust her future actions to avoid future damages. Moreover, there is no risk of liability on her part if she continues her present course of action since Local 150 has not threatened to sue Ms. Barker for damages for any of the conduct in which she has engaged. Instead of seeking a clarification of her rights, Ms. Barker asks the Court to declare Local 150's conduct unlawful and "not privileged," (i.e., protected) and to enjoin Local 150's from picketing in the future (Complaint ¶¶1, 73(a)). This is not the type of action contemplated by the Declaratory Judgment Act. In re Trans Union Corp. Privacy Litig., 211 F.R.D. at 340. Count II must be dismissed.

    **B.**    **This Court Lacks Jurisdiction to Enjoin Picketing and/or to Declare Local 150's Picketing Unlawful.**

Federal district courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." Exxon Mobile Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005). The Declaratory Judgment Act is procedural only and does not expand a court's subject-matter jurisdiction, Skelly Oil Co. v. Phillips Petro. Co., 339 U.S. 667, 671-72 (1950); nor does it supply a court with subject matter jurisdiction, In re: VMS Securities Litigation, 103 F.3d 1317,

9

1327 (7th Cir. 1996). This Court lacks jurisdiction to enjoin Local 150 from engaging in ambulatory picketing and/or to declare that Local 150's conduct is not protected by the NLRA.

### 1.     This Court lacks jurisdiction to enjoin picketing.

The Norris-LaGuardia Act provides, "No court of the United States as defined in this Chapter shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute…" 29 U.S.C. § 101. Congress intended the definition of labor dispute to be broad to ensure that federal courts abided by the mandate <u>not</u> to issue injunctions of such disputes. <u>Burlington N. RR Co. v. Bhd. of Maintenance Way Employees</u>, 481 U.S. 429 (1987).

As explained above, this Court previously denied a motion for preliminary injunctive relief brought by the <u>MES</u> Plaintiffs based on allegations set forth in an affidavit from Ms. Barker (Ex. D). This Court concluded that it lacked jurisdiction under the Norris-LaGuardia Act to enjoin the ambulatory picketing of Ms. Barker because the picketing "grew out of a labor dispute" (<u>id.</u>). Even if this Court decides not to stay this case pending resolution of <u>MES</u>, this Court's previous decision demonstrates that it lacks subject-matter jurisdiction to enjoin Local 150's ambulatory picketing under the Norris-LaGuardia Act. Since the Declaratory Judgment Act is only procedural, Ms. Barker may not use her Declaratory Judgment count to obtain a remedy to which she would otherwise be entitled. Therefore, this Court must strike or dismiss Plaintiffs' request for permanent injunctive relief in Count II.

### 2.     This Court lacks jurisdiction to declare that Local 150's conduct is not protected by Section 7 of the NLRA.

As explained above, the Declaratory Judgment Act does not supply a court with subject-matter jurisdiction. <u>VMS Securities Litig.</u>, 103 F.3d at 327. The rule in declaratory judgment actions is that "if, but for the availability of the declaratory judgment procedure, the federal

claim would arise only as a defense to a state created action, jurisdiction is lacking." <u>Northeast Ill. Reg'l Commuter R.R. Corp. v. Hoey et al.</u>, 212 F.3d 1010, 1014 (7th Cir. 2000), <u>quoting</u>, <u>Franchise Tax Bd. v. Const. Laborers Vacation Trust Fund</u>, 463 U.S. 1 (1983). Ms. Barker seeks relief under the state torts of intentional infliction of emotional distress (Count III) and invasion of privacy (Count IV). In those counts, Ms. Barker alleges that Local 150 intentionally caused her emotional distress and invaded her privacy by engaging in an ambulatory picket.

Local 150 has a Section 7 right to engage in ambulatory picketing. Consequently, as is explained more fully below, Local 150 believes Ms. Barker's torts are preempted under <u>San Diego Bldg. and Trades Council v. Garmon</u>, 359 U.S. 236, 245 (1959), since they are based on conduct that is arguably protected by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157. Ordinarily, the federal question (whether the picket is protected by Section 7 of the NLRA) would arise as a defense to a state tort under a <u>Garmon</u> preemption theory. Under <u>Franchise Tax Board</u> and its progeny, this Court lacks subject-matter jurisdiction to entertain the Ms. Barker's declaratory judgment claim since, but for the Declaratory Judgment Act, the federal question (Section 7 of the NLRA) would only arise as a defense to her state torts. Consequently, Plaintiffs' Declaratory Judgment claim must be dismissed.

