# EXHIBIT B

1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    WESTERN DIVISION

3   MIDWEST ENGINEERING            )
    SERVICES, INC., et al.,        )    Docket No. 05 C 50023
4                                  )
              Plaintiffs,          )    Rockford, Illinois
5                                  )    Thursday, March 13, 2008
          v.                       )    9:00 o'clock a.m.
6                                  )
    INTERNATIONAL UNION OF         )
7   OPERATING ENGINEERS LOCAL      )
    150 AFL-CIO, et al.,           )
8                                  )
              Defendants.          )
9
               TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE FREDERICK J. KAPALA

11  APPEARANCES:

12  For the Plaintiffs:        SMETANA & AVAKIAN
                               (39 S. LaSalle Street,
13                              Suite 1218,
                               Chicago, IL   60603) by
14                             MR. GERARD C. SMETANA

15                             SMETANA & AVAKIAN
                               (5211 Port Royal Road,
16                              Suite 103,
                               Springfield, VA  22151) by
17                             MR. MICHAEL E. AVAKIAN

18                             MC GREEVY WILLIAMS PC
                               (6735 Vistagreen Way,
19                              Rockford, IL  61107) by
                               MR. JEFFREY P. ORDUNO
20
    For the Defendants:        LOCAL 150 LEGAL DEPARTMENT
21                             (6140 Joliet Road,
                                Countryside, IL  60525) by
22                             MR. CHARLES R. KISER

23  Also Present:              MS. TAMMY BARKER
                               MR. RYAN DREW
24                             MR. ROBERT T. HANLON

25

1    Court Reporter:                    Mary T. Lindbloom
                                        211 South Court Street
2                                       Rockford, Illinois  61101
                                        (815) 987-4486
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Riggle - Cross

1    it says that Ms. Barker has reported incidents of disorderly

2    conduct, stalking, let's take the first one, disorderly conduct.

3    Again, if I'm understanding correctly, there was no arrest, no

4    citation of Mr. McGill for disorderly conduct; is that correct?

5    A.   That's correct.

6    Q.   And there was no citation or arrest for stalking, correct?

7    A.   That's correct.

8    Q.   Would it be fair to say that then you, based on what

9    Ms. Barker told you, fit her description of what she alleged to

10   have happened into sections of the Illinois state law where they

11   seemed to fit based on what she said?

12   A.   If there was a violation that occurred that day, those are

13   two sections of the criminal code that I could best make a

14   referral.

15        Now, my difficulty that day is that, again, I have to

16   deal with circumstances that occurred within the city limits of

17   West Dundee.  There was a lot more going on that was reported to

18   me, but the circumstances that occurred within West Dundee were

19   driving from the southern limits of the village to the Office

20   Max store.  So, I referred her to the State's Attorney because

21   there was no allegation of threats, violence, confrontation.

22   So, I referred her, based on that information, confining the

23   scope of my report to incidents that occurred in West Dundee or

24   were alleged to have occurred in West Dundee.

25   Q.   Thank you.

Riggle - Cross

1    was information that you attached to your referral to the Kane

2    County State's Attorney?

3    A.   The attachment to the State's Attorney came in the form of a

4    fax later.  But, as I recall, Tom Rottman on the scene at the

5    Century Plaza Shopping Center actually had something with him

6    that indicated why their actions were justified.

7    Q.   And in 2005 there were no allegations, again, of threats of

8    violence; is that correct?

9    A.   No.  The complaint was following and videotaping, which in

10   neither case did they deny that that was going on.  The car was

11   following and surveilling.

12   Q.   It wouldn't be a violation, to your knowledge, of any state

13   law to engage in videotaping if one car is following another

14   car?  Does it violate the act for the car behind to follow and

15   to videotape the car in front?

16   A.   Not to my knowledge.  There's no expectation of privacy on a

17   public highway.  So, to my knowledge, there is no violation in

18   videotaping on a public roadway.

19   Q.   I want to, if I could, direct your attention to one other

20   document, Officer Riggle, and that would be -- I believe it to

21   be Plaintiff's Exhibit Number 2.  It's a two-page document.  The

22   second page on this document is where I'd like to direct your

23   attention to.  You completed this document; is that correct?

24   A.   Yes.

25   Q.   As you get to the bottom of this document, there's an

Fetzer - Cross

1    order.  I don't want to spend too much time on these.  But

2    Number 23, Plaintiff's Exhibit Number 23, has a date of a call

3    received, I guess, on Tuesday, November 6th, 2007.

4        I want to direct your attention to the disposition

5    portion of the document, that box on the right-hand side.  It

6    says administratively closed.  Do you see that?

7    A.  Yes, sir.

8    Q.  What does that mean?

9    A.  That means that -- basically, administratively closed.

10   There was no further investigation or further action that needed

11   to be taken on this report.

12   Q.  And if we were to see that same entry on other reports of

13   this type, that would indicate that it was closed, and no

14   further action taken?

15   A.  Yes, sir.

16   Q.  To your knowledge, Deputy Chief, as I understand, you have

17   just sort of a general broad-brush knowledge of the situation,

18   but to your knowledge, has there been any complaints that have

19   come into the Cary Police Department of any violence directed

20   towards Ms. Barker?

21   A.  Not to my specific knowledge, no.

22   Q.  Any incidents of any unsafe driving?

23   A.  I believe I've seen a report that indicates that.  I would

24   have to reflect on these.  But I do believe I saw one report

25   when I was reviewing them just this morning that indicated some

Gracia - Cross

1    Q.  He was peaceful and respectful, correct?

2    A.  Yes.

3    Q.  At that time he explained to you that he was involved in a

4    labor dispute involving the company that Ms. Barker works for?

5    That's correct?

6    A.  Correct.

7    Q.  You didn't arrest Mr. Drew at that time?

8    A.  No.

9    Q.  East Dundee has not arrested Mr. Drew at any point

10   thereafter, correct?

11   A.  Not that I'm aware of.

12   Q.  In fact, if I understood your testimony correctly -- and I

13   don't want to say that because I don't want to get it wrong, but

14   based on Plaintiff's Exhibit Number 25, East Dundee took no

15   further action, correct?

16   A.  Correct.

17   Q.  Now, again looking at Plaintiff's Exhibit Number 25, it

18   has -- on the first page it calls it a general incident report.

19   Are there other types of reports that officers would fill out,

20   something other than a general incident report?

21   A.  It could be, yes.

22   Q.  What would that report be?

23   A.  We have different reports for accidents, abandoned vehicle

24   type of things.  There are different report forms for that.  We

25   have just basic supplemental reports.

Gracia - Cross

1  Q.  This report, Plaintiff's Exhibit Number 25, though, doesn't

2  document any type of accident, does it?

3  A.  No accident.

4  Q.  It doesn't document any threats of violence to Ms. Barker,

5  does it?

6  A.  No.

7  Q.  And in this instance that we're talking about on the 25th of

8  May in 2006, there were no allegations of any violence on that

9  day, were there?

10  A.  No.

11  Q.  And although it's -- again taking you back to the first

12  page, although it's got this driving complaint classification on

13  it, there were no instances of any traffic rules broken on that

14  date to your knowledge, correct?

15  A.  Not to my knowledge, no.

16  Q.  And there were no citations issued to Mr. Drew for breaking

17  any traffic rules, correct?

18  A.  Correct.

19       MR. KISER:  At this time I have no further questions.

20  Thank you.

21            REDIRECT EXAMINATION

22  BY MR. AVAKIAN:

23  Q.  Officer, with respect to the report that you filled out,

24  which is Exhibit 25, although it's set up as a driving

25  complaint, there is vehicle makes and models of car --

received
3/25/08

1              IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
2                      WESTERN DIVISION

3   MIDWEST ENGINEERING              )
    SERVICES, INC., et al.,          )      Docket No. 05 C 50023
4                                    )
                    Plaintiffs,      )      Rockford, Illinois
5                                    )      Monday, March 17, 2008
           v.                        )      1:30 o'clock p.m.
6                                    )
    INTERNATIONAL UNION OF           )
7   OPERATING ENGINEERS LOCAL        )
    150 AFL-CIO, et al.,             )
8                                    )
                    Defendants.      )
9
                                  VOLUME 2
10                   TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE FREDERICK J. KAPALA
11
    APPEARANCES:
12
    For the Plaintiffs:        SMETANA & AVAKIAN
13                             (39 S. LaSalle Street,
                                Suite 1218,
14                              Chicago, IL   60603) by
                               MR. GERARD C. SMETANA
15
                               SMETANA & AVAKIAN
16                             (5211 Port Royal Road,
                                Suite 103,
17                              Springfield, VA  22151) by
                               MR. MICHAEL E. AVAKIAN
18
                               MC GREEVY WILLIAMS PC
19                             (6735 Vistagreen Way,
                                Rockford, IL  61107) by
20                             MR. JEFFREY P. ORDUNO

21  For the Defendants:        LOCAL 150 LEGAL DEPARTMENT
                               (6140 Joliet Road,
22                              Countryside, IL  60525) by
                               MR. CHARLES R. KISER
23
    Also Present:              MS. TAMMY BARKER
24                             MR. RYAN DREW
                               MR. ROBERT T. HANLON
25                             MR. THEODORE CHRISTOPHER

1    Court Reporter:              Mary T. Lindbloom
                                  211 South Court Street
2                                 Rockford, Illinois  61101
                                  (815) 987-4486
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Orsi - Direct

1            THE CLERK:  05 C 50023, Midwest v. International.

2            THE COURT:  The case comes before the court for a

3    continued hearing on a motion for preliminary injunction.

4    Appearing on behalf of the plaintiff is Michael Avakian, Jeffrey

5    Orduno, and Gerard Smetana.

6            MR. SMETANA:  Good afternoon.

7            THE COURT:  There's somebody else at the table.

8            MR. AVAKIAN:  Yes, your Honor.  This is my assistant,

9    Theodore Christopher.

10           THE COURT:  All right.  And representing the defendant

11   local is Charles Kiser.

12           MR. KISER:  That's correct, your Honor.

13           THE COURT:  Ready to call your next witness?

14           MR. AVAKIAN:  Yes, your Honor.  We would like to call

15   Officer Orsi.

16           THE COURT:  Good afternoon.

17           THE WITNESS:  Good afternoon.

18       (Witness duly sworn.)

19           MICHAEL ORSI, PLAINTIFF'S WITNESS, SWORN

20                   DIRECT EXAMINATION

21   BY MR. AVAKIAN:

22   Q.  Sir, can you please state your name for the record?

23   A.  Michael Orsi, O-r-s-i.

24   Q.  And, Mr. Orsi, where do you work?

25   A.  Village of Cary Police Department.

Orsi - Cross

1   point out that there's another person sitting at plaintiff's

2   table who was not here present when we previously identified who

3   all was here.  I believe it's the gentleman who's sitting at the

4   back.

5            THE COURT:  All right.  And I've seen you before.  I've

6   misplaced your name, though.

7            MR. HANLON:  Judge, my name is Robert Hanlon.  I have

8   no appearance in this case.  I'm Ms. Barker's personal attorney.

