IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Barker, Timothy Robert Barker, and Melisa Merryman, on behalf of themselves and on behalf of those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 08 C 50015 ) |
| v. | ) Judge Reinhard ) Magistrate Judge Mahoney |
| Local 150, International Union of Operating Engineers, AFL-CIO, | ) ) Trial by Jury Demanded ) |
| Local 150. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
RESPONSE TO LOCAL 150'S MOTION TO DISMISS OR STAY.**

Now Comes Plaintiffs, Tammy Barker, Timothy Robert Barker and Melisa Merryman. ("Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, by its undersigned counsel, and submits this MEMORANDUM IN OPPOSITION TO LOCAL 150'S MOTION TO DISMISS OR STAY.

**I. INTRODUCTION**

As an initial matter, plaintiffs object to Local 150's motion in so far as it seeks to present matters outside the pleadings under Rule 12(b)(1) and (6). Plaintiffs object to the defendant's suggestion that the court consider matters occurring in another case involving different plaintiffs. *MES, et al.. v. Local 150, et al.*, No. 05 C 50023 (N.D. IL) (now pending before Judge Kapala).

Plaintiffs hereby move to strike from Local 150's memorandum any facts asserted by Local 150 in its memorandum of law that are not alleged in the Complaint in this case,

unless they are supported by appropriate affidavits and brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rule 12(f)(2), Fed. R. Civ. P.

In particular, the plaintiffs move to strike the "Background" and "Procedural History" sections contained in the defendant's memorandum, defendants' repeated factual assertions that the conduct complained of by plaintiff Tammy Barker is "picketing," and its descriptions and characterizations of *MES, et al. v. Local 150, et al.*, No. 05 C 50023. Should the court desire a response to any factual matter outside the pleadings, plaintiffs respectfully request that the court order the defendant to file an appropriate Rule 56 motion. In the alternative, the plaintiffs respectfully request an opportunity to supplement this response, after appropriate discovery, to the extent that the court wishes to consider matters outside the pleadings and to seek to treat the defendant's motion as one for summary judgment.

Plaintiffs recognize that Rule 12(d) permits a court on its own motion to consider a Rule 12(b)(6) or Rule 12(c) motion as a Rule 56 motion for summary judgment. However, the plaintiffs believe that Local 150 has followed a kitchen sink methodology in the present motion making it difficult for plaintiffs and the court to separate out fact from argument, and confusing the procedural posture of this case with another case brought by different plaintiffs seeking relief based on different causes of action. As a result, the plaintiffs respectfully request that the Court not treat this motion as one for summary judgment on its own motion.

## II. PLAINTIFFS OBJECT TO DEFENDANT'S REQUEST THAT THE COURT TAKE NOTICE OF ADJUDICATIVE FACTS AT ISSUE IN THIS CASE

Local 150 also asks this court to take judicial notice of matters occurring in the *MES* case. Local 150 states that a court may notice documents without converting a motion to

dismiss into a motion for summary judgment. (See Local 150's Memorandum of Law at pages 5). However, Local 150 has obscured the difference between taking notice of the procedural posture of another case and taking notice of adjudicative facts necessary to the determination of this case. A reading of *General Elect. Capital corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081-83 (7th Cir. 1997) - a decision cited by the defendant for the proposition that the Court may take judicial notice of pleadings and orders in previous cases - makes it plain that it is <u>error</u> to notice adjudicative facts, as opposed to procedural ones, unless those facts are indisputable. *Id.* As a result, Local 150 has offered no basis in law for the assertion that the court should notice disputed adjudicative facts such as Local 150's repeated and misleading assertion that Local 150's conduct was lawful "picketing." The assertion is unsupported. Nothing pled in plaintiff's complaint is protected peaceful labor picketing of Ms. Barker or her employer.

### III. LOCAL 150'S REQUEST FOR STAY OF THE ENTIRE CASE SHOULD BE SUMMARILY DENIED

Local 150 has requested that this entire case be stayed pending the resolution of the *MES* case.

