IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Barker, Timothy Robert Barker, and ) <br> Melisa Merryman, on behalf of themselves ) <br> and on behalf of those similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Local 150, International Union of ) <br> Operating Engineers, AFL-CIO, ) <br> ) <br> Defendant. ) | Case No. 08 C 50015 <br><br> Judge Kapala <br> Magistrate Judge Mahoney <br><br> Trial by Jury Demand |

**LOCAL 150's REPLY IN SUPPORT
OF ITS MOTION TO DISMISS OR STAY**

Local 150 will make one observation about Plaintiffs' Response before addressing its merits. On January 21, 2008, Plaintiffs filed their Complaint. On February 22, 2008, Plaintiffs filed their First Amended Complaint. Local 150 moved to dismiss Plaintiffs' First Amended Complaint, and all citations in Local 150's opening brief were to that Complaint[1] (see Def's Memo at 2, fn. 1). Plaintiffs actually criticize Local 150 for mischaracterizing allegations in their Complaint (see Plfs' Memo at 17: "Yet, Local 150 falsely states that . . . . We simply cannot locate any such statement in Complaint ¶44"). Plaintiffs could not locate the statement because they were obviously looking at the wrong document—the Complaint, rather than the First Amended Complaint. Plaintiffs' sloppiness in citing to the wrong document in their Response brief has unnecessarily complicated the briefing on Local 150's Motion to Dismiss. In this

---

[1] In their Response, Plaintiffs appear to cite to their initial Complaint, as opposed to the First Amended Complaint. For example, in their Response, Plaintiffs repeatedly cite to Paragraphs 42(a) through (ppp); yet, Paragraph 42 of the First Amended Complaint contains a single averment.

document, Local 150 will continue to cite to the First Amended Complaint and will attempt, for the convenience of the Court, to reconcile the inconsistencies found in Plaintiffs' Response.

## ARGUMENT

**I.    This Matter Should Be Stayed Pending Resolution of MES, *et al.* v. Local 150, *et al.***

Plaintiffs object to Local 150's request that this Court take judicial notice of court documents; Plaintiffs are likewise incredulous at Local 150's characterization of certain facts in the First Amended Complaint as "ambulatory picketing"; finally, Plaintiffs insist that Ms. Barker has alleged conduct that is, among other things, "assaultive" and "violent." Were this a fresh case, with a fresh set of facts and a fresh cast of characters, Plaintiffs' reliance on the liberal notice pleading standard might be sufficient to withstand a motion to dismiss. There is, however, "a real world as well as a theoretical one." Lee v. Illinois, 476 U.S. 530, 548 (1986) (Blackmun, dissenting). Plaintiffs' arguments about the liberal notice pleading ring hallow when viewed in conjunction with MES, *et al.* v. Local 150, *et al.*, Case No. 05 C 50023, that has been pending in this Court (i.e., in the real world) for over three years. Ms. Barker and her facts are hardly new to this Court. Plaintiffs' arguments regarding the proposed stay are baseless.

    **A.    Defendant's Citation to Court Documents Was Proper.**

Plaintiffs object to Local 150's reliance on court documents from the MES matter and move to strike "any facts asserted by Local 150 in its memorandum of law that are not alleged in the Complaint. . ." (Plfs' Memo at 1-2).[2] Local 150 argued that this Court should stay this case until the resolution of MES because the two cases are duplicative in many respects. To demonstrate the duplicative nature of the two cases, Local 150 cited to various court documents

---

[2] Plaintiffs did not paginate their brief. The citations are to the page numbers supplied by the Court's electronic filing system at the top of the document.

2

from the MES case.³  A court may take judicial notice of pleadings and court orders entered in previous cases without converting a motion to dismiss into a motion for summary judgment. General Elect. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-82 (7th Cir. 1997); Menominee Indian Tribe of Wisc. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998).  In addition, Plaintiffs opened the proverbial door to the examination of testimony in the MES case by making explicit reference to that testimony in their First Amended Complaint (see Complaint ¶ 47). "[D]ocuments attached to a motion to dismiss are considered part of the pleading if they are referred to in the plaintiff's complaint and are central to his claim."  McCready v. Ebay, Inc., 453 F.3d 882, 891 (7th Cir. 2006).  The introduction of testimony and documents from the MES case by Local 150 in this case is proper.