**III.    Barker's State Torts (IIED and Privacy) Are Preempted by Federal Labor Law.**

In passing the NLRA, Congress intended "to create a uniform, national body of law interpreted and administered by a centralized agency, the [NLRB]." <u>New York Tel. Co. v. N. Y. Dept. of Labor</u>, 440 U.S. 519, 528 (1979). In so doing, "Congress largely displaced state regulation of industrial relations." <u>Wisconsin Dep't of Indus. v. Gould</u>, 475 U.S. 282, 290 (1986). In <u>Garmon</u>, 359 U.S. at 245, the Supreme Court held (emphasis added):

> When an activity is arguably subject to §7 or §8 of the Act, the States <u>as well as the federal courts</u> must defer to the exclusive competence of the National Labor

11

> Relations Board if the danger of State interference with national policy is to be averted.

In other words, "States may not regulate activities that the NLRA protects, prohibits, or arguably protects or prohibits." Gould, 475 U.S. at 286. Courts have consistently held that state IIED claims based on conduct regulated by Section 7 and Section 8 of the NLRA are Garmon preempted, as a matter of law. See, e.g., Baker v. Farmers Elec. Coop., Inc., 34 F.3d 274 (5th Cir. 1994); Richardson v. Krucho & Fries, 966 F.2d 153 (4th Cir. 1992); Carter v. Sheet Workers' Int'l Assoc., 724 F.2d 1472 (11th Cir. 1984).

The gravamen of Ms. Barker's IIED and privacy claims is that she incurred emotional distress as a result of Local 150's picketing (Complaint ¶¶ 44-68, 74-88). As explained above, ambulatory picketing is protected under Section 7 of the NLRA. The limitations on a union's right to picket are found in Section 8(b) of the NLRA. 29 U.S.C. § 158(b). Therefore, Ms. Barker's IIED and privacy claims are preempted by federal law because both claims are based on conduct (picketing) that is both protected by Section 7 and regulated by Section 8 of the NLRA.

**IV.    This Court Does Not Have Supplemental Jurisdiction Over Barker's State Torts.**

Supplemental jurisdiction under Section 1367(a) exists when a federal claim and state law claim "derive from a common nucleus of operative fact," such that ". . . if considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); 28 U.S.C § 1367(a). It is "insufficient that the state and federal claims share a factual background." Microthin.Com, Inc. v. Siliconezone USA, LLC, 2006 U.S. Dist. LEXIS 82976 at *9 (N.D. Ill. Nov. 16, 2006) citing, Berg v. BCS Fin. Corp., 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2006). The issue is whether "the state claims can be resolved or

dismissed without affecting the federal claims." Id., citing, Eager v. Commonwealth Edison Co., 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002).

The only federal question presented in the Complaint is the DPPA claim.[3] The state torts and DPPA claims do not stem from a "common nucleus of operative fact." The operative facts surrounding Barker's claim for IIED and intrusion upon seclusion are set forth in paragraphs 49(a) through 49(ppp) of the Complaint. Plaintiffs expressly acknowledge that those allegations are *only* common to the state torts and do not pertain to the DPPA count (Complaint ¶ 44). More importantly, Plaintiffs expressly exclude the allegations raised in their DPPA claim from Ms. Barker's state tort claims (id.). In their DPPA claim, Plaintiffs allege that Local 150 purchased and used vehicle records as early as 2003, two years prior to the first tortuous conduct alleged by Ms. Barker (Complaint ¶¶ 18, 49(c)). Moreover, the Plaintiffs seek class certification in the DPPA claim on behalf of 5,000,000 people (Complaint ¶ 30). In contrast, Ms. Barker brings her torts claims on behalf of herself (Complaint ¶¶ 74-88). Based on the allegations in the Complaint, the DPPA claim is unrelated to Ms. Barker's state torts. The claims do not arise from a common nucleus of operative fact. More importantly, Barker's state torts can be dismissed without affecting the federal DPPA claim. Microthin.Com, 2006 U.S. Dist. LEXIS 82976 at *9. Therefore, this Court may not exercise supplemental jurisdiction over Ms. Barker's state torts.

## V.    Barker Failed to Plead the Tort of Intrusion Upon Seclusion.

To plead an "intrusion upon seclusion" claim, the plaintiff is required to plead facts sufficient to establish that: (1) Local 150 committed an unauthorized intrusion or prying into her seclusion; (2) the intrusion was highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering.

---

[3] Even if this Court does not dismiss Barker's Declaratory Judgment count, that court does not provide an independent basis for this Court to exercise supplemental jurisdiction over the state torts. As explained above, the Declaratory Judgment Act is procedural in nature and does not supply this Court with subject-matter jurisdiction.