9            THE COURT:  Could you spell your last name for me?

10            MR. HANLON:  H-a-n-l-o-n.

11            THE COURT:  And first name is?

12            MR. HANLON:  First name is Robert.

13            THE COURT:  Thank you.

14            MR. KISER:  And if I could also get some clarification

15   for the record, your Honor, that Mr. Hanlon is Ms. Barker's

16   personal attorney, but Ms. Barker is here, as I understand it,

17   as plaintiff's representative, party rep.  Is that accurate?

18            THE COURT:  I think that's right.

19            MR. AVAKIAN:  That's correct.

20   BY MR. KISER:

21   Q.  Take you to, if you would, Plaintiff's Exhibit Number 21,

22   Officer Orsi.  Look at Plaintiff's Exhibit Number 21.  As I

23   understand it, there was no ticket written here?

24   A.  No.

25   Q.  And it's true that there was no arrest made; is that

Orsi - Cross

1   correct?

2   A.  I'm sorry?

3   Q.  There was no arrest made of any kind?

4   A.  No.

5   Q.  And when you responded to the call, when you arrived on the

6   scene, you weren't responding to a call of any sort of physical

7   violence that was supposedly ongoing, were you?

8   A.  No.

9   Q.  And if that had happened, if you responded and, in fact,

10   there was some law being broken, would you have taken action?

11   A.  Absolutely.

12   Q.  Made an arrest or issued a citation of some kind?

13   A.  If appropriate, yes.

14   Q.  And again looking at Plaintiff's Exhibit Number 21 in the

15   right-hand box, which talked about disposition, it says the

16   subject is legally parked.  And, again, if he had been illegally

17   parked, you would have written him a ticket, correct?

18   A.  Ticket or warned him or what have you.

19   Q.  And that didn't happen in this case?

20   A.  No.

21   Q.  If I could direct your attention to Plaintiff's Exhibit

22   Number 19, if I understand your testimony correctly, you

23   responded to this call; is that correct?

24   A.  Yes, Exhibit 19 I responded to this call.

25   Q.  And the call that came in was an allegation of a parking

Orsi - Cross

1    complaint; is that accurate?

2    A.  Yes.

3    Q.  And the call that came in wasn't any kind of call about any

4    sort of violence taking place at this particular site, was

5    there?

6    A.  No.

7    Q.  And you responded.  And I think it says on the left-hand

8    side of the page, it says that there's a black Crown Victoria

9    sitting in front of the house.  When you arrived on the scene,

10   was a Crown Vic sitting in front of Ms. Barker's house?

11   A.  On this call or any of the calls that I responded to, the

12   vehicle in question was always parked on Wulff Street, which

13   is -- as best I can describe, it's slightly offset from

14   Ms. Barker's house, and it would be a perpendicular street to

15   the street she lives on.  So, it was in the area, but I wouldn't

16   describe it as directly in front.

17   Q.  So, the car was not parked directly in front of her house?

18   A.  No.

19   Q.  And if you could describe for us Main Street in Cary.  It's

20   my understanding -- if you could tell us if it's true or not --

21   that Main Street is a street that runs in downtown Cary; is that

22   correct?

23   A.  Yes.

24   Q.  Relatively busy street, is it not?

25   A.  Yes.

Orsi - Cross

1   A.  Because when the subpoena came in for the reports, the

2   records officer handed me this, stated this was attached to the

3   reports.

4   Q.  Direct your attention to Plaintiff's Exhibit Number 26.

5   It's the supplemental report.  As I understand your testimony,

6   you responded to a call.  Do you know who the call came from?

7   Was that from Ms. Barker, or do you know?

8   A.  I don't recall who actually made the phone call.  I only

9   know that Ms. Barker was the one that had the complaint about

10   what was going on there.

11   Q.  And as you look at Plaintiff's Exhibit Number 26, we're

12   talking about December 10th of '07; is that correct?

13   A.  That's correct.

14   Q.  And it says there was a report of a suspicious incident.

15   Again as you look at Plaintiff's Exhibit Number 26, when you

16   received the call, you weren't responding, were you, to some

17   sort of allegation of physical violence, were you?

18   A.  No.

19   Q.  No arrests were made?

20   A.  No.

21   Q.  No tickets issued?

22   A.  No.

23   Q.  Again, I know this sounds like redundant questions, but if,

24   in fact, you had encountered some law being broken, you would

25   have taken action, correct?

Orsi - Cross

1    A.   Yes, if appropriate.

2    Q.   Called for backup, if necessary?

3    A.   Yes.

4    Q.   Now, again looking at Plaintiff's 26, in that third

5    paragraph it says that Ms. Barker said she had spoken to two

6    State's Attorneys at different times, one of which had told her

7    there was nothing criminal taking place.  Do you recall that

8    conversation?

9    A.   Yes.  She had related that to me while I was speaking with

10   her at the school.

11   Q.   And as you are here today, do you remember which State's

12   Attorney had told her there was no criminal action taking place?

13   A.   I do not.

14   Q.   And then if I understand your testimony correctly, you put a

15   packet together and sent it off to McHenry County State's

16   Attorney?

17   A.   Yes.  After I spoke with my supervisors and Mr. Carroll, it

18   was decided that we would package up every incident which

19   Ms. Barker would have been involved in with relation to this

20   particular incident or group of incidents, and we would send it

21   up to the State's Attorney's Office for review.

22   Q.   And that did take place, correct?

23   A.   Yes.

24   Q.   And Mr. Carroll got back to you and indicated that there was

25   no criminal action taking place at this time; is that correct?

Orsi - Cross

1  A.   Yes.  There would be no action going forward.

2  Q.   And you don't quite remember exactly when it got back to

3  you.  This particular report, December 10 of 2007, when do you

4  think the package of incidents was put together and sent to the

5  State's Attorney's Office?

6  A.   I know I worked on it almost immediately.  It would have

7  been that day that I put it together or the day after and then

8  however long it would take our department to package it up and

9  run it to Woodstock.

10  Q.   And then the State's Attorney getting back to you, do you

11  believe it was after New Year's?

12  A.   It's just hard for me to say.  You know, I would want to say

13  it was within a month, but, you know, it wasn't that long, but I

14  can't say for sure.

15  Q.   Officer Orsi, on any of the incidents that you've testified

16  to where you responded personally, on any one of those

17  occasions, did you have occasion to speak with anyone from

18  Operating Engineers Local 150?

19  A.   I don't believe so.

20        THE COURT:  Anyone from where?

21        MR. KISER:  Operating Engineers Local 150.

22  BY MR. KISER:

23  Q.   I asked you about internally within the police department.

24  I think you testified that you attend roll call every morning --

25  A.   Yes.

# EXHIBIT C

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 50023 | **DATE** | 3/17/2005 |
| **CASE TITLE** | Midwest Engineering vs. International Union | | |

**DOCKET ENTRY TEXT:**

Enter agreed temporary restraining order.

*[signature]*

Notices mailed by judge's staff.

| | Courtroom Deputy Initials: | smw |
|---|---|---|

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| MIDWEST ENGINEERING SERVICES, INC.,<br>PROFESSIONAL SERVICE INDUSTRIES<br>INC., GME CONSULTANTS, INC., and<br>GME CONSULTANTS OF ILLINOIS, INC., | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No.:   05 C 50023 |
| INTERNATIONAL UNION OF OPERATING<br>ENGINEERS, LOCAL 150, AFL-CIO, | )<br>)<br>) | JURY TRIAL REQUESTED |
| and | )<br>) | |
| MIDWEST CONSTRUCTION INDUSTRIES<br>ADVANCEMENT FUND, | )<br>)<br>) | |
| and | )<br>) | |
| ILLINOIS VALLEY CONSTRUCTION<br>INDUSTRY ADVANCEMENT FUND, | )<br>)<br>) | |
| Unnamed Signatory 150 Contractors,<br>In the Relevant Market and Unnamed<br>Co-conspirator Developers, Owners,<br>And Construction Managers, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## AGREED TEMPORARY RESTRAINING ORDER

This matter comes before the Court on March 10, 2005, at approximately 10:30 a.m.,

on the Plaintiffs' Verified Motion for Temporary Restraining Order, with notice to the

Defendants, and the Court having considered the Plaintiffs' Verified Second Amended

Complaint, as well as all other pleadings, exhibits and other written submissions of the parties,

and after having heard the arguments of counsel for the Plaintiffs and Defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), and after considering the stipulated agreement between the Plaintiffs and Local 150, this Court finds as follows:

## FINDINGS OF FACT

1.      The Plaintiffs have filed a Second Verified Amended Complaint against Defendants.  The Plaintiffs are non-union signatory geo-technical engineering, construction monitoring, material environmental testing, and soil and concrete testing companies that allege conduct by the Defendant that endangers the safety of themselves, Plaintiffs' employees and members of the general public.

2.      In its Memorandum in Opposition to the Plaintiffs Verified Motion for Temporary Restraining Order, Local 150 denies the Plaintiffs' allegations, and Local 150 has raised a threshold question regarding jurisdiction.

3.      By agreeing to this order, neither the Plaintiffs nor Local 150 admit to any liability whatsoever.

4.      The Norris-LaGuardia Act, 29 U.S.C. Section 101, does not bar this Court from issuing a Temporary Restraining Order based on the stipulated agreement between the Plaintiffs and Local 150.

IT IS THEREFORE AND HEREBY ORDERED THAT:

a)      Pursuant to the stipulated agreement between the Plaintiffs and Local 150, the Plaintiffs and Local 150, including without limitation, their officers, employees, representatives

2

and/or agents, shall be and hereby are immediately, enjoined and restrained, either directly or indirectly, and whether alone or in concert with others, from:

    (i)    Causing unsafe motoring conditions on the highways of Illinois, including without limitation exceeding posted speed limits, failing to stop at traffic control signals, and/or cutting in front of vehicles in an unsafe manner; and,

    (ii)    Following vehicles at a distance prohibited by ordinary rules of the road or at distances that are otherwise unsafe.

b)    By the stipulated agreement between the Plaintiffs and Local 150, this Agreed Temporary Restraining Order shall remain in full force and effect until further order of this Court or termination of the case; and

c)    The attorneys of record for the Plaintiffs and Local 150 shall be responsible for notifying all persons and/or entities affected by, or subject to, the terms and conditions of this agreed temporary restraining order.

Dated: March ___/7___, 2005.