We ask the court to consider the misleading nature of the defendant's argument for stay. The substance of Local 150's assertions relating to the *MES* v Local 150 case arise in the context of the appropriateness of the granting of temporary restraints or preliminary injunctions in labor disputes. As noted above, Local 150 offers a variety of unsupported factual assertions about what the *MES* case is about in the guise of a so-called "procedural history" of the *MES* matter. Yet, that matter simply has nothing to do with the propriety of dismissing or staying a complaint that seeks relief for violations of federal privacy laws and state tort claims involving different plaintiffs and different theories of recovery. Nor will the

outcome of the *MES* case can have any bearing on whether the plaintiffs in this case can show that Local 150 engaged in unlawful and tortious conduct harming plaintiffs. Mrs. Barker's rights are not at issue in the *MES* case and Local 150 knows it. Neither are Mr. Barker's or Mrs. Merryman's.

Indeed, Local 150's own memorandum cites *M Credit, Inc. v. Cadlerock, LLC,* Case No. C 1690, 2003 U. S. Dist. LEXIS 13319 at *9 (N.D. Ill. July 31, 2003) for the proposition that "when suits involving same parties, and issues are filed in two federal district courts, the first case takes priority." That should be enough to defeat defendant's motion to stay. The parties here are different, and Ms. Barker's rights are not at issue in the *MES* case.

Moreover, whether or not Ms. Barker is a witness in the *MES* case and has been called by her employer to recite facts that relate to her employer's causes of action and motion for relief, has no bearing on her right to pursue remedies for her personal injuries as a result of Local 150's conduct. Nowhere in defendant's memorandum is there a hint of why it would be either just or fair to prevent an individual from seeking a remedy for alleged wrongs done to her personally because her employer is seeking a remedy for alleged wrongs done to it under different legal theories.

Defendant cites *Whirlpool Fin. Corp. v. Metropolis Capital Group*, Case No. 90 C 5845, 1991 U.S. dist. LEXIS 14243 at *9 (N.D. Ill. Oct. 7, 1991) for the proposition that federal courts should avoid duplicative litigation. However, defendant fails to mention that Judge Rovner denied the request for stay in that case finding that plaintiff had a right to pursue different defendants with separate personal guarantees at issue in different cases. The case supports plaintiff's position that the stay should be denied.

Local 150 speciously claims that the *MES* case would have a "preclusive effect in this case under the principles of collateral estoppel." (See page 7 of Local 150's memorandum.)

As the Supreme Court has indicated with respect to matters of issue preclusion: "we use the term 'claim preclusion' to refer to 'res judicata' in a narrow sense, i.e., the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we use the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985).

"Under res judicata, a final judgment on the merits bars further claims by parties or their privies on the same cause of action. * * * The Restatement of Judgments speaks of res judicata as 'claim preclusion' and of collateral estoppel as 'issue preclusion.' "United States v. Mendoza, 464 U.S. 154, 158 n.3 (1984). Up to 1980, the Supreme Court continued to refer to res judicata as a term limited to merger and bar concepts, while distinguishing collateral estoppel as a separate doctrine. See e. g., Allen v. McCurry, 449 U.S. 90, 94 (1980) (the Court did note the different terminology adopted by the Restatement Second of Judgments); Brown v. Felsen, 442 U.S. 127, 139 n.10 (1979); Montana v. United States, 440 U.S. 147, 153-154 (1979) Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, (1979); Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 326 (1955).

Under the doctrine of res judicata, or claim preclusion, a plaintiff who loses a lawsuit is barred from bringing a later suit based on the same 'cause of action' as the first. *Slayton v. Willingham*, 726 F.2d 631, 633, (10th Cir. 1984). Under collateral and direct

estoppel, or issue preclusion, a litigant in one lawsuit may not, in a later lawsuit, assert the contrary of issues actually decided in and necessary to the judgment of the first suit." Id. In this case, the litigation in the *MES* case can have no preclusive effect on the plaintiffs because none of the Plaintiffs in the case at bar are litigants in the *MES* case. Thus, while fact questions decided in the *MES* case might bar Local 150 from asserting a contrary fact in the future, they cannot stand as a bar to Ms. Barker's right to prove her facts in this case.