      **B.**      **Defendant's Citation to Judge Reinhard's Order of May 24, 2006, Was Proper.**

On May 24, 2006, Judge Reinhard denied the MES Plaintiffs' request for injunctive relief for lack of subject-matter jurisdiction under the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*. Notably, the MES Plaintiffs based their request for injunctive relief on an affidavit from Ms. Barker.  In his May 24th Order, Judge Reinhard characterized Local 150's conduct as picketing that grew out of a labor dispute.

On March 5, 2008, one of the MES Plaintiffs, PSI, moved again to enjoin the picketing. Ms. Barker was the only witness to testify on behalf of PSI.  After hearing the evidence, this Court posed eleven discrete legal questions to the parties (This Court's Order of May 1, 2008, attached hereto as Exhibit A).  The first question was (id.):

---

³ For example, the allegations in this Complaint (Paragraphs 49(a) through (ppp)) are virtually identical to the facts in: (1) Ms. Barker's Declaration attached to the MES Complaint; (2) Ms. Barker's Declaration that was attached to PSI's motion for preliminary injunctive relief; and, (3) the facts about which she recently testified before this Court at the preliminary injunction hearing.

3

> What basis is there to disturb this court's order of May 24, 2006, finding that this matter grows out of a labor dispute, and therefore pursuant to Section 4 of the Norris-LaGuardia Act, 29 U.S.C. §104, this court is without jurisdiction to issue the requested injunction.

Notwithstanding the facts presented in MES, Plaintiffs argue "[n]othing pled in plaintiff's complaint is protected peaceful picketing of Ms. Barker or her employer" (Plfs' Memo at 3). Later, Plaintiffs argue that "Local 150 has done nothing more in their memo than slap a label on their conduct that will be hotly disputed by Plaintiff at trial should the defense be based on picketing" (Plfs' Memo at 15). Again, there is a real world and a theoretical one. Lee v. Illinois, 476 U.S. at 548. It is incredibly disingenuous for Plaintiffs to continue to hide behind the four corners of its Complaint while this Court is in the process of evaluating Ms. Barker's testimony to determine if there is any basis to disturb Judge Reinhard's Order holding that this Court lacks subject-matter jurisdiction to enjoin Local 150's peaceful picket.[4]

Plaintiffs next argue that this Court may not take judicial notice of Judge Reinhard's Order of May 24, 2006, because it is an "adjudicative fact." Plaintiffs' argument misses the mark. A court may take judicial notice of a "judicial act" to establish the fact of such litigation and not necessarily for the truth of the matter asserted. General Elec. v. Lease Resolution Corp., 128 F.3d 1074, 1082 n.6 (7th Cir. 1997), citing, United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); Liberty Mut'l Inc. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992). Local 150 recognizes that Judge Reinhard's May 24th Order is interlocutory in nature and does not yet have effect under principles of collateral estoppel. Prymer v. Ogden, 29 F.3d 1208, 1212 (7th Cir. 1994). Judge Reinhard's Order documents this Court's preliminary

---

[4] Plaintiffs also state: "And the facts will show that the instances of repeated harassing and stalking complained of, no picketing occurred, no publicity occurred, and no attempt to communicate that a labor dispute was at issue occurred during the conduct complained of by Ms. Barker" (Plfs' Memo 15). This Court heard Ms. Barker's testimony. Based on Ms. Barker's previous testimony and the allegations in the MES Complaint, Plaintiffs' representation about what the facts will show in this case is questionable, at best.

characterization of the alleged conduct as "picketing." At a minimum, this Court may take judicial notice of interlocutory orders entered in MES for the purpose of establishing that this Court in MES will ultimately decide the issue that Plaintiffs say will be "hotly disputed by Plaintiff" in this case (Plfs' Memo at 15)—namely, whether Local 150 was engaged in picketing.

As explained in Local 150's opening brief, picketing is protected by Section 7 and regulated by Section 8(b)(4) of the National Labor Relations Act. Ms. Barker's state torts would be preempted under San Diego Bldg. and Trades Council v. Garmon, 359 U.S. 236, 245 (1959), if this Court were to affirm Judge Reinhard's interlocutory order and find that the conduct alleged by Ms. Barker (both on the witness stand in MES and in this Complaint) is in fact ambulatory picketing. Also, a finding in MES that the conduct described by Ms. Barker is in fact picketing would preclude this Court from enjoining the picketing in this case under the Norris-LaGuardia Act. Since a final judgment is finally in sight in the MES case and this case has just begun, Local 150 believes this Court to stay this matter pending final resolution of the MES case to avoid duplicative litigation over the same issue (namely, whether Local 150 was engaged in picketing).