Busse v. Motorola, Inc. 315 Ill. App.3d 67 (Ill. App. 1st Dist., 2004) citing, Johnson v. Kmart Corp., 311 Ill.App.3d 573, 578 (Ill. App. 1st Dist., 2000).  If the plaintiff fails to allege private facts, "the other three elements of the tort need not be reached." Id. at 72.  Private facts include "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate personal nature." Acosta v. Scott Labor, LLC, 377 F. Supp. 2d, 647, 650 (N.D. Ill. 2005) citing, Green v. Chi. Tribune Co., 286 Ill.App.3d 1, 18 (1st Dist. 1996).  Name, address, social security number, and date of birth are public facts.  Acosta, 377 F. Supp. 2d at 650; Busse, 315 Ill. App. 3d at 72.

Barker has failed to plead private facts.  Barker does not allege that Local 150 entered her home.  Each allegation involves Local 150's pursuit or surveillance of Barker on public roadways or public parking areas.  Furthermore, Barker's motor vehicle records are public records and Barker's address is not a private fact.  Finally, there is no legal authority to state a claim for intrusion upon the seclusion of one's "mind" (Complaint ¶ 83).  Accordingly, this claim must be dismissed for failure to plead the tort of intrusion upon seclusion.

**VI.     The Drivers' Privacy Protection Act Claim and the State Torts Are Untimely.**

If a plaintiff pleads facts that its suit is barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis.  Kauthar Sdn Bhd v. Sternberg, *et al.*, 149 F.3d 659, 670 (7th Cir. 1998).  The DPPA does not contain a limitations period.  "When a federal statute is silent on the proper limitations period, federal courts determine the timeliness of a suit by reference to an appropriate statute of limitations, the best choice being the most closely analogous time limitation under state law." Wilson v. Garcia, 471 U.S. 261, 266-267 (1938); see also UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 703 (1966); Reed v. United Transp. Union, 488 U.S. 319, 323 (1989).  Because the DPPA was enacted to prohibit the release of certain

Case 3:08-cv-50015 Document 16 Filed 03/28/2008 Page 15 of 16

personal and highly personal information (18 U.S.C. § 2721(a)(1) and (2)), the most closely analogous statute of limitations would be the one applicable for the tort of invasion of privacy.[4]

The statute of limitations for all privacy claims is one year. 735 ILCS 5/13-201. Barker alleges that Local 150 obtained computer disks from the Illinois Secretary of State in 2003, 2004, and 2005 (Complaint ¶¶ 18(b), 20-22). This action was filed on January 21, 2008. Therefore, Barker has failed to satisfy the appropriate one-year statute of limitations, and this Court should dismiss Count I of the Complaint. As stated above, the statute of limitations period for an invasion of privacy tort under Illinois law is one year. All facts alleged by Barker in paragraphs 49(a) through 49(rr) occurred more than one year prior to the filing of this Complaint. Therefore, those paragraphs must be stricken as applied to Count IV.

## CONCLUSION

For all the foregoing reasons, Local 150 respectfully requests that this Court dismiss with prejudice Plaintiffs' First Amended Complaint in its entirety, or, in the alternative, stay this matter pending the resolution of MES, *et al.* v. Local 150, *et al.*

Date: March 28, 2008

Respectfully submitted,

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO

By: s/Bryan P. Diemer
One of the Attorneys for Defendant Local 150

Attorneys for Defendant:
Dale D. Pierson
Bryan P. Diemer
Lauren S. Shapiro
Local 150 Legal Department
6140 Joliet Road
Countryside, IL 60525
Ph. 708/579-6663; Fx. 708/588-1647

---

[4] While Illinois does have a law which parallels the DPPA, it similarly fails to designate a proper statute of limitations. 625 ILCS 5/2-123.

15

**CERTIFICATE OF SERVICE**

       The undersigned, an attorney of record, hereby certifies that on March 28, 2008, he electronically filed ***Local 150's Memorandum of Law in Support of Its Motion to Dismiss or Stay*** with the Clerk of Court using the CM/CM/ECF system which sent notification to the following:

| | |
|---|---|
| Mr. Robert T. Hanlon | Mr. Dean J. Polales |
| The Law Offices of Robert T. Hanlon & Assoc., P.C. | Ungaretti & Harris, LLP |
| 14212 Washington Street | Three First National Plaza, Suite 3500 |
| Woodstock, IL  60098 | Chicago, IL  60602 |

                             By:   s/Bryan P. Diemer
                                      One of the Attorneys for Defendant Local 150

Attorneys for Defendant:
Dale D. Pierson
Bryan P. Diemer
Lauren S. Shapiro
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

I:\LI\Barker, Barker, & Merryman v. Local 150\Pleadings\Motion to Dismiss\memo.03-28-08.doc