                    Enter: _____

                             Judge Philip G. Reinhard

Prepared and Approved by:

_____

Michael E. Avakian
Smetana & Avakian
3211 Port Royal Road, Suite 103
Springfield, VA 22151
703-321-9181
703-321-9325 - Fax

Approved by:

_____

Dale D. Pierson, General Counsel
International Union of Operating Engineers,
Local 150, AFL-CIO
Legal Department
6140 Joliet Road
Countryside, IL 60525
708-579-6663
708-588-1647- Fax

3

Gerard C. Smetana
Smetana & Avakian
39 S. LaSalle Street, Suite 1218
Chicago, IL 60603
312-357-0250
312-357-0251 - Fax

Christopher J. Cocoma
Donald Q. Manning
McGreevy Williams, P.C.
6735 Vistagreen Way
P.O. Box 2903
Rockford, Illinois  61132-2903
815-639-3700
815-639-9400 - Fax

Of Counsel:
Smetana & Avakian
39 S. LaSalle Street, Suite 1218
Chicago, IL 60603
312-357-0250
312-357-0251 -Fax

(Motion for admission *pro hac vice* pending)
Thomas M. Triplett
Schwabe Williamson & Wyatt
PacWest Center, Suites 1600-1800
1211 Southwest Fifth Avenue
Portland, Oregon 97204-3795
503-222-9981
503-796-2900 - Fax

# EXHIBIT D

1

1     IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2         WESTERN DIVISION

3  MIDWEST ENGINEERING    )
  SERVICES, INC., et al.,  )  Docket No. 05 C 50023
4             )
      Plaintiffs, )  Rockford, Illinois
5             )  Wednesday, May 24, 2006
     v.      )  10:00 o'clock a.m.
6             )
  INTERNATIONAL UNION OF   )
7  OPERATING ENGINEERS LOCAL )
  150 AFL-CIO, et al.,   )
8             )
      Defendants. )
9

      TRANSCRIPT OF PROCEEDINGS
10   BEFORE THE HONORABLE PHILIP G. REINHARD

11  APPEARANCES:

12  For the Plaintiffs:   SMETANA & AVAKIAN
            (5211 Port Royal Road,
13            Suite 103,
            Springfield, VA  22151) by
14          MR. GERARD C. SMETANA
          MR. MICHAEL E. AVAKIAN
15

  For the Defendants:   LOCAL 150 LEGAL DEPARTMENT
16          (6140 Joliet Road,
           Countryside, IL  60525) by
17          MR. CHARLES R. KISER

18  Court Reporter:     Mary T. Lindbloom
          211 South Court Street
19          Rockford, Illinois  61101
          (815) 987-4486

20

21

22

23

24

25

received 5/25/06

ENTERED 6/25/06

1          THE CLERK:  05 C 50023, Midwest v. International Union.

2          THE COURT:  Good morning.  You don't have to approach.

3   I'm just going to announce my decision.  If you want to say for

4   the record who's here.

5          MR. KISER:  Certainly.  Charles Kiser on behalf of

6   defendant Local 150.

7          MR. SMETANA:  And Gerard C. Smetana for the two

8   plaintiffs, MES and Professional Services Industries, Inc.

9          MR. AVAKIAN:  And Michael Avakian for the two

10  plaintiffs, as well.

11         THE COURT:  All right.  Thank you.

12         I have had an opportunity to review your submissions,

13  and I appreciate -- both sides were professionally done.  I get

14  experienced labor lawyers who have directly different opinions

15  on what the law is, however, and how it should be applied to the

16  facts.

17         However, I look at this in a more practical sense in

18  the whole scheme of Norris-LaGuardia, which essentially says

19  that these are not matters for the court except for certain

20  exceptions, and I have to determine whether the relief sought

21  here, that is, injunctive relief, is relief that the court feels

22  falls within any of the exceptions.  I find it does not.

23         And I find that -- and I think the major premise or

24  argument that the plaintiffs have is a fraud exception, and that

25  comes the closest to my finding that the court might have

1    jurisdiction.  However, in looking at the cases, I think -- and

2    the act -- I think that there is an argument that this matter

3    grows out of a labor dispute.  It originally grew out of a labor

4    dispute.  This lawsuit was filed.  And, granted, the picketing

5    that is going on now relates to the lawsuit.  It still grows out

6    of a labor dispute.  As far as any of the other exceptions, all

7    I'm going to say is that the All Writs Act does not apply here.

8         I have denied certain relief that the defendants

9    sought, but that's not -- that is, the sanctions and the motion

10   to dismiss, but that's not an indication as to how I would

11   decide the case, and we're still at the pleadings stage.

12        So, I am denying the TRO.  If there is a motion later

13   for injunctive relief, I think that that is best taken with the

14   merits.  And so, I'm not going to set it for a preliminary

15   injunction hearing at this time since we're still in the

16   discovery stage.  That's the decision.

17        I will have -- I have another case that you people are

18   discussing.  As soon as you're ready on that, I will take that.

19   That's all.

20        MR. SMETANA:  Thank you, your Honor.

21        MR. KISER:  Thank you, your Honor.

22   (Which were all the proceedings had in the above-entitled

23        cause on the day and date aforesaid.)

24

25

1      I certify that the foregoing is a correct transcript from

2   the record of proceedings in the above-entitled matter.

3

4

5   Mary T. Lindbloom
    Official Court Reporter

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT E



IN THE CIRCUIT COURT FOR THE NINETEENTH
JUDICIAL CIRCUIT, McHENRY COUNTY, ILLINOIS

TAMMY BARKER                              )
                                          )
v.                                        )        Case No. 06 CH 1057
                                          )
LOCAL 150, INTERNATIONAL                  )        JURY TRIAL DEMANDED
  UNION OF OPERATING ENGINEERS            )
  AFL-CIO.                                )
WILLIAM E. DUGAN, Individually and as     )
President of Local 150;                   )        Complaint
JAMES M. SWEENEY, Individually and as     )        Courtesy Copy           **FILED**
Vice President of Local 150;              )        (rec'd 11/22/06)
STEVEN M. CISCO, Individually and as      )                                NOV 09 2006
Corresponding Secretary of Local 150;     )        (no exhibits)
JOSEPH WARD, individually and as          )                                VERNON W. KAYS, JR.
Treasurer of Local 150;                   )                                McHENRY CTY. CIR. CLK.
RAYMOND CONNORS, individually and         )
as Financial Secretary of Local 150;      )
MICHAEL APRILE, Individually and as       )
representative of Local 150;              )
NICHOLAS CLINE, Individually and as       )
representative of Local 150;              )
JAMES SCHWEIHS, Individually and          )        NOTICE
as representative of Local 150;           )        BY ADMINISTRATIVE ORDER 94-9
RYAN DREW, Individually and as            )        THIS CASE IS HEREBY SET FOR SCHEDULING
representative of Local 150;              )        CONFERENCE IN COURTOOM 320 ON
THOMAS ROTTMAN Individually and as        )        3-22 2007, AT 9:00 AM PM
representative of Local 150, and all other )       FAILURE TO APPEAR MAY RESULT IN THE CASE
persons acting in concert with Defendants )        BEING DISMISSED OR AN ORDER OF
                                          )        DEFAULT BEING ENTERED.
        Defendants                        )

## COMPLAINT AND PETITION FOR INJUNCTIVE RELIEF

NOW COMES the Plaintiff, TAMMY BARKER, by and through her attorney, Robert T.

Hanlon, complaining of LOCAL 150, INTERNATIONAL UNION OF OPERATING

ENGINEERS, AFL-CIO, WILLIAM E. DUGAN, JAMES M. SWEENEY, STEVEN CISCO,

JOSEPH WARD, RAYMOND CONNORS, MICHAEL APRILE, NICHOLAS CLINE, JAMES

SCHWEIHS, RYAN DREW, and THOMAS ROTTMAN states as follows:

## JURISDICTION, VENUE & PARTIES

1)  The events giving rise to the cause of action herein took place along the public roadways of McHenry County and along the roadways within the corporate limits of various cities, towns and villages within McHenry County and in front of Plaintiff's residence located at 572 Main Street, Cary, Illinois, in the County of McHenry as well as along the roadways of other counties in Illinois including DuPage, Kane, Cook, and Will counties.  More specifically, the defendants followed, harassed, stalked, intimidated and threatened the Plaintiff in public locations in McHenry County, State of Illinois.  Further, the defendant Local 150 regularly and systematically conducts business in McHenry County with business established solely in McHenry County.

2)  Venue is proper in McHenry County because amongst other things, actions related to the causes of action set forth herein took place in McHerny County. 735 ILCS 5/2-101.

3)  The plaintiff, TAMMY BARKER, resides at 572 W Main Street, City of Cary, County of McHenry, State of Illinois.

4)  The defendant, Local 150 International Union of Operating Engineers, AFL-CIO (herein at times "Local 150") is a regional labor organization with principal offices located in Countryside, Illinois.  The defendant, Local 150, also maintains offices throughout Illinois. The defendant, Local 150, by and through the individual named defendants, and its officers, agents and employees regularly engage in and transacts business in McHenry County, State of Illinois.

5) The defendant, WILLIAM E. DUGAN, is President and Business Manager of Local 150.

6) The defendant, JAMES M. SWEENEY is the Vice President of Local 150.

7) The Defendant, STEVEN CISCO is the Corresponding Secretary of Local 150.

8) The defendant, JOSEPH WARD, is the Treasurer of Local 150.

9) The defendant, RAYMOND CONNORS, is the financial Secretary of Local 150.

10) The defendant, MICHAEL APRILE, is an individual believed to reside at 8926 Prestwick Ln., City of Orland Park, County of Will, State of Illinois and is also known as MIKE APRILE, and MICHAEL APRIL, and MIKE APRIL, and is employed as a business agent for Local 150 and is believed to have been paid by Local 150 for the time he engaged in activities described in this complaint.

11) The defendant, NICHOLAS CLINE, is an individual that is employed as a business agent for Local 150 he engaged in activities described in this complaint.

12) The defendant, JAMES F. SCHWEIHS, is an individual believed to reside at 1703 S. Main Street, City of Lombard, County of DuPage, State of Illinois and is believed to have been previously been employed as a business representative of Local 150 and that it is believed that he was paid by Local 150 for the time he engaged in activities described in this complaint.

13) The defendant, RYAN DREW, is an individual believed to reside at 5525 Farris Lane, City of Burlington, State of Iowa. The Defendant RYAN DREW is also believed to reside in a Holiday Inn on a semi-permanent basis in Elgin Illinois and is employed as a business agent for the defendant Local 150, and it is believed that he was paid by Local 150 for the time he engaged in activities described in this complaint.

14) The defendant, THOMAS ROTTMAN, is an individual believed to reside at 8628 W. Wilson Lane, City of Chicago, State of Illinois and is employed by the defendant local 150 as a business agent, and it is believed that he was paid by Local 150 for the time he engaged in activities described in this complaint.

15) Defendants, DUGAN, SWEENEY, CISCO, WARD, and CONNERS are the officers of Local 150 and are responsible for supervising the affairs of Local 150 and coordinating its activities, and hence are ultimately responsible for the unlawful and tortuous acts described herein.

16) Defendants, APRILE, CLINE, DREW, ROTTMAN and SCHWIEHS have directly participated in the harassment, intimidation, and stalking of the Plaintiff, Tammy Barker as well as the other tortuous actions described herein in this complaint.

## FACTS COMMON TO ALL COUNTS

17) In general, the defendants are now and have been engaged in a concerted effort to intimidate and harass the plaintiff, Tammy Barker which includes conduct that includes:

    a.   Accosting, assaulting, stalking, or otherwise engaging in reckless conduct directed toward the Plaintiff Barker.

    b.   Recklessly following, pursuing or intercepting the Plaintiff from her home and work,

18) Beginning in May 2004, the defendants began following and harassing the Plaintiff, Barker.