Defendant's assertion that *MES* might preclude Tammy Barker's personal claims is incredibly disingenuous in light of the law of judicial estoppel. For judicial estoppel should preclude Local 150 from ever making a claim that Mrs. Barker's rights are being represented in the *MES Matter*, because Local 150 raised lack of standing on the part of PSI to assert Mrs. Barker's rights within the *MES* case and has taken the position in that case that Ms. Barker's rights are not at issue. And obtained a favorable ruling in the *MES* case that PSI could not assert Mrs. Barker's rights in that case.

Nevertheless, throughout Local 150's memorandum of law, defendant Local 150 misleadingly refers to Ms. Barker as if she is a party to the *MES* action and characterizes her as a "privity" of her employer even though Local 150's objection to PSI's attempt to raise Ms. Barker's rights was sustained. Local 150 falsely asserts that "Ms. Barker has already called the following local law enforcement officials to testify in support of her motion...." Local 150 Memorandum in Support of Motion to Dismiss or Stay, page 4. The motion is not her motion. The action is not her action. Local 150 falsely states: "All of Ms. Barker's witnesses denied witnessing...." Ms. Barker called no witnesses and is not in charge of or control of the conduct of the *MES* lawsuit.

Nor does the fact that Ms Barker's personal attorney has attended *MES* court proceedings as an observer lends weight to Local 150's arguments. Mr. Hanlon as her counsel is entitled to observe the *MES* proceedings. The fact remains that Mr. Hanlon has not filed an appearance in the *MES* case, because Ms. Barker is not a party in that case.

Finally, the fact that the plaintiffs in the *MES* matter are seeking an injunction in that case has no bearing on this case. Ms. Barker is not prosecuting a federal anti-trust matter. She is seeking remedies for a violation of a federal statute and personal injuries under Illinois tort law.

## IV. MOTION TO DISMISS COUNT I: THE DRIVER'S PRIVACY PROTECTION ACT OF 1993 PROPOSED CLASS ACTION CLAIM

Local 150 has moved to dismiss Count I of the Complaint (presumably pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[1]) on the ground that it pleads a cause of action barred by the statute of limitations. (See Local 150's Memorandum of Law in Support of its Motion to Dismiss or Stay. Pages 14-15). In brief, Local 150 suggests that a one year Illinois statute of limitations with regard to privacy actions should be applied to the federal cause of action pled in Count I of the

---

[1] Local 150's memorandum contains no suggestion that the plaintiffs have failed to properly plead a DPPA claim or that this court lacks subject matter jurisdiction over the federal cause of action pled in Count I pursuant to Title 28, United States Code, Section 1331. Nor can plaintiffs find any argument in Local 150's motion that suggests that labor law pre-empts in any way a civil cause of action properly pled under the DPPA. As the Seventh Circuit made abundantly clear in United States v. Palumbo, 145 F.3d 850 (7th Cir. 1998), Garmon preemption is not implicated where no collective bargaining agreement is at issue. And in this case, whether or not Local 150 obtained motor vehicle records unlawfully has absolutely nothing to do with the construction of a collective bargaining agreement, and only depends upon whether the facts will show that the Local obtained, used or disclosed such information in violation of the DPPA as alleged. Thus, we assume that having made no argument directed to the DPPA count other than the statute of limitations, the defendant will be barred from raising any new arguments pursuant to Rule 12 in its reply brief. Rule 12(h), Fed. R. Civ. P.

complaint pursuant to the Driver's Privacy Protection Act of 1994. Title 18, United States Code, Section 2721 et seq. The argument is frivolous.