      **C.**    **A Final Order in the MES Case Will Have Preclusive Effect in this Case.**

In its opening brief, Local 150 argues that "a final judgment entered in the MES case would have preclusive effect in this case under principles of collateral estoppel" (Def's Memo at 7). Plaintiffs characterize Local 150's argument as "specious" and then offer a bizarre discussion of *res judicata* and collateral estoppel that appears to have been reprinted directly from a treatise (Plfs' Memo at 5). Plaintiffs' discussion of the historical development of the doctrines provides little help in resolving the issue before the Court.

5

In the Seventh Circuit, "for a ruling to have collateral estoppel effect, four elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must be fully represented in the prior action." H-D Michigan, Inc. v. Top Quality Service, Inc., 496 F.3d 755, 760 (7th Cir. 2007). The same conduct alleged in this Complaint has been alleged in MES. The MES Plaintiffs attached a 44-paragraph affidavit from Ms. Barker to their Complaint. Ms. Barker has testified in the MES case in a preliminary injunction hearing to the same facts alleged in her Complaint. The MES Plaintiffs have argued that Local 150 is not engaged in picketing, and, if so, that the picketing has been accompanied by violence which puts it into an exception under the Norris-LaGuardia Act that permits a federal court to enter an injunction. In this case, Ms. Barker alleges, *inter alia*, that Local 150 is not picketing and that she has been subject to assaultive and violent behavior (Plfs' Memo at 11). Thus, the two cases plainly involve the same issues. And, the issues have been and continue to be fully litigated in the MES case. As this Court is aware, the parties in MES are currently preparing their Rule 56 papers and drafting responses to the eleven questions posed by this Court about this Court's jurisdiction to enjoin picketing.

As explained above, the determination of whether Local 150 was engaged in lawful picketing is central to the claims being advanced by the MES Plaintiffs. Finally, Ms. Barker has been fully represented in the MES case; Ms. Barker has also been held out as a party representative of Plaintiff PSI. Her interests in the MES case have been ably represented by Messrs. Smetana and Avakian. Her attorney in this case, Mr. Hanlon, was present throughout the injunction hearing and actually identified himself on the record. He was not, as Plaintiffs

6

suggest, a mere observer. Notably, Ms. Barker need not be a party in the MES case for collateral estoppel to apply—it is enough that her interests were fully represented. Beyond that, as a current employee and party representative of Plaintiff PSI, facing the same picket about which all the MES Plaintiffs complain, Ms. Barker is in privity with her employer, PSI.

Finally, despite arguing that this Court may not take judicial notice of "adjudicated facts" (or any facts for that matter) in the MES case, Plaintiffs misrepresent this Court's ruling in MES. Plaintiffs argue that Local 150 "obtained a favorable ruling in the MES case that PSI could not assert Mrs. Barker's rights in that case" (Plfs' Memo at 6). This Court has made no such ruling—which probably explains why Plaintiffs do not support their argument with a citation to the record in MES. In fact, this Court heard two days of testimony from Ms. Barker and entered an agreed temporary restraining order that restricted Local 150's ability to picket Ms. Barker. Plaintiffs' misrepresentation of the record in MES is troubling. In any event, a final judgment in MES will have preclusive effect in this case.

### D. Local 150 Does Not Intend to Prevent Ms. Barker from Seeking Relief.

Plaintiffs misconstrue Local 150's argument regarding the merits of staying this case under final resolution of the MES matter when they argue (Plfs' Memo at 4):

> Nowhere in defendant's memorandum is there a hint of why it would be either just or fair to prevent an individual from seeking a remedy for alleged wrongs done to her personally because her employer is seeking a remedy for alleged wrongs done to it under different legal theories.

Although it is true that Ms. Barker's employer seeks relief under a different legal theory, at issue in both cases is whether the conduct described by Ms. Barker on the witness stand in the MES case and in this Complaint is picketing or something else. Local 150 believes that the interests of judicial economy are best served by staying this case until the MES Court enters a final judgment resolving that central issue.