19) Defendants have engaged in a variety of unlawful activities including:

    a.   Assaulting the plaintiff, TAMMY BARKER, as prohibited by the Illinois Criminal Code, at 720 ILCS 5/12-1;

    b.   Engaging in criminally reckless conduct as prohibited by the Illinois Criminal Code, at 720 ILCS 5/12-5 directed at the Plaintiff, TAMMY BARKER;

    c.   Performing acts of criminal intimidation against the Plaintiff, TAMMY BARKER, as prohibited by the Illinois Criminal Code, at 720 ILCS 5/12-6;

    d.   Stalking the plaintiff, TAMMY BARKER, as prohibited by the Illinois Criminal Code, at 720 ILCS 5/12-7.3, which has raised to the level of aggravated stalking as defined by the Illinois Criminal Code, at 720 ILCS 5/12-7.4 based on the physical harm that the plaintiff, TAMMY BARKER, has suffered.

    e.   Interfering with Barker's contractual relationship with her employer.

    f.   Driving in a manner that violates the Illinois Vehicle Code and in particular:

        i.   Following too close behind the plaintiff, Tammy Barker's, vehicle to the extent that the plaintiff could not see the license plates or headlights in her rear view mirror, 625 ILCS 5/11-710 (a); disobeying traffic control devices (running red lights) 625 ILCS 5/11-305-06; recklessly swerving between lanes on Illinois streets and highways, 625 ILCS 5/11-503; performing illegal u-turns on an exit ramp, 625 ILCS 5/11-802; moving in front of the Plaintiff's

automobile and slamming on the brakes, 625 ILCS 5/11-1416 and otherwise

engaging in reckless driving that on at least one occasion required another

vehicle to swerve off the road to avoid an accident and on another occasion

forced drivers to slam on their brakes to avoid accidents, 625 ILCS 5/11-503.

g. Based on information and belief, the defendants procured and utilized Illinois license

plate information in violation of the Illinois vehicle Code 625 ILCS 5/2-123.

h. That on more than one occasion the defendants have engaged in unlawful conduct

while Barker was carrying radioactive nuclear material regulated by both the State of

Illinois and the United States Government.

20) The defendant, Local 150, has been ordered from refraining from the same conduct-

threatening and intimidating employees.  In fact, Local 150 has specifically been ordered to

refrain from attempting to cause automobile accidents, swerving automobiles in front of

delivery vehicles and slamming on the brakes.  See NLRB v. International Union of

Operating Engineers, Local 150, Case No. 98-4123 (7th Cir. January 2000)

21) The plaintiff, TAMMY BARKER, a 37 year old, mother and wife, arrived at the offices of

her employer PSI, where she observed three people and two Ford Crown Victoria

automobiles in the parking lot.  The Ford Crown Victoria automobiles had video cameras

prominently displayed or mounted on the dashboards of each automobile.

22) The person, later identified as JOE FARRELL, was among the people present as described

above in paragraph 21 and Joe Farrell is an employee of Local 150.

23) On the same date as the events described in paragraph 21 above, the Local 150 Business

Agent, later identified as JOE FARRELL but unknown to the plaintiff at the time, followed

the plaintiff, TAMMY BARKER, at points between Elgin and East Dundee as well as on various roadways.  While JOE FARRELL was pursuing the plaintiff, TAMMY BARKER, he maneuvered his Ford Crown Victoria immediately behind the plaintiff's vehicle, so that his headlights could not be seen by the plaintiff, TAMMY BARKER.  At one point during JOE FARRELL's pursuit of the plaintiff, TAMMY BARKER, the plaintiff entered an intersection just as the light began to change to Yellow.  In order to continue his pursuit of the Plaintiff, the Local 150 business agent, JOE FARRELL, swerved around a third automobile and into another lane and then traversed the intersection despite the then existing red light.  TAMMY BARKER, in fear for her safety, then went to the West Dundee police department for help.  The local 150 business agent, JOE FARRELL, followed the plaintiff right up to the East Dundee police department.

24) While present at the East Dundee Police Department, the plaintiff, TAMMY BARKER, was in tears.  The East Dundee Police detained JOE FARRELL, but did not issue any report or file any charges.

25) On January 14, 2005, one of the Defendants, JIM SCHWEIHS, followed the plaintiff.  At that time the plaintiff did not know of MR. SCHWEIHS' identity, but latter learned of his identity.  Like the other Crown Victoria's, that had previously been outside the offices of her employer, TAMMY BARKER, observed that the Crown Victoria, driven by JIM SCHWEIHS, had a dash mounted video Camera prominently displayed.  As before, JIM SCHWEIHS followed the plaintiff very closely, and at many times during his pursuit of Tammy Barker, the defendant, JIM SCHWEIHS maneuvered his Ford Crown Victoria immediately behind plaintiff's vehicle so that the Ford Crown Victoria headlights could not bee seen.

26) On January 14, 2005, when the plaintiff arrived at the St. Charles Waste treatment facility, the plaintiff approached the defendant's Ford Crown Victoria and plaintiff asked the defendant why he was following her. The defendant then told the plaintiff that he just wanted to talk with her and asked the plaintiff to get into the Crown Victoria. The plaintiff refused. The Defendant, JIM SCHWEIHS, then told the plaintiff that he would stop following her, if she would talk with him and then he gave her his phone number 708-927-6060. Thereafter, the defendant, JIM SCHWEIHS, pulled out of the waste treatment facility and waited near the entrance to the plant.

27) On January 17, 2005, the Defendant, MIKE APRILE, telephoned the plaintiff and left a telephone message that indicated that he knew the plaintiff had been at work for just a few hours and that he was watching her every move. That based upon the message, the Plaintiff became alarmed and disturbed, feared for her safety and the safety of her family.

28) On January 18, 2005, the Plaintiff was to report to Crest Hill, Illinois to make concrete cylinders for possible compact testing. In order to test the concrete, the Plaintiff uses a nuclear density gage, which contains radioactive isotopes. This gage is stored in the vehicle she was driving and is prominently marked with the regulatory symbol for RADIOACTIVE material. In the event the nuclear density gage were to be damaged, radioactive material could be released and the Illinois Department of Nuclear Safety and the Illinois State Police would have to be notified.

29) When the Plaintiff, TAMMY BARKER, left to travel to Crest Hill, she noticed that she was again being followed by a person she later identified as JAMES SCHWEIHS. While on US

Highway 20, heading towards Route 59.  The Plaintiff exited Rt 20 at Bluff City Road.  In order to maintain chase of the plaintiff, the defendant, JAMES SCHWEIHS, had to erratically and with willful disregard to the safety of all citizens on the roadways, including plaintiff, had to maneuver around a third party car in the lane next to him as well overcome a truck in the off ramp.  The Defendant, SCHWEIHS, sped up and cut off the car in front of him, then when it became apparent that SCHWEIHS could not squeeze between me and the truck on the exit ramp, he sped up even faster to get in front of the plaintiff to get in front of her on the exit ramp.  The Defendant SCHWEIHS, then slammed on his brakes and stopped. The plaintiff, TAMMY BARKER, and the truck behind her both then had to slam on each's brakes to avoid an accident with SCHWEIHS.  Since the plaintiff could re-enter traffic on US 20 safely, the plaintiff did so.  The defendant, SCHWEIHS, the drove down the full length of the exit ramp.  Upon discovering that the plaintiff was not on the exit ramp, the Defendant SCHWEIHS, then preformed an illegal u-turn on the exit ramp and reengaged his pursuit of the Plaintiff, TAMMY BARKER.

30) The defendant, SCHWEIHS, then continued to follow TAMMY BARKER and continued to cut-off other drivers to stay behind the plaintiff.  Whenever, TAMMY BARKER would change lanes, so too would SCHWEIHS.  Overcome by fear for her safety, the plaintiff TAMMY BARKER called the Elgin Police Department, seeking assistance.

31) Later that same day, January 18, 2005, while the plaintiff, TAMMY BARKER, was headed south on Rt 59, where RT 59 veers off onto Route 30 (Will County) with a single lane in each direction, when the defendant JAMES SCHWEIHS, attempted to pass a Truck using the opposing lane of traffic.  At this time, the defendant, JAMES SCHWEIHS, again accelerated to pass both the truck and the plaintiff's car, and then slammed on his brakes

directly in front of the Plaintiff, thereby causing her to slam on her breaks. The Truck behind the plaintiff also slammed on its brakes and swerved off the road to avoid hitting the Plaintiff, TAMMY BARKER. Again, Tammy barker was in fear for her safety, crying and experiencing chest pains.

32) Once again, the plaintiff, TAMMY BARKER, reported the conduct of the defendant, JAMES SCHWEIHS, to police.

33) Thereafter, on January 18, 2005, the plaintiff, TAMMY BARKER, returned to her work with police escort for much of the trip.

34) After completing her work at the jobsite, TAMMY BARKER, left the job site and observed a Ford Crown Victoria traveling in the opposite direction. The Crown Victoria immediately turned around and began following the plaintiff. The Plaintiff recognized the driver as the same person who had been following her that day, January 18, 2006, and noticed the car's license plate ML 9119 and saw that he had a video camera with him.

35) On January 18, 2005, TAMMY BARKER told the defendant SCHWEIHS to stop following her and that she believed that someone would get hurt if the defendant, JAMES SCHWEIHS continued to follow the plaintiff, TAMMY BARKER.

36) On January 18, 2005, TAMMY BARKER returned to her car, and the defendant, SCHWEIHS, again followed her to Elgin where the plaintiff drove to the Elgin Police Station. There the Elgin police refused to do anything.

37) On the evening of January 18, 2005, TAMMY BARKER returned home, without being followed, and was emotionally distraught and so upset that she became physically ill, and threw up on several occasions that evening and into the next morning.

38) On Wednesday January 19, 2005, TAMMY BARKER asked her employer to lay her off because she could not stand being followed and remained physically ill for the balance of the week and was emotionally unable to being harassed.

39) On Friday, February 25, 2005 at 11:00am or thereabouts, MIKE APRIL called TAMMY BARKER'S cell phone and offered to get her a job with State Testing, a company different than her current employer.

40) On Thursday, March 24, 2005, or thereabouts, the defendant, NICHOLAS CLINE, followed the Plaintiff to Portillo's restaurant in Batavia, Illinois, where she was meeting her husband for lunch. The defendant, NICHOLAS CLINE, parked immediately behind TAMMY BARKER. The Plaintiff's husband yelled at CLINE to ask him to leave the plaintiff alone. Concerned for her husband's safety, the plaintiff pleaded with NICHOLAS CLINE to leave her alone.

41) On Monday March 28, 2005 or thereabouts, NICHOLAS CLINE, followed TAMMY BARKER in a Ford Crown Victoria with license plate #255 1800, following the plaintiff closely and had to swerve away from the plaintiff to avoid hitting her vehicle. While being pursued by the defendant NICHOLAS CLINE, TAMMY BARKER felt threatened. Again TAMMY BARKER asked the defendant, NICHOLAS CLINE to stop following her and asked the defendant, NICHOLAS CLINE why was he doing this to her? In response thereto

the defendant stated "we only want to make your life better". Thereafter, the defendant NICHOLAS CLINE held his business card with his thumb and pinky finger and mouthed the words "call me."