Local 150 cites to "*Wilson v Garcia*, 471 U.S. 261, 266-267 (1938) [sic 1985], *UAW v Hoosier Cardinal Corp.*, 383 U.S. 696, 703 (1966) and *Reed v United Transp. Union*, 488 U.S. 319, 323 (1989)" for the proposition that state law should provide the limitations period for the plaintiffs' DPPA action. However, Local 150 omits that portion of the court's holding that provides that such a method should be used only "if it is not inconsistent with federal law or policy to do so." See *Wilson*, 471 U.S. at 266-67. It is hard to believe that Local 150 did not recognize this limitation or attempt to locate some support for the unstated implication of their argument, i.e. that there is no federal law that supplies the statue of limitations for a civil DPPA action. Local 150 failed to inform the court that there is a federal law that supplies the statute of limitations that applies in this case.

Congress enacted a general statute of limitations as part of the Judicial Improvements Act of 1990. (Pub.L. 101-650). The Judicial Improvements Act adopted a uniform and general four year statute of limitations for causes of action or claims created by Congress after December 1, 1990, the effective date of that Act. Title 28 United States Code, Section 1658(a) provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

The Drivers Privacy Protection Act was adopted in 1993, effective in 1994 (four years after the enactment of the Judicial Improvements Act). See Title 18 United States Code, Sections 2721 et seq. The DPPA provides for a civil federal cause of action in any

United States District Court. Title 18 United States Code. Section 2724. In this case, there is no doubt that Plaintiffs bring their claims under an Act of Congress enacted after the Judicial Improvements Act went into effect.

Local 150 claims that a one year statute of limitations bars plaintiff's claims despite the fact that Count I of the complaint pleads that the defendant unlawfully obtained, used, and/or disclosed protected information from the Driver's license records of the State of Illinois, beginning in 2003 and continuing through 2004, 2005 and later. Thus, there is no basis for concluding that Count I should be dismissed as to Mrs. Barker, Mr. Barker, or Mrs. Merryman based on the statute of limitations. Count I is timely.

## V. LOCAL 150's MOTION TO DISMISS COUNT II: THE DECLARATORY JUDGMENT ACT AND REQUEST FOR INJUNCTION

Defendant Local 150 claims that Count II does not state a claim for relief based on two arguments. First, Local 150 argues that no declaratory judgment is proper unless it seeks a declaration of the rights of the plaintiff. See Local 150's Memorandum at pages 8-9. Second, Local 150 argues that no injunctive relief may be granted because the relief requested by the plaintiff is an injunction against protected ambulatory picketing barred by Section 7 of the NLRA. Title 29, United States Code, §157.[2] Along the way,

---

[2] The Norris LaGuardia Act stripped the federal courts of power to enjoin specific activity related or growing out of a labor dispute. *New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552 (1938). More specifically, in *New Negro Alliance* the court stated:

> the Norris-LaGuardia Act deprives those courts of jurisdiction to issue an injunction against, inter alia, *giving publicity* to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence; *against assembling peaceably to act or to organize* to act in promotion of their interests *in a labor dispute*; against advising or notifying any person of an intention to do any of the acts specified; against agreeing with other persons to do any of the acts specified.

The Court went on to say Section 7 of the Norris-LaGuardia Act deprives the federal courts of

defendant suggests that the Court lacks subject matter jurisdiction over Ms. Barker's state tort claims.

### *Local 150's argument that Plaintiffs seek to enjoin "picketing" is wrong*

The second argument is not properly raised on a Rule 12(b)(6) motion because it relies on the defendant's factual assertions that it was engaged in lawful protected ambulatory picketing. Local 150 alleges that Mrs. Barker comes to this court seeking to enjoin "ambulatory picketing of Ms. Barker" and that Local 150 caused her emotional distress and "invaded her privacy by engaging in an ambulatory picket." See Local 150 Memorandum at pages 7 & 11. Not true. In fact, the Complaint states that Local 150 has been following and harassing Mrs. Barker and does not ask this Court to enjoin picketing.[3]

Moreover, the evidence will show (as pled in the Complaint) that the relief Ms. Barker requests is not barred by virtue of the Norris LaGuardia Act. The facts alleged in the Complaint do not describe protected activities but rather acts that were not, are not, and will not constitute protected activities immune from federal injunctive relief. The conduct complained of is harassment, stalking, assaulting, terrorizing and other tortious conduct under Illinois law, not constituting peaceful picketing or other peaceful protected labor activities arising out of a labor dispute but rather conduct designed to do violence to Ms. Barker.