This Court has indicated that it will rule on the <u>MES</u> Plaintiffs' request for preliminary injunctive relief in conjunction with its ruling on Local 150's Rule 56 Motion in that case. In ruling on Local 150's Rule 56 Motion, this Court also will have to determine whether Local 150's picketing of Ms. Barker and others was lawful, protected activity. A ruling from this Court in <u>MES</u> that Local 150 was engaged in lawful picketing in its dealings with Ms. Barker will preclude Ms. Barker from re-litigating that same question in this case under principles of collateral estoppel. Moreover, a final judgment characterizing the conduct alleged by Ms. Barker as mere picketing will mean that her state torts are <u>Garmon</u>-preempted. If, on the other hand, this Court were to find that Local 150's conduct was something other than lawful picketing, Local 150 will be precluded from arguing otherwise, and the parties in this case will not have to litigate the applicability of the <u>Garmon</u> preemption defense. Entering a stay will not prevent Ms. Barker from seeking a remedy; it will simply obviate the need for duplicative litigation on the same issue in this case. Consequently, this Court should stay Count I.

## II.     The Declaratory Judgment Count Should Be Dismissed.

Plaintiffs argue that "Ms. Barker seeks a declaration that the Local has violated her rights to privacy and peace by the nature of their [sic] outrageous conduct as pled in the Complaint" (Plfs' Memo at 12). Local 150 argued in its opening brief that the Declaratory Judgment Act does not allow a party to bring a suit to determine if its adversary engaged in unlawful conduct. Plaintiffs respond with the following (Plfs' Memo at 14):

> Thus, while Local 150 cites unreported cases for a general proposition of law relating to one of the primary purposes of the declaratory judgment act, it does not cite a single case, nor make a single cogent argument as to why the remedy should be denied on a motion to dismiss. Indeed, defendant's cases are district court cases that denied the requested relief in three fact specific cases, but failed to discuss the appropriateness of the discretion to be exercised by the Act.

There are several flaws with Plaintiffs' argument.  First, in this electronic age, the distinction between "reported" and "unreported" district court decisions is insignificant.  And, for what it is worth, Judge Gettleman's decision in <u>In re Trans Union Corp. Privacy Litigation</u>, 211 F.R.D. 328 (N.D. Ill. 2002), was reported in the *Federal Rules Decisions*.  Second, denying Plaintiffs' Declaratory Judgment Act claim on a motion to dismiss is entirely appropriate since this Court need only accept Plaintiffs' representation that it is seeking a declaration that Local 150 engaged in unlawful conduct; this Court need not weigh facts or make any credibility determinations.  Finally, Plaintiffs suggest that the cases cited by Local 150 fail to address the "discretionary" component of the Declaratory Judgment Act.  That a court has discretion to consider an otherwise properly pled declaratory judgment action does not mean that a federal court has discretion to hear *any* claim so long as it is brought pursuant to the Declaratory Judgment Act.  <u>See, e.g.</u>, <u>International Paper Co. v. Androscoggin Energy LLC</u>, 00 C 6215, 2003 U.S. Dist. LEXIS 10563 (N.D. Ill. June 20, 2003) (the Declaratory Judgment Act "<u>does not permit</u> a party to ask if an adversary can do something without incurring liability." [Emphasis supplied]).  Such a rule would eviscerate the bedrock principle that federal courts are courts of limited jurisdiction and may not exercise jurisdiction absent a statutory basis.  <u>Exxon Mobile Corp. v. Allapattah Services, Inc.</u>, 545 U.S. 546, 552 (2005).  Elsewhere, Plaintiffs explain (without citation to a case) "[t]he determinative factor is whether the declaratory action will probably result in more expeditious and economical determination of the entire controversy" (Plfs' Memo at 13).  Plaintiffs cite no authority for a court's discretion to entertain a declaratory judgment action brought against one's adversary or the "determinative" role that principles of judicial economy play in the viability of an otherwise improper declaratory judgment action.