42) On April 1, 2005 or thereabouts, the defendant, MIKE APRILE, called the defendant, TAMMY BARKER and asked TAMMY BARKER if she had called State Testing. Thereafter at 8:15am or thereabouts the defendant, MIKE APRILE, started following the plaintiff, TAMMY BARKER.

43) On Tuesday May 3rd, 2005 at 8:02am or thereabouts, MIKE APRILE called the plaintiff on her cell phone, upon answering the phone the Plaintiff recognized the voice on the phone to be that of MIKE APRILE when he stated "were squared away with state testing that they joined Friday" He then asked "did you know that?" Finally, the defendant, MIKE APRILE, asked the plaintiff " do you need me to call Jay for you?"

44) On May 5th 2005 or thereabouts at 6:15am a black Ford Crown Victoria was parked in view of the Plaintiff, TAMMY BARKER'S, home at 572 Main Street, Cary McHenry County, State of Illinois.

45) Upon seeing the Black Ford Crown Victoria the plaintiff became sick to her stomach and feared the defendants were going to follow her children to school. The plaintiff contacted the Cary Police department. At approximately 6:30am or thereabouts Cary police responded to the Plaintiff's home and identified the driver of the black Crown Victoria as THOMAS ROTTMAN.

46) On May 11, 2005 or thereabouts, the plaintiff was followed by another Crown Victoria
license plate PXC-137, operated by a Local 150 business agent believed to be Miguel
Gonzalez.

47) On Friday, May 13, 2005 or thereabouts the defendant, JAMES SCHWEIHS, driving a
Black Ford Crown Victoria with the license plate ML 9119, followed the plaintiff from
Tollgate Road, in Elgin to the Fulton Street parking garage in Elgin, between the hours of
6:30 am and 7:00am or thereabouts.

48) On Tuesday, May 17, 2005 or thereabouts, the Defendant, JAMES SCHWEIHS, followed
the plaintiff commencing at 6:40am or thereabouts and followed the plaintiff from Tollgate
Road and Rt. 31, in Elgin to the Fulton Street parking garage located in Elgin, Illinois.

49) While the Defendant, JAMES SCHWEIHS, was following the plaintiff on May 17, 2006, he
drove recklessly and at times tailgated the plaintiff's car.

50) On Tuesday, May 17, 2005 or thereabouts, the plaintiff concerned for her safety, while in
rout to Elgin, called 911 to report that she was being followed. Thereafter the Plaintiff
arrived at the Elgin police department and was crying and emotionally distraught.

51) On Friday May 20th 2005 or thereabouts, MIKE APRILE started following the plaintiff from
a job location in Elgin, and followed the plaintiff to a job site in Streamwood, Illinois.
While present on the job site in Streamwood, the plaintiff was using the Nuclear Density
gage which requires any person not wearing a dosimeter badge (an instrument to measure
exposure to radiation) must stand at least 15 feet away. While the plaintiff was instructing a

third party that they needed to be at least 15 feet away, the defendant, MIKE APRILE, in direct contravention of the Illinois anti-eavesdropping statute, 720 ILCS 5/14 et seq, made an audio recording of the plaintiff, and repeated statements made by the plaintiff into an audio recording device.

52) On June 7th, 2005 or thereabouts, JIM SCHWIEHS again followed Tammy Barker, along the roadways of Cook, Kane and McHenry Counties. While following the Plaintiff, the Defendant JAMES SCHWEIHS, drove erratically, tailgated the plaintiff's automobile, cut off other drivers on the roadways. After having been followed JIM SCHWIEHS, MIKE APRILE approached TAMMY BARKER acting on behalf of Local 150 legal department, served the Plaintiff with a subpoena to appear at local 150's legal department, in countryside Illinois, for a deposition on June 21, 2005.

53) On June 14th, 2005, the plaintiff was followed from Elgin to a job location in at Rt 59 and Rt 19.

54) On Tuesday April 25, 2006, the plaintiff was transporting the aforementioned Nuclear Density Gage, prominently marked RADIOACTIVE with the international radioactive emblem in the back of her truck and was followed by two separate Ford Crown Victoria automobiles. In apprehension of potential accidents and a repeat of the incidence of January 18, 2005 as enumerated in paragraphs 28-37, plaintiff drove her vehicle with the Nuclear Density Gage back to the offices of her employer at a speed of between 10 and 20 miles per hour.

55) After dropping the Nuclear Density Gage off at the offices of the Plaintiff's employer, the Plaintiff exited her vehicle and approached one of the local 150 pursuit cars which was being driven by MICHAEL APRILE. The plaintiff begged the defendants MIKE APRILE and RYAN DREW, not to follow her as she was going home. The defendant, MIKE APRILE replied: "You're a liar and untrustworthy so we're going to follow you anywhere." Thereafter, the Plaintiff drove to the Cary Police department, in McHenry County, with Michael April following the Plaintiff all the way to the Cary Police Department. The Cary police temporarily detained MIKE APRILE and RYAN DREW.

56) After leaving the Cary Police department the Plaintiff went to her home and thereafter observed MIKE APRILE and RYAN DREW drive past the plaintiff's home on several occasions that same day.

57) On Monday May 1, 2006, the defendant, RYAN DREW, followed the plaintiff in her personal vehicle.

58) On Thursday May 25, 2006, the defendant, RYAN DREW, commenced following the plaintiff at Rt 31 and Rt 62 in McHenry County.

59) On Wednesday, May 31, 2006, the defendant RYAN DREW, followed the plaintiff while the plaintiff was in route home from her son's 4th grade farewell breakfast, said pursuit commenced in McHenry County in the Village of Cary.

60) The Plaintiff, TAMMY BARKER, has approached law enforcement authorities in Cary, East Dundee, Elgin, the Illinois State Police and said police agencies have either been unwilling

or unable to successfully deter Defendant's unlawful conduct, leaving the Plaintiff, TAMMY BARKER, feeling even more distraught and helpless.

61) On at least one occasion the Plaintiff was told by the police that she needed to find an attorney and obtain a restraining order.

62) TAMMY BARKER has contacted Local 150 and asked that she not be followed and that she wished to be left alone.

63) Local 150 was aware of the impact of its unlawful conduct on the defendant, when it took the deposition of TAMMY BARKER in a separate action, presently pending before the US District Court, Western Division for the Northern District of Illinois.

64) That the US District Court issued a restraining order against Local 150 prohibiting it from violating the traffic laws of the State of Illinois. See Midwest Engineering Services v Local 150, Int'l Union of Operating Eng., Case No.: 05 C 50023.

65) The Defendant, JAMES SCHWEIHS, promised the Plaintiff that if plaintiff were to meet with him and other business agents of Local 150, they would stop following and harassing plaintiff.

66) In order to stop defendants from engaging in their unlawful harassment and intimidation, Plaintiff barker agreed to meet with Defendants JAMES SCHWEIHS and MIKE APRILE. At this meeting, the defendant, MIKE APRILE intimidated the Plaintiff, TAMMY BARKER and stated: "no one can protect you", or similar words to that effect.

67) The defendants breached the express terms of the verbal contract between Local 150 and

TAMMY BARKER when the defendants continued to follow and harass the plaintiff.

## COUNT I

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68) The Plaintiff, TAMMY BARKER, restates and re-alleges the allegations of paragraphs 1-67

as if fully set out herein in this Count I.

69) Defendants actions against BARKER have been reckless, intimidating, threatening, and

coercive.

70) Defendants were aware of their unlawful and tortuous actions toward Plaintiff, TAMMY

BARKER and despite promises to refrain from their unlawful conduct, the defendants

continue to engage in the same unlawful and tortuous conduct.

71) Defendants were aware that the actions taken by them did in fact cause manifestations of

emotional distress to be present in the plaintiff.

72) Defendants intended to cause the plaintiff, TAMMY BARKER, emotional distress.

73) Defendants were aware that their repeated conduct was likely to cause emotional distress in

the plaintiff, TAMMY BARKER.

74) The actions described in paragraphs 17 - 67 are truly extreme and outrageous.

75) The actions of the defendants described in paragraphs 1-68 did in fact cause emotional

distress in the plaintiff, TAMMY BARKER.

76) The emotional distress suffered by the plaintiff culminated in physical illness and inability to

perform her work and she is no longer able to work.

**WHEREFORE**, the plaintiff respectfully prays for this honorable court to grant the following relief:

a. Enter a Judgment against the defendants and in favor of the plaintiff, TAMMY BARKER for compensatory damages in such sum as this Court may determine to be proper in amount.

b. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, LOCAL 150, and in favor of the plaintiff, TAMMY BARKER;

c. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, WILLIAM E. DUGAN, and in favor of the plaintiff, TAMMY BARKER;

d. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES M. SWEENEY, and in favor of the plaintiff, TAMMY BARKER;

e. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, STEVEN CISCO, and in favor of the plaintiff, TAMMY BARKER;

f. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JOSEPH WARD, and in favor of the plaintiff, TAMMY BARKER;

g.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, RAYMOND CONNORS, and in favor of the plaintiff, TAMMY BARKER;

h.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, MICHAEL APRILE, and in favor of the plaintiff, TAMMY BARKER;

i.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, NICHOLAS CLINE, and in favor of the plaintiff, TAMMY BARKER;

j.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES F. SCHWEIHS, and in favor of the plaintiff, TAMMY BARKER

k.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, RYAN DREW, and in favor of the plaintiff, TAMMY BARKER;

l.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, THOMAS ROTTMAN, and in favor of the plaintiff, TAMMY BARKER;

m.  Award the plaintiff's her costs.

n.  That plaintiff has such other and further relief in this matter as this Court deems just, equitable or necessary.

## COUNT II – ASSAULT

77)  Restate and re-allege paragraphs 1-76 and incorporate said paragraphs as if fully set out in this Count II.

77) In general the defendants have:

    a.  Accosted  stalked or otherwise directed reckless conduct towards the Plaintiff as she is traveling to and from her Home and various work locations.

    b.  Recklessly followed, pursued or intercepted barker as she travels on the roadways of the State of Illinois.

78) More Specifically, the defendants when following plaintiff have

    a.  Followed too close behind the plaintiff, to the extent that the plaintiff could not see the headlights of defendant's automobile

    b.  Disobeying traffic control devices

    c.  Recklessly swerving

    d.  Cutting in front of plaintiff and slamming on the brakes;

    e.  Performing illegal u-turns on an exit ramp and otherwise engaging in reckless driving on the Illinois Roadways

    f.  otherwise engaging in reckless driving that on at least one occasion required another vehicle to swerve off the road to avoid an accident and on another occasion forced drivers to slam on their brakes to avoid accidents

79) That the defendants intentionally engaged in the aforementioned activities.

80) That the defendant's conduct caused barker to have a reasonable apprehension of and immediate automobile accident and resulting harmful touching of her person and physical harm.