---

jurisdiction to issue an injunction in any case involving or growing out of a labor dispute. 303 U.S. at 562, but only as to those acts which the Norris-LaGuardia Act strips the courts of power, namely *"giving publicity..., assembling peaceably..., advising or notifying..., or agreeing with other persons..."* Nowhere in the Norris-LaGuardia Act, is there a provision that strips the Federal Court of its power to enjoin violations of other Federal Statutes such as the DPPA or to enjoin violent, dangerous, or assaultive conduct as alleged in Counts II through IV.

[3] Page 7 of Local 150's Motion sites to paragraph 73(b) and (c) of Plaintiff's complaint. However, within the prayer for relief following paragraph 73, Plaintiff makes no such reference as articulated in Local 150's motion.

Thus, in a Rule 12 motion, we are not here concerned with Local 150's claimed defenses and unsupported factual assertions that the facts will contradict Ms. Barker's allegations and show that Local 150 conducted itself peaceably and was "engaging in an ambulatory picket of Ms. Barker." Rather, the complaint alleges in excruciating detail, conduct that is assaultive, intimidating, harassing and violent. Such alleged conduct is not protected from a federal court injunction by Norris LaGuardia's exemption for peaceful labor activities.

It is wholly irrelevant that Local 150 has asserted that it "has argued from the outset of the *MES* case that its ambulatory picketing is protected by Section 7 of the NLRA." (See Local 150's Memorandum at page 7). For the Defendant to suggest that Local 150 prevailed in preliminary injunction motions in another case, (See Local 150's Memorandum at page 7), is improper under Rule 12(b)(6).

### *Local 150's argument that a declaratory judgment is procedurally impermissible is wrong.*

Local 150's motion is grossly misleading for another reason. It assumes for the "purposes of this Motion" that Barker seeks a declaration that Section 7 of the NLRA does not protect Local 150's ambulatory picket. Ms. Barker if presented with that defense, will show that Local 150's conduct was not an ambulatory picket. Local 150 is not entitled to contravene the well pled facts in this Complaint by tossing unsupported factual statements into a memorandum in anticipation of a defense, and then assume the conclusion of its argument: that Ms. Barker is seeking to ban "Local 150's ambulatory picket." She has pled assault, harassment and stalking in an ongoing and repeated manner over several years, continuing until the time of her complaint. None of the facts

pled remotely resemble picketing protected by the Norris LaGuardia Act's bar on federal court injunctions.

The defendant also asserts that Count II should be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* provides a means for adjudicating the rights of parties prior to the point at which the dispute can be adjudicated by a suit for damages or other affirmative relief. Of course that is true. But that it is not the whole story. Ms. Barker seeks a declaration that the Local has violated her rights to privacy and peace by the nature of their outrageous conduct as pled in the Complaint. It has stalked her to and from her home for its convenience. It has frightened, assaulted and intimidated her repeatedly by its alleged reckless conduct. In short there is every reason to believe that it will continue to falsely assert that its conduct is lawful picketing, while frightening the daylights out of her and harassing her family, and while posing an unreasonable risk of harm to her through its reckless and intimidating conduct on the roads. For this a declaration may certainly be an appropriate remedy after the exercise of a court's considered discretion based on the facts pled and proved in this case. That is the standard for a declaratory judgment as set forth in the act and Rule 57, Fed. R. Civ. P.

The defendant conveniently forgets to mention that the Declaratory Judgment Act explicitly recognizes that the fact that other remedies are or may be available has absolutely no bearing on the propriety of the additional procedural relief afforded by the Declaratory Judgment Act. Nowhere does the Local 150 memorandum suggest that the facts pled in Count II do not meet the standard of Rule 12(b)(6) or the Constitutional requirement of pleading an actual case or controversy.

Only two types of cases are exempted from the Declaratory Judgment Act: Controversies over most federal taxes are excluded from the DJA by the Tax Injunction Act, and controversies over most state taxes are excluded. See 28 U.S.C. § 1341, California v. Grace Brethren Church, 457 U.S. 393 (1982).