Plaintiffs also offer a school of red herrings that do nothing to support their claim that this Court has jurisdiction over the Declaratory Judgment Act claim. For example, Plaintiffs argue that Rule 57 of the Federal Rules of Civil Procedure provides that the existence of other adequate remedies "does not bar an otherwise appropriate action for declaratory judgment" (Plfs' Memo at 13). The existence of other remedies is not at issue. In addition, Plaintiffs say that the only classes of cases exempt from the Declaratory Judgment Act state and federal tax cases (Plfs' Memo at 13). Local 150 is not arguing that Plaintiffs' claim should be dismissed based on its subject matter. Local 150 is arguing that Plaintiffs' claim should be dismissed because a plaintiff may not bring a declaratory judgment action against an adversary. Plaintiffs have offered no credible argument to rebut Local 150's argument. Consequently, this Court should dismiss Count II.

### III.  This Court Lacks Supplemental Jurisdiction Over Plaintiffs' State Torts

Local 150 has moved to dismiss Plaintiffs' state torts for lack of supplemental jurisdiction under 28 USC § 1367(a). Plaintiffs respond by arguing that Local 150 has inaccurately stated the law by "suggest[ing] that <u>any time</u> a state law claim can be dismissed without affecting the federal claim, supplemental jurisdiction does not exist" (emphasis supplied) (Plfs' Memo at 16). Plaintiffs misstate Local 150's argument. Local 150 cited <u>Microthin.Com, Inc. v. Siliconezone USA, LLC</u>, 2006 U.S. Dist. LEXIS 82976 (N.D. Ill. 2006), for the proposition that the courts examine, as one factor in the analysis, whether the federal claim will be unaffected if the state law claim is dismissed. <u>See also</u> <u>Eager v. Commonwealth Edison Company</u>, 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002). In this case, if the state law claims were dismissed, the federal DPPA claim would be unaffected.

Plaintiffs further argue that Local 150 has failed to show how the two claims do not stem from a common nucleus of operative fact.  In evaluating supplemental jurisdiction, this Court should examine whether the state claim realleges and incorporates allegations contained in the federal claims.  G.M. Hartson Constr. Co. v. Chicago, 2006 U.S. Dist. LEXIS 9346 at *13 (N.D. Ill. 2006) citing Freiburger v. Emery Air Charter, 795 F. Supp. 253, 258 (N.D. Ill. 1992).  In Paragraph 44 of the First Amended Complaint, Plaintiffs only reassert and re-allege Paragraphs 1 through 8 and 17 of Count I.  Plaintiffs fail to reassert or re-allege Paragraphs 9 through 16 or 18 through 28, all of which contain the facts relating to the DPPA violation.

Plaintiffs quibble with Local 150's assertion that "Plaintiff's expressly acknowledge that those allegations are *only* common to the state torts and do not pertain to the DPPA" (Def's Memo at 13; Plfs' Memo at 16-17).  Plaintiffs claim that they cannot find such a statement in Paragraph 44 (Plfs' Memo at 17).  As explained above, Plaintiffs were unable to do so because they were looking at the wrong document.  Paragraph 44 makes clear that Plaintiffs failed to reassert or re-allege any of the DPPA violation facts into the state tort allegations.

Plaintiffs also argue that the two claims are "so intertwined factually and legally," such that the Court should retain jurisdiction over the state torts because the alleged "unlawful obtaining" of Ms. Barker's address from her motor vehicle records is "directly related to the unlawful use thereof in conducting a campaign of harassment, stalking, assault, terror and violence against the mind of Ms. Barker" (Plfs' Memo at 17-18).  What this argument reveals is that the DPPA claim brought on behalf of millions of Illinois motorists is only loosely related to the alleged "campaign of harassment" faced only by Ms. Barker.

"Although a loose "factual connection" may be sufficient to confer supplemental jurisdiction, the facts at issue must be both common and operative."  Angsten v. Blameuser,

11

2005 U.S. Dist. LEXIS 28828 at *9 (N.D. Ill. 2005), citing, United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  "Courts will routinely compare the facts necessary to prove the elements of the federal claim with those necessary to the success of the state claim to assess whether they share a common nucleus of operative fact."  Id. at *9-10.  If the operative facts necessary for the tort claims and federal claim are wholly unrelated, even though the two claims may share a general factual background, the Court does not have supplemental jurisdiction.  Id. at *15-16.