**WHEREFORE**, the plaintiff respectfully prays for this honorable court to grant the following relief:

    a.  Enter a Judgment against the defendants and in favor of the plaintiff, TAMMY BARKER for compensatory damages in such sum as this Court may determine to be proper in amount.

    b.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, LOCAL 150, and in favor of the plaintiff, TAMMY BARKER;

    c.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, WILLIAM E. DUGAN, and in favor of the plaintiff, TAMMY BARKER;

    d.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES M. SWEENEY, and in favor of the plaintiff, TAMMY BARKER;

    e.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of

McHenry County against the defendant, STEVEN CISCO, and in favor of the plaintiff, TAMMY BARKER;

f.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JOSEPH WARD, and in favor of the plaintiff, TAMMY BARKER;

g.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, RAYMOND CONNORS, and in favor of the plaintiff, TAMMY BARKER;

h.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, MICHAEL APRILE, and in favor of the plaintiff, TAMMY BARKER;

i.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, NICHOLAS CLINE, and in favor of the plaintiff, TAMMY BARKER;

j.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES F. SCHWEIHS, and in favor of the plaintiff, TAMMY BARKER

k.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of

McHenry County against the defendant, RYAN DREW, and in favor of the plaintiff, TAMMY BARKER;

l.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, THOMAS ROTTMAN, and in favor of the plaintiff, TAMMY BARKER;

m.  Award the plaintiff's her costs.

n.  That plaintiff has such other and further relief in this matter as this Court deems just, equitable or necessary.


[The remaining space on this page intentionally left blank]

## COUNT III TORTIOUS INTERFERENCE WITH A CONTRACT

81) Restate and re-allege paragraphs 1-80 and incorporate said paragraphs as if fully set out in this Count III.

82) Defendants were aware of plaintiff's contract of employment with her employer PSI during the period they engaged in the conduct set forth in this complaint.

83) Defendants acted with the purpose of interfering with the contractual relationship between the plaintiff, TAMMY BARKER, and her employer PSI.

84) The defendants' conduct was designed to create substantial difficulty with regard to the TAMMY BARKER's performance of her contractual responsibilities.

85) The defendants' conduct did in fact create substantial difficulty with regard to TAMMY BARKER's performance of her contractual responsibilities.

**WHEREFORE**, the plaintiff respectfully prays for this honorable court to grant the following relief:

a. Enter a Judgment against the defendants and in favor of the plaintiff, TAMMY BARKER for compensatory damages in such sum as this Court may determine to be proper in amount.

b. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, LOCAL 150, and in favor of the plaintiff, TAMMY BARKER;

c. Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of

McHenry County against the defendant, WILLIAM E. DUGAN, and in favor of the plaintiff, TAMMY BARKER;

d.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES M. SWEENEY, and in favor of the plaintiff, TAMMY BARKER;

e.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, STEVEN CISCO, and in favor of the plaintiff, TAMMY BARKER;

f.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JOSEPH WARD, and in favor of the plaintiff, TAMMY BARKER;

g.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, RAYMOND CONNORS, and in favor of the plaintiff, TAMMY BARKER;

h.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, MICHAEL APRILE, and in favor of the plaintiff, TAMMY BARKER;

i.  Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of

McHenry County against the defendant, NICHOLAS CLINE, and in favor of the plaintiff, TAMMY BARKER;

j.    Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, JAMES F. SCHWEIHS, and in favor of the plaintiff, TAMMY BARKER

k.    Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, RYAN DREW, and in favor of the plaintiff, TAMMY BARKER;

l.    Award punitive damages in an amount of $1,000,000 or such other or higher amount as to allow the complaint to be heard in the Law Division of the Circuit Court of McHenry County against the defendant, THOMAS ROTTMAN, and in favor of the plaintiff, TAMMY BARKER;

m.    Award the plaintiff's her costs.

n.    That plaintiff has such other and further relief in this matter as this Court deems just, equitable or necessary.

[The remaining space on this page intentionally left blank]

## COUNT IV BREACH OF CONTRACT

86) Restate and re-allege paragraphs 1-86 and incorporate said paragraphs as if fully set out in this Count IV.

87) JAMES SCHWEIHS made an offer to Tammy Barker in exchange for meeting with the Defendant, JAMES SCHWEIHS, the defendants would leave plaintiff alone.

88) The plaintiff accepted the offer and conditioned said acceptance on the condition that the her performance of meeting with the defendants was entirely premised on the promise to leave her alone.

89) That defendants breached the promise to leave plaintiff alone when they resumed following plaintiff.

90) The plaintiff's consideration for the contract was suffering the detriment of meeting with the defendants when she had previously expressed a desire to avoid them.

**WHEREFORE**, the plaintiff respectfully prays for this honorable court to grant the following relief:

    a. Enter a Judgment against the defendants and in favor of the plaintiff, TAMMY BARKER for compensatory damages in such sum as this Court may determine to be proper in amount.

    b. Award the plaintiff's her costs.

    c. That plaintiff has such other and further relief in this matter as this Court deems just, equitable or necessary.

## <u>COUNT V</u>

### SEPARATE ACTION IN CHANCERY FOR INJUNCTIVE RELIEF

91) Restate and re-allege paragraphs 1-91 and incorporate said paragraphs as if fully set out in this Count V.

92) **<u>Authorization and Instigation:</u>** the aforementioned unlawful conduct has occurred with and at the authorization, sanction, advice, encouragement, and or instigation of Local 150.

93) **<u>Emotional Distress and Physical Injury</u>**: The plaintiff, TAMMY BARKER, has suffered emotional distress which included uncontrollable vomiting, crying and mental injury for which she cannot be adequately compensated at law.

94) **<u>Damages, Irreprable Injury and Need for Injunctive Relief:</u>** If the defendants are not restrained from following harassing, intimidating the plaintiff, the plaintiff will suffer additional irreparable harm in that the plaintiff, TAMMY BARKER,  will suffer continued deterioration of her mental and physical state; will have lost the right to be free from harassment, intimidation and coercion; will have lost the right to perform her job without fear for her safety; and will have lost the right to be gainfully employed with the employer of her choosing without tortuous interference from the defendants.

95) **<u>Injunction is in the Public Interest:</u>**  An injunction is in the public interest because Defendants unlawful and tortuous conduct creates a threat to the personal safety of Illinois residents and motorists.  That should an accident occur while Plaintiff is utilizing the aforementioned Nuclear density gage, radioactive material may be released into the environment.

96) **<u>No Adequate Remedy at Law:</u>** The plaintiff, Tammy Barker, has no adequate remedy at law. The Plaintiff, TAMMY BARKER, has approached law enforcement authorities in Cary, East Dundee, Elgin, the Illinois State Police and said police agencies have either been unwilling or unable to successfully deter Defendant's unlawful conduct, leaving the Plaintiff,

TAMMY BARKER, feeling even more distraught and helpless. Although, plaintiff seeks compensatory damages and punitive damages in this action, no amount of money can make the plaintiff whole. This is because the Plaintiff has suffered, continues to suffer, and will continue to suffer an injury to her person unless the illegal and or tortuous acts of the defendants are not enjoined, and said injuries are incapable of definite ascertainment as required by law; because delays incident to obtaining relief in this action for damages would result in serious and irreparable damage to the Plaintiff's physical and emotional state, deterioration in the contractual relationship between the Plaintiff and her employer, PSI. Further because the unlawful conduct complained herein is of an ongoing and continuing nature, it is impossible to ascertain when defendant's unlawful conduct will end.

97) **Balancing of the Rights Interests and Injuries:** The balancing of the interests of the parties is entirely in favor of the plaintiff, TAMMY BARKER. This is because the activity which Barker seeks to restrain are unlawful acts to begin with, and that the denial of injunctive relief would serve to require the plaintiff to suffer additional injury. In fact, the defendants will suffer no injury if restrained from following the plaintiff or coming within 200 yards from her.

98) **No Prior Application:** The plaintiff has not made prior application for injunctive relief to this court or any other court. (Note: Plaintiff's employer, PSI, attempted to seek such relief but was denied on the basis that it had no standing to assert the rights of the plaintiff, TAMMY BARKER.)

99) **Need for Temporary Releif:** Plaintiff has suffered and will suffer further irreparable harm and irreparable injury, as described herein, unless a temporary restraining order is issued restraining the defendants from following the plaintiff, or coming within 200 yards of the plaintiff.

100) **Public Officers:** Given the defendants unlawful conduct as described herein and the nature of the injuries resulting to the Plaintiff, TAMMY BARKER, and the various police departments which have refused or been unwilling or been unable to prevent the defendants from harassing or engaging in the aforesaid illegal and tortuous conduct can enforce said order prayed for herein.

   **WHEREFORE,** the plaintiff, Tammy Barker, respectfully prays this honorable court grant the following relief:

   a. that this court issue a temporary restraining order, restraining and enjoining the defendants, pending a hearing of this cause and until the further order of this Court, restrain the defendants and their officers, agents, servants, associates, members, employees and all persons in active concert or participation with defendants, from:

   1. Following the Plaintiff, TAMMY BARKER;

   2. Accosting, assaulting, stalking or otherwise engaging in reckless conduct directed at the Plaintiff;

   3. Recklessly following, pursuing or intercepting the plaintiff in the roadways of the State of Illinois;

   4. Parking or sitting outside the home of TAMMY BARKER;

   5. From coming within 200 yards of the Plaintiff, TAMMY BARKER;

   6. From either vocally or through physical acts intimidating the plaintiff, TAMMY BARKER.

   7. That the McHenry County Sheriff's department, the Illinois State Police and any police department in the state of Illinois be empowered and directed to enforce the terms of any order of this Court.

b.   That after a hearing on the issue of the prayed for, issue a  Temporary Restraining
Order embodying the terms of the order prayed for under seal of this Court.

c.   That this court set a hearing date prior to the expiration of the TRO, so that Plaintiff
can establish their right to a preliminary injunction and thereupon obtain from this
court a Preliminary injunction consistent with the TRO prayed for herein.

d.   That after a trial upon the merits of this matter, issue a final injunction that settles the
rights of the parties in a manner consistent with terms of the TRO prayed for herein;

[The remaining space on this page intentionally left blank]

## JURY DEMAND

NOW comes the PLAINTIFF, TAMMY BARKER, by and through her attorney, Robert

T. Hanlon, respectfully requests trial by jury of all issues raised by all pleadings herein.

Dated this 9th  day of November, 2006

By:

Her Attorney, ROBERT T. HANLON, ESQ.

ROBERT T. HANLON, ESQ.
Of Counsel
MADSEN SUGDEN &
GOTTEMOLLER
One North Virginia
Crystal Lake, Illinois 60014
Atty. Reg.  #6286331
(815) 459-5152

STATE OF ILLINOIS      )
                          )SS.
COUNTY OF MCHENRY   )

<u>VERIFICATION</u>

I, Tammy Barker, being first duly sworn, under the penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify that I have reviewed the statements contained in this COMPLAINT; that I have personal knowledge of the facts stated herein; that if called as a witness in any proceeding, I could competently testify to the facts stated herein; and that the statements contained in this Complaint are true and correct, except as to matters stated to be on information and belief, and as to those matters I certify that I verily believe them to be true:

BY: _____
TAMMY BARKER


Subscribed and sworn to before me this 9th day of November, 2006.