Certainly, it is always discretionary with the court whether to entertain an action for a declaratory judgment. *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962), but this does not mean that the plaintiffs have failed to state a claim on which relief can be granted under the Act.

In addition, Rule 57, Fed. R. Civ. P. specifically provides, that the existence of other "adequate" remedies, and even the pendency of another suit in state or federal court, does not bar an otherwise appropriate action for a declaratory judgment. *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U. S. 102, 125-128 (1968); *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989 (5th Cir. 1952); *Mutual Life Ins. Co. of New York v. Krejci*, 123 F.2d 594 (7thCir. 1941). Thus, in this case, even assuming for the sake of argument that the plaintiff fails to prove facts supporting each of the elements necessary for an injunction, that does not mean that this court should exercise its discretion to decline to entertain Ms. Barkers' request to know what the rights of the respective parties are now and in the future as it pertains to Local 150's harassment of Ms. Barker and her family, when, in fact, it constitutes dangerous, reckless, assaultive behavior putting her health and safety at issue and constituting, in essence, a violent assault on Ms. Barker with not the remotest resemblance to protected labor activities.

The determinative factor is whether the declaratory action will probably result in a just and more expeditions and economical determination of the entire controversy. There

can be no doubt that this is possible in this case. At any rate, these questions are not properly decided on a motion to dismiss based on the unsupported and unsworn assertions of Local 150 in a memorandum characterizing the events at issue in another case with other parties.

Thus, while Local 150 cites unreported district court cases for a general proposition of law relating to one of the primary purposes of the declaratory judgment act, it does not cite a single case, nor make a single cogent argument as to why the remedy should be denied on a motion to dismiss. Indeed, defendant's cases are district court cases that denied requested relief in three fact specific cases, but failed to discuss the appropriateness of the discretion to be exercised by the Act.

### *Local 150's argument that the court lacks subject matter jurisdiction over the claims in Count II through IV is wrong.*

In its confusing attack on Count II of plaintiff's complaint, Local 150 also continually mischaracterizes the plaintiff's jurisdictional basis, arguing cases that stand for the proposition that federal question jurisdiction cannot be supplied by anticipating a federal question in a defense. However, this incomprehensible argument has nothing to do with the basis for the state claims presented in Counts II through IV.

As to Count II, while the declaratory judgment act provides a procedure, state law provides the basis for the claim. And in that respect, the claim in Count II is based on the court's supplemental jurisdiction pursuant to 28 U.S.C. §1367. Local 150 simply ignores this fact, while again, and again, assuming facts not in evidence. It is Ms. Barker's contention that the well-pled facts do not constitute picketing. Rather, the conduct pled and which will be proved constitutes states torts and crimes, NOT PICKETING. The complaint is properly pled. It cannot be assumed because Local 150 says so, that its

Business Agents were engaged in picketing on the public highways, when in truth, they were purposely assaulting and terrifying Ms. Barker with no picketing or publicity remotely related in time or space to Ms. Barker. Norris-LaGuardia is simply not a defense to subject matter jurisdiction to the well-pled complaint in this case.

In Local 150's subject matter jurisdiction argument relating to Counts II, III, and IV, Local 150 claims that *Garmon* pre-emption applies to Ms. Barker's state law claims. *San Diego Bldg. and Traddes Council v. Garmon*, 359 U. S. 236, 245 (1959). The defendant's argument is based on the naked assertion, without proof, that the facts alleged in the complaint arise out of a labor dispute and thus that Section 7 of the NLRA, 29 U.S.C. §157 preempts Ms. Barker's state law claims. However, the argument begs the question of whether the conduct complained of is permissible conduct arising out a labor dispute. Nowhere in the complaint are there facts describing ambulatory picketing. And the facts will show that the instances of repeated harassing and stalking complained of, no picketing occurred, no publicity occurred , and no attempt to communicate that a labor dispute was at issue occurred during the course of Local 150's conduct complained of by Ms. Barker. In other words, Local 150 has done nothing more in their memo than slap a label on their conduct that will be hotly disputed by the plaintiff at trial should the defense be based on picketing. The facts alleged in the complaint are a far cry from the situations presented in any of the defendant's cited cases.