The facts necessary to prove Local 150 violated the DPPA will rest on whether it "obtained, disclosed and/or used" "personal information" for a purpose not expressly allowed by the Act.  18 USC § 2724.  The DPPA claim is brought as a potential class action on behalf of millions of Illinois residents, while the state tort claims are brought solely on behalf of Ms. Barker (Complaint ¶¶ 30, 69, 74, 82).  Local 150's alleged encounters with Ms. Barker will be irrelevant to determining liability under the DPPA.

In contrast, to prevail on a claim for IIED, Plaintiffs must show that (1) the conduct was truly extreme and outrageous; (2) that the actor intended or that it highly probable that his conduct would inflict emotional distress; and, (3) the conduct in fact caused the emotional distress.  Public Finance Corp. v. Davis, 66 Ill. 2d 85, 90 (Ill. 1976).  Again, whether Ms. Barker suffered emotional distress is irrelevant to the DPPA.

Similarly, Plaintiffs admit that Ms. Barker's state tort actions rest on the effects that the alleged "campaign of harassment" had against the "mind of Ms. Barker" (Plfs' Memo at 18). The intrusion-upon-seclusion claim will therefore rest on whether Local 150 committed an authorized intrusion into Ms. Barker's "mind", whether the intrusion was highly offensive to a reasonable person, whether the matter intruded upon was private, and whether the intrusion caused anguish and suffering.  See Busse v. Motorola, Inc., 315 Ill. App. 3d 67 (Ill. App. 1st

Dist., 2000). The facts necessary to prove these elements relating solely to Ms. Barker's state of mind are not related to the facts necessary to prove a DPPA violation.

Finally, Plaintiffs ask the Court to assert supplemental jurisdiction because of "economy and convenience" (Plfs' Memo at 19). Local 150 believes that the Court should dismiss the state actions for these same reasons. Plaintiffs' state tort allegations will subject potential class members to unnecessary litigation of Ms. Barker's personal claims. There will be extensive testimony regarding Ms. Barker's state of mind, psychiatric well-being, and of the events which allegedly took place well after Local 150 is claimed to have received the motor vehicle lists. Therefore, this Court should dismiss the state tort claims for lack of supplemental jurisdiction.

**IV.     Plaintiffs' Intrusion-Upon-Seclusion Claim Should Be Dismissed.**

    **A.     Plaintiffs Failed to Plead Intrusion Upon Seclusion.**

In its opening brief, Local 150 argued that the tort of intrusion upon seclusion should be dismissed because Plaintiffs failed to plead "private facts." Plaintiffs acknowledge that they must plead private facts and offer the following conclusory arguments: "the DPPA violation incorporated into Count IV is sufficient to plead private facts" and "we believe that the facts alleged should be found by this court to be sufficient" (Plfs' Memo at 19).

In Count IV, Plaintiffs allege that Local 150 obtained information maintained by the state of Illinois like addresses, date of birth, etc. (Complaint ¶ 18(a)). "[M]atters of public record, such as name, address, [and] date of birth …" are not private facts. Zboralski v. Monahan, 446. F. Supp. 2d 879, 884 (N.D. Ill., 2006) citing, Acosta v. Scott Labor LLC, 377 F. Supp. 2d 647, 650 (N.D. Ill., 2005). Other circuits have held that even the discovery of a social security number does "not fit the profile of intrusion upon seclusion" because it is information that is provided to others on a daily basis. Phillips v. Grendahl, 312 F.3d 357, 373 (8th Cir. 2002).

13

Moreover, even if Local 150 obtained Plaintiffs' addresses (a public fact) through improper means, "it does not necessarily make the acquisition of information highly offensive, if the information could just as well have been obtained by proper means." Id., citing, Swarthout v. Mutual Service Life Ins. Co., 632 N.W. 2d 741, 745 (Minn. App. 2001). Moreover, any alleged contact between Local 150 and Ms. Barker occurred on public property or public roadways. Plaintiffs have not alleged private facts; Count IV must be dismissed.