_____
Notary Public.


OFFICIAL SEAL
PATRICIA A SCHMITT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/26/09

STATE OF ILLINOIS      )
                           )SS
COUNTY OF MCHENRY   )

I, ROBERT T. HANLON, one of the Plaintiff's attorneys have read the attached and to the best of my knowledge and information believe it is well grounded in fact and is warranted by existing law.

_____
ROBERT T. HANLON

Robert T. Hanlon
Of Counsel
Madsen, Sugden & Gottemoller
One N. Virginia Street
Crystal Lake, IL 60014
815-459-5152

# EXHIBIT F

213

CIRCUIT COURT FOR THE JUDICIAL CIRCUIT

**STATE OF ILLINOIS**
**COUNTY OF McHENRY** } SS

Filed
McHenry County, Illinois
NOV 2 7 2006
VERNON W. KAYS, JR.
Clerk of the Circuit Court

GEN. NO. 06 CH 1057

☐ Jury  ☐ Non-Jury

Tammy Barker

vs.

Local 150, 1405, et al.

Date 11/27/06    Plaintiff's Attorney Robert Hamlin    Defendant's Attorney Dale Pierson

**ORDER**

This matter coming to be heard on Plaintiff's Emergency Motion for a Temporary Restraining Order, due notice having been given and this Court being fully advised, it is hereby ordered:

① Plaintiff's Emergency Motion for a Temporary Restraining Order is Denied;

② Defendant Local 150 shall have 21 days to file responsive pleading; (re: cmplt.) 12/18

③ Plaintiff shall have 28 days to respond thereto; 1/15

④ Defendant Local 150 shall have 7 days in which to file a Reply 1/22

⑤ This matter shall be set for hearing on Feb. 2, 2007 at 9:00 a.m.

Prepared by: B. Diener

Attorney for: Local 150

Attorney Registration No.: 6269637

Judge _____

# EXHIBIT G

CIR    T COURT FOR THE 22ND JUDICIAL C    'UIT

**STATE OF ILLINOIS** } SS
**COUNTY OF McHENRY**

FILED
McHenry County, Illinois

JAN 17 2007

VERNON W. KAYS, JR.
Clerk of the Circuit Court

GEN. NO. 06 CH 1057

☐ Jury  ☐ Non-Jury

Tammy Barker                vs.   Local 150 et al

ENTERED

Date 1/17/07    Plaintiff's Attorney  Hanlon    Defendant's Attorney  Diener

**ORDER**

This cause coming on to be heard on Plaintiff's motion
To voluntary Dismiss her complaint and petition for injunctive
relief, counsel for local 150 present, counsel for Plaintiff present

it is hereby ordered:

1) That Plaintiff's motion to voluntary Dismiss her complaint
and petition for injunctive relief is granted
without prejudice

2) That pursuant to the provisions of the code
of civil procedure plaintiff shall remand/pay to the defendant
Local 150 the sum of $182.00 within 10 days of 1/29
entry of this order

Prepared by: Robert Hanlon

Attorney for: Plaintiff Tammy Barker

Attorney Registration No.: 6286231

Judge  Michael H. Caldwell

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| MIDWEST ENGINEERING SERVICES, INC.,<br>PROFESSIONAL SERVICE INDUSTRIES, INC.,<br>GME CONSULTANTS, INC., and GME<br>CONSULTANTS OF ILLINOIS, INC.,<br>　　　　Plaintiffs,<br>　　　　v.<br><br>LOCAL 150, INTERNATIONAL UNION<br>　OF OPERATING ENGINEERS, AFL-CIO<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>) CASE NO. 05 C 50023<br>)<br>) Judge Kapala<br>)<br>) Magistrate P. Michael Mahoney<br>)<br>) |

## DECLARATION OF TAMMY BARKER

Pursuant to 28 U.S.C. § 1746, I, Tammy Barker, do declare under the penalties of perjury that the following is true and correct, to the best of my knowledge, belief and recollection:

1. I am married and I have two children.

2. I am employed by Professional Services Industries ("PSI") and have been so employed since October 2000.

3. Definitions. As used herein the following terms have the following meanings:

    a. "Pursuit Agent" shall mean any officer, employee or agent of Local 150 driving a vehicle owned or leased by Local 150 using said Local 150 vehicle to follow and/or harass Mrs. Barker and includes but is not limited to the following individuals believed to be employed as "Business Agents" or "Business Representatives"

- 1 -

or "Organizers" by Local 150: Mike Aprile, Joe Farrell, Jim

Schweihs, Nicholas Cline, Thomas Rottman, and Ryan Drew.

b.    "Pursuit Vehicles" are automobiles owned by Local 150 and

operated by Local 150 Pursuit Agents (as defined herein above);

typically Black (but sometimes other colors); are Ford Crown

Victoria automobiles with video cameras mounted on the vehicle

dashboard. For definitional purposes not every Pursuit Vehicle has

the strobe light clipped to the visors.

4.    On January 14, 2005 the Local 150's Pursuit Agent, Jim Schweihs, followed

me. At that time I did not know of Jim Schweihs' identity, but later learned of his

identity.  Like the other Crown Victoria automobiles that had previously been outside

the offices of my employer, I observed that this Crown Victoria, driven by Jim

Schweihs, had a dash mounted video camera prominently displayed. As before, Jim

Schweihs followed me very closely and at many times during his pursuit of me, Jim

Schweihs maneuvered his Pursuit Vehicle immediately behind my vehicle so that I

could not see his headlights.

5.    On Friday, February 25, 2005, at 11:00 a.m. or thereabouts the Local 150's

Pursuit Agent, Mike Aprile, called my cell phone and offered to get me a job with

State Testing, a company different than my current employer, PSI.

6.    On Thursday, March 24, 2005, or thereabouts the Local 150's Pursuit Agent,

Nicholas Cline, followed me to Portillo's, a restaurant in Batavia, Illinois, where I

was meeting my husband for lunch. Nicholas Cline parked in close proximity to my vehicle. My husband yelled at Nicholas Cline to ask him to leave me alone. Concerned for my husband's safety and welfare, I pleaded with Nicholas Cline to leave me alone.

7.      On Monday, March 28, 2005, or thereabouts, Local 150's Pursuit Agent, Nicholas Cline, followed me in a Pursuit Vehicle with the license plate 255 1800. During that pursuit, he followed me closely and had to swerve away from me to avoid hitting my vehicle. While being pursued by Nicholas Cline, I felt threatened, experienced fear, became emotionally upset and commenced crying. Again I asked Nicholas Cline to stop following me and asked him why was he doing this to me? In response thereto Nicholas Cline stated, "We only want to make your life better." Thereafter, Nicholas Cline held his business card in one hand and with the other hand held his thumb and pinky finger to the side of his face and mouthed the words "call me."

8.      On April 1, 2005 or thereabouts, Local 150's Pursuit Agent, Mike Aprile, called me and asked me if I had called State Testing.  Thereafter, at 8:15 a.m. or thereabouts, Mike Aprile, started following me.

9.      On Tuesday, May 2, 2005, at 8:45 a.m. or thereabouts, Local 150's Pursuit Agent, Mike Aprile, called me on my cell phone. Upon answering the phone, I recognized the voice on the phone to be that of Mike April when he stated, "We're squared away with State Testing that they joined Friday." He then asked, "Did you know that?" Finally, Mike Aprile, asked me, "Do you need me to call Jay for you?"

10.     On May 5, 2005 at 6:15 a.m. or thereabouts, a Pursuit Vehicle was parked in

view of my home at 572 West Main Street, Cary, McHenry County, State of Illinois.

Prior to that time, no Pursuit Vehicles followed me home.  Upon seeing the Pursuit

Vehicle, I became sick to my stomach, vomited and feared that the Local 150's

Pursuit Agents were going to follow my children to school.  I contacted the Cary

Police Department.  At approximately 6:30 a.m. or thereabouts the Cary Police

Department dispatched a police cruiser to my home and identified the driver of the

Pursuit Vehicle as Thomas Rottman.

11.     On May 11, 2005 or thereabouts, I was followed by another Pursuit Vehicle

with the license plate PXC 137, which I later learned was Miguel Gonzales.

12.     On Friday, May 13, 2005, between the hours of 6:30 a.m. and 8:00 a.m or

thereabouts, the Local 150's Pursuit Agent, Jim Schweihs, driving a Pursuit Vehicle

with the license plate ML 9119, followed me from the PSI office in Elgin, Illinois to

the Fulton Street parking garage.

13.     On Tuesday, May 17, 2005, commencing at 6:40 a.m or thereabouts, Local

150's Pursuit Agent, Jim Schweihs, followed me from PSI's offices to the Fulton

Street parking garage located in Elgin, Illinois.

14.     While Local 150's Pursuit Agent, Jim Schweihs, was following me on May

17, 2005, he drove recklessly and at times tailgated my car.

15.     On Tuesday, May 17, 2005, or thereabouts, I was concerned for my safety while in route to Elgin and called 911 to report that I was being followed. Thereafter, I arrived at the Elgin Police Department crying and emotionally distraught.

16.     On Friday, May 20, 2005 or thereabouts, the Local 150's Pursuit Agent, Mike Aprile, started following me from a job location in Elgin and followed me to a job site in Streamwood, Illinois. While present on the job site in Streamwood, I was using the Nuclear Density Gage which requires any person not wearing a Dosimeter (an instrument to measure exposure to radiation) to stand at least 15 feet away. While I was instructing a third party that they needed to be at least 15 feet away, Mike Aprile, in direct contravention of the Illinois Anti-Eavesdropping Statute, made an audio recording of me and repeated statements made by me into an audio recording device.

17.     On June 7, 2005 or thereabouts, Local 150's Pursuit Agent, Jim Schwiehs, again followed me along the roadways of Cook, Kane and McHenry Counties. While following me, Jim Schwiehs drove erratically, tailgating my automobile and cutting off other drivers on the roadways. After having been followed by Jim Schwiehs, the Local 150's Pursuit Agent, Mike Aprile, approached me acting on behalf of Local 150's Legal Department, and served me with a subpoena to appear at the Local 150's Legal Department, in Countryside, Illinois, for a deposition on June 21, 2005.

18.     On June 14, 2005 or thereabouts, I was followed from Elgin to a job location at Route 59 and Route 19.

- 5 -

19.     On Friday, June 17, 2005 or thereabouts, a Pursuit Vehicle started to follow me from the PSI office. Being alarmed and emotionally disturbed about being followed, I returned to my office. I started feeling anxious and had feelings of despair.

20.     On Tuesday, April 25, 2006, or thereabouts, I was transporting the aforementioned Nuclear Density Gage, prominently marked RADIOACTIVE with the international radioactive emblem, in the back of my truck and was followed by two separate Pursuit Vehicles I then returned to the PSI office to securely return the Nuclear Density Gage. After depositing the Nuclear Density Gage at the office of PSI, I started to leave and noticed that two Pursuit agents were following me. I stopped and exited vehicle and approached one of the cars which was being driven by the Local 150's Pursuit Agent, Michael Aprile. I begged the Local 150's Pursuit Agent, Mike Aprile, not to follow me as I was going home. Mike Aprile replied, "You're a liar and untrustworthy so we're going to follow you anywhere." Thereafter, I drove to the Cary Police Department and the Cary Police temporarily detained Mike Aprile and Ryan Drew.