For the same reasons, the defendant's citation of *Baker v. Farmers Elec. Coop.*, Inc. 24 F.3de 274 (5th Cir. 1994); Richardson v. Krucho & Fries, 966 F.2d 153 (4th Cir. 1992); and *Carter v. Sheet Worker's Int'l Assoc.*, 724 f.2d 1472 (1984) are similarly inapplicable to the present Rule 12(b) motion.

The defendant also suggests that Counts II, III, and IV should be dismissed because the court lacks supplemental jurisdiction over the state law claims pled by Ms. Barker in those counts.

In a misleading argument, the defendant suggests that any time a state law claim can be dismissed without affecting the federal claim, supplemental jurisdiction does not exist. See Local 150's memorandum at page 13. However, this statement of the law is inaccurate. Needless to say, the dismissal of a state claim could never affect a federal claim that stands on its own. Rather, the fact that actual damages flow from the DPPA violation alleged in Count I of the Complaint that constitute the conduct that led to the damages suffered by Ms. Barker would ordinarily be tried in a single case. Indeed, in order to show why the DPPA violations have caused Ms. Barker damages far in excess of the amount of $2,500 statutory damages, the plaintiffs expect to show that the DPPA violation is causally related to the stalking of Ms. Barker at issue in Counts II through IV.

Moreover, and inexplicably, the defendant argues that the DPPA count is not part of the same common nucleus of operative fact as the state tort claims brought by Ms. Barker, and falsely asserts that the plaintiff has "expressly" excluded the allegations raised in their DPPA claim from Ms. Barker's state tort claims. See Local 150 Memorandum at page 13, citing ¶44 of the Complaint twice. In fact, violation of the DPPA is expressly alleged at paragraphs 50 through 52 of the Complaint, and each of those paragraphs is expressly incorporated by reference in Counts II, III and IV of the complaint.

Thus, again, at this pleading stage, there is no basis for concluding (on the pleadings) that the allegations of Counts I through IV do not arise from the same core of

"operative facts." Yet, Local 150 falsely states that "Plaintiffs expressly acknowledge that those allegations are only common to the state torts and do not pertain to the DPPA count (Complaint ¶ 44). " We simply cannot locate any such statement in Complaint ¶ 44. Nor do plaintiffs expressly exclude the conduct complained of in the state tort counts from the conduct complained of in the DPPA count. Such conduct we believe will be shown to be derived from Local 150's unlawful use of Tammy and Tim Barker's motor vehicle personal information to learn her residence address. Indeed, each of the state law counts, expressly incorporate paragraphs 31 to 61 of Count I account into the respective state law count.

In short, it is absolutely incorrect for Local 150 to argue that principles of ancillary and pendant jurisdiction should not apply to the four Counts of the Indictment when they are so intertwined factually and legally as to incorporate (as to Ms. Barker) the operative facts of the wrongful conduct that Ms. Barker hopes to prove was engaged in by the Local as a consequence of their wrongful obtaining and using of her address in violation of the DPPA.

Even a reading of the single case Local 150 cites in support of its motion to dismiss the state tort claims shows that it has miscited and misused the case. In *Microthin.Com v. Siliconezone, USA, LLC*, the district court found that the plaintiff's patent case would not be affected by the dismissal of defendant's tort counterclaims arising out of a dispute between company employees at a trade show. Indeed, nothing could be further from the facts alleged in the four count complaint in this case. Failing to analyze the case it relies upon, Local 150 fails to cite to the rule of decision applied in the *Microthin.com* case. As Judge Kendall noted in that case, the fact that a dispute occurred

at a single trade show between employees of the two firms had little if any factually operative connection to the plaintiff's claim that the defendant was infringing its patent. *Microthin.com, Inc. v. Siliconezone*, USA, LLC, 2006 WL 3302825 (N.D. Ill.) However, it is abundantly clear in this case, that the alleged violation of Ms. Barker's right not to have her personal information allegedly used to conduct a campaign of harassment continuing until the filing of this lawsuit when it is derived from the unlawful obtaining of private motor vehicle records, is allegedly directly related to the unlawful use thereof in conducting a campaign of harassment, stalking, assault, terror and violence against the mind of Ms. Barker. Thus, the argument that the complaint fails to plead facts sufficient to show supplemental jurisdiction should be rejected.