    **B. Plaintiffs' Intrusion-Upon-Seclusion Claim Is Time-Barred.**

The intrusion-upon-seclusion claim is based on conduct dating back to 2003 (Complaint ¶¶ 18(b), 20-22). Illinois has a one-year statute of limitations for all privacy claims. 735 ILCS 5/13-201. Plaintiffs argue, however, that the claim is timely because it is "continuing" in nature (Plfs' Memo at 20). Yet, Plaintiffs fail to cite a single case or statute applying the continuing violation to the tort of intrusion upon seclusion. Notably, Illinois does not apply the continuing violation rule in all tort cases, or in all cases involving a statutory cause of action. Belleville Toyota, Inc. v Toyota Motor Sales, U.S.A., 199 Ill. 2d 325, 348 (Ill. 2002). Other districts have declined to apply the continuing violation theory to invasion of privacy claims where the plaintiff is aware of the alleged violations. See Paul v. Judicial Watch, Inc., 2008 U.S. Dist. Lexis 8266 (D.C. Dist. 2008). Moreover, under the discovery rule, a cause of action accrues when the party "seeking relief knows or reasonably should know of an injury and that it was wrongfully caused." Belleville Toyota, Inc., 199 Ill. 2d at 348. citing, Clay v. Kuhl, 189 Ill. 2d 603 (Ill. 2000). Here, Ms. Barker was clearly aware of any claims she might have against Local 150 when she was allegedly placed under surveillance sometime in 2005 (Complaint ¶ 49(a)).

Even if the continuing violation doctrine has some applicability, two lengthy hiatuses in the alleged conduct are enough to break any alleged continuing violation. See Coughlin v.

14

Wrigley Mfg. Co., 2004 U.S. Dist. LEXIS 8088 (N.D. Ill. 2004) (16-month gap between incidents barred application of the continuing violation theory); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998) (one-year gap "broke the asserted continuum of discrimination"). Plaintiffs concede gaps between unlawful conduct of 10 months (Complaint ¶¶ 49(cc), (dd)), and nearly one year (Complaint ¶¶ 49(qq), (ss)). These breaks in time prevent Plaintiffs from asserting the continuing violation theory. Therefore, even if this Court determines that Plaintiffs pled private facts, Paragraphs 49(a) through (rr) should be stricken.

**V.    The DPPA Is Time-Barred.**

Local 150 argued that the Court should dismiss the DPPA allegation because it is time-barred under the one-year limitations period in Illinois regarding privacy claims. Plaintiffs argue that the Court should adopt the four-year statute of limitations period (Plfs' Memo at 8). Plaintiffs argue that Local 150 "obtained, used, and/or disclosed" the drivers' information "beginning in 2003" (Plfs' Memo at 9). This action was filed on January 18, 2008. Even if this Court adopts Plaintiffs' position regarding the four-year limitations period, the allegations dating back to 2003 are still time-barred and should be stricken.

### CONCLUSION

For all the above reasons, and those raised in Local 150's opening brief, Local 150 respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint or stay these proceedings pending resolution of MES, *et al.* v. Local 150, *et al.*.

| | |
|---|---|
| Dated: May 23, 2008 | Respectfully submitted, |
| Dale D. Pierson<br>Bryan P. Diemer<br>Lauren S. Shapiro<br>Local 150 Legal Department<br>6140 Joliet Road; Countryside, IL  60525<br>Ph. 708/579-6663; Fx. 708/588-1647 | INTERNATIONAL UNION OF OPERATING ENGINEERS,<br>LOCAL 150, AFL-CIO<br><br>By:   s/Bryan P. Diemer<br>       One of the Attorneys for Defendant Local 150 |

15

## CERTIFICATE OF SERVICE

  The undersigned, an attorney of record, hereby certifies that on May 23, 2008, he electronically filed the foregoing ***Reply in Support of Its Motion to Dismiss or Stay*** with the Clerk of Court using the CM/CM/ECF system which sent notification to the following:

| | |
|---|---|
| Mr. Robert T. Hanlon | Mr. Dean J. Polales |
| The Law Offices of Robert T. Hanlon & Assoc., P.C. | Ungaretti & Harris, LLP |
| 14212 Washington Street | Three First National Plaza, Suite 3500 |
| Woodstock, IL  60098 | Chicago, IL  60602 |

            By: s/Bryan P. Diemer
               One of the Attorneys for Defendant Local 150

Attorneys for Defendant:
Dale D. Pierson
Bryan P. Diemer
Lauren S. Shapiro
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

I:\LI\Barker, Barker, & Merryman v. Local 150\Pleadings\Motion to Dismiss\Reply\reply.docx