21.     On Tuesday, April 25, 2006, or thereabouts, after leaving the Cary Police Department, I went to my home and, thereafter, observed Local 150's Pursuit Agents, Mike Aprile and Ryan Drew, drive past my home on several occasions that same day.

22.     On Monday, May 1, 2006, or thereabouts, the Local 150's Pursuit Agent, Ryan Drew, followed me in my personal vehicle.

- 6 -

23.    On Thursday, May 25, 2006, or thereabouts Local 150's Pursuit Agent, Ryan

Drew, commenced following me at Route 31 and Route 62 in McHenry County.


24.    On Wednesday, May 31, 2006, at 9:30 a.m. or thereabouts, after I left my

son's 4th grade farewell breakfast at Maplewood School I was followed home. Local

150's Pursuit Agent, Ryan Drew, was monitoring my home from two blocks away

taking videos of me and my home. I then took a indirect route turning many times to

evade the Local 150's Pursuit Vehicle out of fear that the Pursuit Agent would harm

my child if I remained at home with the Pursuit Agent, Ryan Drew, lurking around

my home. I feared for my son's safety knowing that Local 150 "strangers" could be

hiding around my home anytime.


25.    On Thursday, June 22, 2006, or thereabouts, I left work at approximately 1:00

p.m. to go home and was immediately followed by Local 150's Pursuit Agent, Ryan

Drew.   While I was being followed by Ryan Drew, I stopped at the West Dundee

Police Station.   While at the police station, Local 150's Pursuit Agent, Ryan Drew,

loudly and agitatedly told the officer, words to the effect of: It's my legal right to

follow her and you (the police) can't stop me. After he made his statement to the

police officer, the officer returned to me and told me to leave and that Ryan Drew

was not going anywhere.   As I left the police station, Ryan Drew tried to jump back

into his vehicle to resume his pursuit of me. However, the officer (with his back to

me between my vehicle and Ryan Drew's vehicle) shook his head "no" and that chase

terminated.

26.    On Thursday, July 13, 2006, at 9:45 or thereabouts, a Pursuit Vehicle pulled

in, circled the parking lot where I was parked and stopped perpendicular to me. As

before with other Local 150 Pursuit Vehicles, there was a video camera on the

dashboard. The vehicle had license plate GV 1806 and was driven by Local 150's

Pursuit Agent, Mike Aprile. I was shaking, lost my breath, and felt my chest tighten.

I called the Elgin Police on my way to the police station. The police immediately

pulled Mike Aprile over when he arrived. By this time I was so distressed that I

couldn't even catch my breath to speak with the officer. Although I had repeatedly

made it clear how this harassment devastates me, the Defendant, Local 150, via its

Pursuit Agents continues to engage in this behavior.

27.    On Friday, July 28, 2006, or thereabouts I was headed north on Route 25

when I suddenly noticed a Crown Victoria, license plate number TVZ 693, behind

me. Shortness of breath once again came over me.

28.    On Wednesday, August 2, 2006, I was on my way home at about 5:15 p.m.

heading north on Cary-Algonquin Road. When I was within ½ mile m ore or less

from my home, I observed another Local 150 Pursuit Vehicle with license plate TVZ

693 heading south. At that time, the Pursuit Vehicle's presence made me sick to my

stomach and created a fear in me for the safety of my children, as a result of Local

150 "strangers" lurking about my home.

29.    On Tuesday, August 8, 2006, at approximately 8:30 a.m. or thereabouts I was

leaving my home for work. As I was getting into my truck, I looked up and saw one

of the Local 150's Pursuit Vehicles with the license plate TVZ 693 slowly creeping

- 8 -

down my street while staring at me, while in front of my home heading west.  Panic, anxiety, fear, and helplessness overwhelmed me.

30.    On Thursday, August 10, 2006, or thereabouts I was driving to work at approximately 8:20 a.m. traveling south on Cary-Algonquin Road when I spotted Local 150's Pursuit Vehicle with the license plate TVZ 693 heading north on Cary-Algonquin Road.  Local 150's Pursuit Vehicle immediately pulled off the road and turned around in pursuit of me. I became sick, instinctively sped to get away and managed to lose my pursuer because of other vehicles on the roadway.  I experienced frustration and anxiety.

31.    On Monday, August 28, 2006, around 6:00 a.m. or thereabouts, I departed from my home and observed Local 150's Pursuit Agent, Ryan Drew, driving a Pursuit Vehicle with license plate TVZ 693 sitting on Seebert Street, Cary, Illinois, facing north, perpendicular to the street I reside on.  Ryan Drew's vehicle commenced moving towards me, but a third party car pulled out in front of his vehicle and Ryan Drew could no longer pursue me.  Again I experienced fear, anxiety and frustration with the Defendant, Local 150.

32.    On Tuesday, September 5, 2006, or thereabouts I left my home around 6:00 a.m. and was immediately pursued by the Local 150's Pursuit Agent, Ryan Drew, license plate TVZ 693.  At the time, Ryan Drew's vehicle was idling on School Street, which is perpendicular to West Main Street in Cary, Illinois.  He was facing north in view of my home.  I flagged down a Cary Police Officer, briefed him and

then went to the Cary Police Station. A police officer guided me through the station to the back door to allow me to leave in peace.

33.     On or about November 9, 2006, I filed suit in the Circuit Court of McHenry County against Local 150, and thereafter voluntarily dismissed the action. Thereafter, the preceding described acts of harassment subsided until August 30, 2007.

34.     On Thursday, August 30, 2007, at 6:30 a.m. or thereabouts, I observed the Local 150's Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449, parked in front of my home.

35.     On Tuesday, September 4, 2007, at 6:45 a.m. or thereabouts, I observed the Local 150's Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449 parked in front of my home.

36.     On Wednesday, September 5, 2007, at 6:45 a.m. or thereabouts, I observed the Local 150's Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449, parked in front of my home.

37.     On Thursday, September 6, 2007, or thereabouts, I observed the Local 150's Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449 parked in front of my home and followed me from my home in Cary to the offices of my employer, PSI, in Elgin.

- 10 -

38.     On Tuesday, September 11, 2007, at 6:45 a.m. or thereabouts, I observed

Local 150's Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80

5449, parked in front of my home. Approximately one hour later at 7:45 a.m., I

walked over and asked the Local 150's Pursuit Agent to stop sitting in front of my

home and that it upset me, my family and my neighbors.  I thereafter told the Local

150's Pursuit Agent not to follow me when I dropped my son off at school.


39.     On Thursday, September 13, 2007, at 6:40 a.m. or thereabouts the Local 150's

Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449 parked

in front of my home.


40.     On Monday, September 17, 2007, at 6:45 a.m. or thereabouts the Local 150's

Pursuit Vehicle, a black Ford Crown Victoria with the license plate T80 5449 parked

in front of my home.


41.     On Tuesday, September 18, 2007, at 6:45 a.m. or thereabouts the Local 150's

Pursuit Vehicle with the license plate T80 5449 parked in front of my home.


42.     On Wednesday, September 19, 2007, or thereabouts, I observed Local 150's

Pursuit Vehicle with the license plate T80 5449 parked in front of my home and

followed me to Route 47 in Woodstock.


43.     On Monday, September 24, 2007, at 6:30 a.m. or thereabouts, I observed two

of the Local 150's Pursuit Vehicles, a black Ford Crown Victoria with the license

plate T80 5449 and a grey Ford Crown Victoria with the license plate ZX 1918,

parked outside my home. Two of the Local 150's Pursuit Agents in their vehicles watched my son and I get into my personal vehicle at about 8:30 a.m. and followed us into the Prairie Hill School Parking Lot. I became very upset.

44.     On Tuesday, September 25, 2007, at 8:30 a.m. or thereabouts the Local 150's Pursuit Vehicle with the license plate T80 5449 was parked in front of my home. The Local 150's Pursuit Agent watched me and my son get into my personal vehicle and then followed us to school again. Emotionally upset again I called 911. By the time the police arrived, the Pursuit Agent had already left. However, after I turned onto US Route 14 from Second Street, I observed the same vehicle following me again.

45.     On Wednesday, September 26, 2007, at 7:00 a.m. or thereabouts the Local 150's Pursuit Vehicle with the license plate T80 5449 parked in front of my home. An officer pulled behind the Pursuit Vehicle at 9:38 a.m., but left. The Local 150's Pursuit Agent followed me until 2:40 p.m. or thereabouts.

46.     On Thursday, September 27, 2007, at 7:00 a.m. or thereabouts the Local 150's Pursuit Vehicle with the license plate T80 5449 was parked in front of my home. The Local 150's Pursuit Agent watched my son and I get into my personal vehicle at about 8:30 a.m. and proceeded to follow us to my son's school.

47.     On Friday, September 28, 2007, at 6:50 a.m. or thereabouts the Local 150's Pursuit Vehicle with the license plate T80 5449 was parked in front of my home. At about 7:05 a.m. a second Pursuit Vehicle, a grey Crown Victoria with license plate ZX 1918, joined the surveillance of me.

- 12 -

# EXHIBIT I

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 50023 | **DATE** | 3/7/2008 |
| **CASE TITLE** | Midwest Engineering Services, Inc., et al. vs. International Union of Operating Engineers, Local 150, AFL-CIO, et al. | | |

DOCKET ENTRY TEXT:        Case 3:05-cv-50023   Document 397   Filed 03/07/2008   Page 1 of 1

Agreed Temporary Restraining Order Entered.

■ [ For further details see text below.]

Docketing to mail notices.

---

### STATEMENT

This matter coming to be heard on Plaintiff Professional Service Industries, Inc.'s Emergency Motion to Show Cause and the Court being fully advised in the premises, and all parties appearing by Counsel, it Is Hereby Ordered that ,

1. This matter is set for preliminary injunction on Plaintiff PSI's Request for injunctive relief enjoining all ambulatory picketing at the home and/or surrounding the home of PSI employee Tammy Barker until the hearing in this Court on March 13, 2008, at 9:00 a.m:

2. Without waiving any other claims or defenses, the parties agree that Local 150 will not monitor and/or follow Ms. Barker from her home provided she commutes first to the PSI shop in Elgin, Illinois and does not leave for work sites from her home, and returns to the PSI shop prior to ending her work day.

3, This agreement will expire on 9:00 a.m. Thursday March 13, 2008;

4. Plaintiff PSI's Rule to Show Cause why Defendant Should not be held in Contempt for violation of the Agreed TRO entered March 17, 2005 and for other relief sought is entered and continued for status on March 13, 2008.

Attorney for Plaintiff

Attorney for Defendant

05 C 50023 Midwest Engineering Services, Inc, et al. vs. International Union of Operating Engineers, Local 150, AFL-CIO, et al.

Page 1 of 2