Local 150 makes no argument based on the language of the statutory grant of supplemental jurisdiction contained in 28 U.S.C. 1367(a) as it applies to this case. That statute provides the district courts with jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Indeed, in this case Local 150 does not even attempt to analyze how closely related the claims are as pled. Given the inaccurate statements in Local 150's with respect to the pleading, see above discussion of Complaint ¶44, there can be little doubt that the incorporation of virtually all of the operative facts relating to Ms. Barker in each count of the Complaint shows that the court should exercise supplemental jurisdiction over the state tort claims and Count II.

The statutory language of §1367(c) does allow the court to decline to exercise supplemental jurisdiction when the claim raises a novel or complex issue of state law

(clearly inapplicable in this case), when the supplemental claim substantially predominates over the original jurisdiction claim (clearly they do not in this case), or when the federal case is dismissed or for exceptional or compelling reasons (none have been suggested).

Finally, in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), relied on by the defendant, the court expressly held that state tort claims that were related to the federal Taft-Hartley Act violation alleged by Gibbs against the union, were properly brought under principles of pendant jurisdiction because the union's alleged conduct constituted both a violation Taft-Hartley and a state conspiracy to interfere with plaintiff's employment contract. In 1974, in *Hagans v. Lavine*, 415 U.S. 528, 545-546 (1972), the Court stated that given advantages of economy and convenience and no unfairness to litigants, Gibbs contemplates adjudication of pendant claims, not dismissal.

### The State Tort Claims of Intrusion upon seclusion is properly pled

Local 150 claims that Count IV of the Complaint does not properly plead the cause of action for intrusion upon seclusion under Illinois law. We cite the court to Judge (then Justice) Kapala's decision regarding the elements of that claim in *Schiller v. Mitchell*, 357 Ill.App.3d 435, 828 N.E.2d 323 (2005) and acknowledge that private facts must be alleged. However, plaintiff's argument is that the DPPA violation incorporated into Count IV is sufficient to plead private facts. Therefore, defendant's motion should be denied at this stage of the pleadings. We believe that the facts alleged should be found by this court to be sufficient to state a claim for outrageous conduct based on intrusion into Ms. Barker's mind, health and wellbeing, causing her anguish and suffering, and based

on the privacy interests inherent in the DPPA. This court should recognize the alleged facts as sufficient to state a claim for relief under Illinois law.

### The State Tort Claims Were Timely Filed

The defendant also argues that the Illinois statute of limitations for privacy torts is one year and therefore paragraphs 49(a) through 49(rr) of the state tort claims should be stricken. No argument is offered as to why the facts pled in 49(a) through 49(rr) are irrelevant to the proof or pleading of the torts alleged and which continued throughout the period up to the filing of the complaint. As pled, the tort claims are continuing and are not properly dismissed. Nor should the inception of the torts be stricken simply because the tortious conduct began prior to one year from the filing of the complaint, for it is clearly pled that they continued into the statute of limitations period. Moreover, the facts will be proved at trial as part of the proof. The paragraphs should not be stricken based on the defendant's unsupported request, and its failure to cite a case or Rule to support the request.

For all of the foregoing reasons, defendant's motion to dismiss or stay should be denied.

Respectfully submitted,

By: s/Dean J. Polales

Attorneys for Plaintiffs:

Dean J. Polales
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602
(312) 977-4883

Robert T. Hanlon
Law Offices of Robert T. Hanlon & Assoc., P.C.
14212 Washington Street, #200
Woodstock, IL 60098
(815) 206-2200