IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Barker, Timothy Robert Barker, and Melisa Merryman, on behalf of themselves and on behalf of those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>Local 150, International Union of Operating Engineers, AFL-CIO,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>) Case No. 08 C 50015<br>)<br>) Judge Kapala<br>) Magistrate Judge Mahoney<br>)<br>) Trial by Jury Demanded<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiffs Tammy Barker, Timothy Robert Barker, and Melisa Merryman ("Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, by their undersigned counsel, submit this memorandum in support of their Motion For Preliminary Injunctive Relief against Defendant Local 150, International Union of Operating Engineers, AFL-CIO ("Local 150").

## INTRODUCTION

This lawsuit arises from Local 150's violations of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* (the "DPPA" or the "Act"). In particular, and as more fully set forth below, Local 150 has obtained, used, and/or disclosed Plaintiffs' and the putative class's (the "Class") personal information contained in motor vehicle records in contravention of the DPPA. In doing so, and in continuing to obtain, use, possess, and/or disclose such personal information, Local 150 has unlawfully infringed upon Plaintiffs' and the Class's statutory rights and their rights to privacy. As a result of the foregoing, Plaintiffs and the Class have suffered, currently suffer, and will continue to suffer irreparable harm for which there is no adequate remedy at law.

1174780-3

Plaintiffs therefore seek a preliminary injunction against Local 150 granting them and the Class the relief requested below, including but not limited to enjoining Local 150 from further acquiring personal information in violation of the DPPA and immediately tendering to this Court all personal information it has previously acquired in violation of the Act.

## STATEMENT OF FACTS

**I.　　BACKGROUND.**

Local 150 is a labor organization with its principal office located in Countryside, Illinois. (Am. Compl. ¶ 6). At all relevant times, Plaintiffs have been (a) Illinois residents, (b) owners of vehicles registered in the State of Illinois, and (c) holders of Illinois driver's licenses. (Tammy Aff. ¶¶ 3-4; Tim Aff. ¶¶ 3-5; Melisa Aff. ¶¶ 3-5).[1] Plaintiffs have brought this action against Local 150 on behalf of themselves and on behalf of the Class, which is defined as:

> Each and every individual whose name, address, and/or driver identification number (driver's license number), are contained in motor vehicle records obtained by [Local 150] from the office of the Illinois Secretary of State, without the express consent of such individuals, commencing 4 years prior to the date of the filing of this action and through the date of judgment herein, but excluding all Federal Judges and their family members within the first degree of consanguinity and persons who have expressly authorized the Illinois Secretary of State's office to provide third parties with their "personal information" for any purpose.

(Am. Compl. ¶ 29).

**II.　　LOCAL 150's ILLEGAL ACQUISITION AND USE OF PERSONAL INFORMATION IN CONNECTION WITH MOTOR VEHICLE RECORDS.**

For many years, including from 2002 through 2005, Local 150 obtained from the Illinois Secretary of State (the "Secretary of State") CDs, disks, and/or microfiche data containing Illinois motor vehicle records on at least an annual or bi-annual basis. (*See* Soria Aff. ¶ 3;[2]

---

[1] The Affidavits of Tammy Barker ("Tammy Aff."), Timothy Robert Barker ("Tim Aff.") and Melisa Merryman ("Melisa Aff.") are attached hereto as Exhibits 1, 2, and 3, respectively.
[2] The Affidavits of Linda Soria ("Soria Aff."), Thomas Merryman ("Thomas Aff."), and Dan Jerger ("Jerger Aff.") are attached hereto as Exhibits 4, 5, and 6, respectively. Exhibits B and G of Mr. Jerger's affidavit contain confidential "personal information" and, thus, have been partially redacted. Plaintiffs intend to seek

Thomas Aff. ¶¶ 3, 7; Jerger Aff. ¶¶ 5-9; Exs. 7 & 8). Many, if not all, of these motor vehicle records were obtained by Local 150 by paying the Secretary of State. (*See* Soria Aff. ¶ 11; Exs. 7 & 8). For instance, Local 150 obtained motor vehicle records containing personal information under the following circumstances:

- On or about March 10, 2002, Local 150 executed an agreement for the purchase of "vehicle registration microfiche (plate number sequence)" from the Secretary of State, representing that its purpose for obtaining such motor vehicle records was "to check plates on construction sites only." (*See* Ex. 7). Local 150 paid $500.00 for such records with a check drawn on its bank account. (*Id.*).

- On or about June 4, 2003, Local 150 executed another agreement for the purchase of "vehicle registration microfiche (plate number and sequence)" from the Secretary of State, which Local 150 described as "the most current microfiche set: Registration – used to locate listings by plate number." (*See* Ex. 8). Local 150 again represented that its purpose for obtaining such motor vehicle records was "to check plates on construction sites only." (*Id.*). Local 150 paid $500.00 for such records with a check drawn on its bank account. (*Id.*).

- In or around October 2004, Local 150 obtained two searchable CDs (the "October 2004 CDs") embedded with Illinois motor vehicle records from the Secretary of State. (*See* Soria Aff. ¶ 3; Thomas Aff. ¶¶ 3, 7; Jerger Aff. ¶¶ 5-9).

- In 2005, Local 150 obtained one or more searchable CDs embedded with Illinois motor vehicle records from the Secretary of State. (*See* Soria Aff. ¶ 3).

The October 2004 CDs alone contain more than eleven million (11,000,000) Illinois motor vehicle records, including records containing the personal information of Timothy and Tammy Barker, Melisa Merryman, and, upon information and belief, the majority of the Class. (Thomas Aff. ¶¶ 3, 7; Jerger Aff. ¶¶ 8-9, 15, Ex. G). Upon information and belief, the disks obtained by Local 150 in 2002, 2003, 2005, and at other times also include motor vehicle records containing the personal information of Plaintiffs and millions of other Illinois drivers, including some or all of the Class.

The motor vehicle records contained on the aforementioned CDs and microfiche data

---

leave of this Court to file a complete version of Mr. Jerger's affidavit under seal pursuant to Local Rule 26.2.

include the following information relating to each registered vehicle: (a) owner's name; (b) owner's address; (c) owner's driver's license number; (d) license plate number; (e) license expiration date; (f) vehicle identification number; (g) vehicle type; and (h) reference number. (Soria Aff. ¶ 4; Jerger Aff. ¶¶ 8-11). During the relevant time period, Local 150 reviewed these motor vehicle records to obtain identifying personal information. (Soria Aff. ¶¶ 5-6; *see also* Jerger Aff. ¶¶ 12-13, Exs. D-E). In particular, Local 150's then-president, William E. Dugan, instructed Local 150 employees to obtain such personal information from the records. (Soria Aff. ¶ 10). Local 150 would then use such information to locate and identify the names and home addresses of various members of the Class, including, upon information and belief, Plaintiffs. (Soria Aff. ¶ 7).

None of the Plaintiffs have ever provided Local 150 with their consent – written or otherwise – to obtain, possess, use, or disclose any personal information about them, including any information contained in motor vehicle records. (Tammy Aff. ¶ 7; Tim Aff. ¶ 8; Melisa Aff. ¶ 8). Additionally, no one in the Class – by its very definition – provided Local 150 with consent to obtain, possess, use, or disclose any personal information about them. (*See* Am. Compl. ¶ 29). Upon information and belief, Local 150 continues to possess and use the personal information contained in these motor vehicle records. (Am. Compl. ¶ 28).

## RELEVANT LAW

I.  **THE DRIVER'S PRIVACY PROTECTION ACT.**

   A.  **Background and Purpose of the DPPA.**

Congress enacted the DPPA largely in response to mounting privacy and public safety concerns arising from the easy access to personal information maintained by state motor vehicle departments ("DMVs") by stalkers, harassers, would-be criminals, and other unauthorized individuals. *See Margan v. Niles*, 250 F. Supp. 2d 63, 68 (N.D.N.Y. 2003) (citing DPPA legislative history); *Parus v. Kroeplin*, 402 F. Supp. 2d 999, 1005-06 (W.D. Wis. 2005);

*Locate.Plus.Com, Inc. v. Iowa Dept. of Transp.*, 650 N.W.2d 609, 614 (Iowa 2002). Congress also sought to curb the common practice of states selling the information in motor vehicle records to businesses, marketers, and individuals. *See Reno v. Condon*, 528 U.S. 141, 143-44, 120 S. Ct. 666, 668 (2000) (citing DPPA legislative history); *Locate.Plus.Com*, 650 N.W.2d at 614.

    **B.**    <u>**Prohibition On Unsanctioned Disclosure and Acquisition of Personal Information.**</u>

The DPPA restricts and regulates the disclosure, acquisition, use, and resale of an individual's personal information contained in motor vehicle records with the intent of limiting the information's release to only those persons who have a legitimate and lawful need for the information. *See Reno*, 528 U.S. at 143, 120 S. Ct. at 668; *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1210 (11th Cir. 2005). Thus, save for certain enumerated exceptions such as situations involving government functions and motor vehicle safety, the DPPA forbids a state from disclosing motor vehicle records including an individual's personal information without the express permission from such individual. *See* 18 U.S.C. § 2721(a), (b); *Kehoe*, 421 F.3d at 1210.

Specifically, the DPPA provides that a state DMV "shall not knowingly disclose or otherwise make available" to anyone "personal information ... about any individual obtained by the [DMV] in connection with a motor vehicle record" except to the extent such disclosure is for one of the "permissible uses" enumerated in the Act and/or if the requesting party has obtained written consent from the individual to whom the personal information pertains. 18 U.S.C. § 2721(a), (b). The Act defines "personal information" as:

> [I]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information....

18 U.S.C. § 2725(3).

Similarly, the DPPA makes it "unlawful for any person knowingly to obtain or disclose

1174780-3

5

personal information, from a motor vehicle record, for any use not permitted under [Section 2721(b)]." 18 U.S.C. § 2722(a). It is also unlawful for a person to "make false representation[s] to obtain any personal information from an individual's motor vehicle record." 18 U.S.C. § 2722(b).

### C. Liability and Remedies For Impermissible Acquisition, Disclosure, Or Use of Personal Information.

The DPPA establishes a private cause of action for those individuals whose personal information has been impermissibly obtained, disclosed, or used in violation of Sections 2721-22. Specifically, the Act provides:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted [by the DPPA] shall be liable to the individual to whom the information pertains, who may bring a civil action ....

18 U.S.C. § 2724(a); *Kehoe*, 421 F.3d at 1212. The DPPA also enumerates the following remedies for a person's violation of the Act:

> (1) actual damages, but not less than liquidated damages in the amount of $2,500;
> (2) punitive damages upon proof of willful or reckless disregard of the law;
> (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and
> (4) such other ***preliminary and equitable relief*** as the court determines to be appropriate.

18 U.S.C. § 2724(b) (emphasis added). As such, it is undisputed that Congress has explicitly vested this Court with the use of its equitable powers to enforce the DPPA, including the power to order the very type of preliminary injunctive relief currently sought by Plaintiffs.

## ARGUMENT

### I. THIS COURT SHOULD ENTER A PRELIMINARY INJUNCTION AGAINST LOCAL 150.

The facts of this dispute require that this Court grant Plaintiffs' Motion for Preliminary Injunctive Relief. A district court may grant a preliminary injunction if the party seeking relief can show (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the party seeking relief will suffer irreparable harm if the injunction is not

granted. *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994). If the moving party satisfies these conditions, the court must balance the harm to the nonmoving party if relief is granted. *Id.* Public interest in terms of the consequences of granting or denying the injunction to non-parties must also be considered by the court. *Id.* Here, each relevant factor strongly supports the entry of injunctive relief.[3]

### A. Plaintiffs Are Likely To Succeed On The Merits, As They Will Be Able To Establish Local 150's Violation of the DPPA.

In order to show a likelihood of success on the merits at the preliminary injunction stage, Plaintiffs need only show that they have a "better than negligible" chance of succeeding on their DPPA claim, a low threshold. *See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997) (reversing denial of preliminary injunction); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988) (affirming issuance of preliminary injunction).

To succeed on their DPPA claim (*i.e.* to establish that Local 150 has violated, and is liable under, the DPPA), in turn, Plaintiffs must show that Local 150 knowingly obtained, disclosed, *or* used "personal information" from motor vehicle records for a purpose not authorized by the Act. *See* 18 U.S.C. § 2724(a); *Kehoe*, 421 F.3d at 1212; *Pichler v. UNITE*, 228 F.R.D. 230, 241-42 (E.D. Pa. 2005). Because the facts demonstrate that Local 150 has at least improperly *obtained* personal information contained in motor vehicle records, Plaintiffs are extremely likely to succeed on the merits.

---

[3] Whether to require a bond is a matter committed to the Court's discretion and Plaintiffs respectfully submit that a bond is not merited in this case. *See Prairie Band of Potawatomi Indians v. Pierce*, 75 F. Supp. 2d 1186, 1188-89 (D. Kan. 1999) (issuing preliminary injunction without requiring bond). As more fully stated below, no actual injuries to Local 150 could possibly flow from the issuance of the requested injunction because Local 150 was never entitled to obtain, possess, use, or disclose the personal information that is at issue.

1. **Local 150 Obtained Plaintiffs' and the Class's "Personal Information" From Motor Vehicle Records.**

As stated above, Local 150 has, on multiple occasions, obtained from the Secretary of State disks containing millions of motor vehicle records that include, *inter alia*, the names, addresses, and driver's license numbers of the vehicles' owners, including information pertaining to Plaintiffs and – by definition – the Class. Because this certainly constitutes "personal information" under the DPPA, *see* 18 U.S.C. § 2725(3), Local 150 would be liable for obtaining such records. *See Parus v. Cator*, No. 05-C-0063-C, 2005 WL 2240955, at *5 (W.D. Wis. Sept. 14, 2005) (DPPA "protects not only against the wrongful dissemination of private information, but also against the wrongful acquisition of that information"). There can also be no doubt that Local 150's conduct in acquiring and possessing such records cannot be justified by any of the exemptions in the DPPA.

2. **Local 150 Had Knowledge Of Its Acquisition and Use of Such "Personal Information."**

To establish liability under the DPPA, Plaintiffs need not show that Local 150 knew that its acquisition, disclosure, and/or use of the subject personal information was impermissible or unlawful. *See Pichler*, 228 F.R.D. at 242 ("If one could not violate the DPPA without 'knowing' that the purpose for which he 'obtained,' 'disclosed,' or 'used' motor vehicle information was unlawful, then every defendant would get at least one free bite at the violation-of-privacy apple"); *Rios v. Direct Mail Express, Inc.*, 435 F. Supp. 2d 1199, 1205 (S.D. Fla. 2006) ("Plaintiffs are not required to plead or prove that [defendant] knew that it was acting in a manner not permitted under the DPPA"). Rather, Local 150 must have only (a) knowingly obtained, disclosed, or used personal information, and (b) known that such information was from motor vehicle records. *See Pichler*, 228 F.R.D. at 241-42. As such, any potential contention by Local 150 that it was unaware that its actions were unlawful or was ignorant of the DPPA itself

would be immaterial.

In this case, it cannot seriously be disputed that Local 150 knowingly obtained personal information that it knew was from motor vehicle records. Indeed, Local 150 purchased and/or otherwise acquired the subject motor vehicle records from the Secretary of State with the very intent of accessing and using the personal information contained in such records. Likewise, it cannot be seriously disputed that Local 150 knowingly used the personal information from certain of these records when it searched the records contained on the CDs and microfiche in order to locate identifying information about certain members of the Class. As such, the DPPA's *scienter* requirement has been met.

### 3. Local 150 Obtained and Used Such "Personal Information" For a Purpose Not Authorized By the DPPA.

Local 150's acquisition, possession, and use of the personal information it acquired from the Secretary of State was for purposes not permitted by the DPPA. First, it is clear that Plaintiffs and the Class – by its very definition – never consented to Local 150 obtaining, possessing, or using their personal information contained in the acquired motor vehicle records. (Tammy Aff. ¶ 7; Tim Aff. ¶ 8; Melisa Aff. ¶ 8). *See* 18 U.S.C. § 2721(b)(13).

Second, Local 150's stated justification for obtaining these motor vehicle records from the Secretary of State – at least as to those records obtained in March of 2002 and June of 2003 – was to "run plates on construction sites only." (*See* Exs. 7 & 8). This is clearly not an authorized basis for a requesting party to obtain any motor vehicle record containing personal information under the DPPA, much less a basis for acquiring what is believed to be the complete set of Illinois motor vehicle records. *See* 18 U.S.C. § 2721(b).[4]

---

[4] In the event that Local 150's proffered reason for obtaining the motor vehicle records was not the actual reason it sought them, such a fraudulent representation to the Secretary of State would also violate the Act. *See* 18 U.S.C. §2722(b).

Third, Local 150's actual use of the subject personal information – reviewing motor vehicle records to locate identifying information about certain members of the Class (including name and home address) – is certainly not a permissible use under the DPPA. *See* 18 U.S.C. § 2721(b). Therefore, Local 150's acquisition, use, and possession of the subject personal information was and continues to be unauthorized and unlawful.

### 4. Plaintiffs Are Entitled to Recover Even In the Absence of Actual Damages.

A plaintiff need not prove actual damages as a result of a DPPA violation in order to recover the other remedies enumerated in the Act, including preliminary and equitable relief, as well as liquidated damages. *See* 18 U.S.C. § 2724(b); *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1212 (11th Cir. 2005), *cert. denied*, 547 U.S. 1051, 126 S. Ct. 1612 (2006) (reversing district court's grant of summary judgment due to putative class plaintiff's failure to allege actual damages as a result of defendant's violation of DPPA). Because the facts establish that Local 150 has violated the DPPA as to Plaintiffs and the members of the Class, they are all entitled to recover even in the absence of proof of actual damages as to any of them.

### 5. Plaintiffs' Claims Are Not Time-Barred.

In its Memorandum supporting its Motion to Dismiss or Stay, Local 150 argued that Plaintiffs' DPPA claim should be dismissed because there is a one-year statute of limitations for all privacy claims, including DPPA claims. (Def. Memo pp. 14-15). This contention is incorrect. First, as stated in Plaintiffs' response brief, Congress has prescribed that DPPA claims have a four-year statute of limitations. *See* 28 U.S.C. § 1658(a). Second, the statute of limitations for such claims would not commence to run until Plaintiffs knew or had reason to know of their injury through the exercise of reasonable diligence, which was certainly less than four years prior the commencement of this Action. (*See* Tammy Aff. ¶ 9; Tim Aff. ¶ 10; Melisa

Aff. ¶ 10). Third, it is Plaintiffs' firm belief that Local 150 continues to possess and use the subject motor vehicle records to this date, which would constitute a continuing violation of the DPPA and eliminate any argument that Plaintiffs' claims are time-barred.

For the above reasons, Plaintiffs have shown a likelihood of success upon the merits.

**B.　Unless An Injunction Is Granted, Plaintiffs Will Continue To Suffer Irreparable Harm For Which They Have No Adequate Remedy At Law.**

While it is not necessary for Plaintiffs to make a strong showing of irreparable harm since they have presented a very strong case on the merits, *see Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997), the facts unquestionably demonstrate that Plaintiffs do not have an adequate remedy at law and will continue to be irreparably harmed if Local 150's actions are not halted prior to a final resolution of this matter.

Plaintiffs and the Class have already suffered an irreparable harm – the unlawful invasion of their privacy – as a result of Local 150's past actions, including the acquisition and use of their personal information. *See Parus*, 2005 WL 2240955, at *5 (a plaintiff is harmed when its personal information is obtained in violation of the DPPA because such acquisition infringes on a plaintiff's privacy). Most importantly for purposes of this Motion, however, Plaintiffs and the Class will continue to sustain further irreparable harm if this Court does not intervene and restrain Local 150 from (1) its continued possession, use, and/or disclosure of their personal information and (2) its unlawful acquisition of additional personal information contained in motor vehicle records. Local 150's transgressions are of an ongoing nature and its continued unlawful violation of Plaintiffs' and the Class's privacy cannot be prevented or fully rectified after the fact in a final judgment following trial. Simply put, without the issuance of a preliminary injunction, Plaintiffs and the Class cannot be made whole at the conclusion of this case.

For these reasons, Plaintiffs and the Class have no adequate remedy at law. A legal remedy is not adequate if it is not a clear, complete, practical, and efficient to the ends of justice. *See Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 797 (N.D. Ill. 1997). Here, there is no clear and complete legal remedy that enables Plaintiffs and the Class to terminate the invasion of their privacy by Local 150. Although the DPPA provides for an award of damages (including liquidated damages of $2,500), this relief cannot make Plaintiffs or the Class whole without also prohibiting Local 150 from its continued unlawful possession and use of the ill gotten motor vehicle records, as well as the ongoing acquisition of such records. Indeed, the DPPA itself contemplates that preliminary injunctive relief may be necessary to prevent irreparable harm due to a violation of the Act. *See* 18 U.S.C. § 2724(b)(4).

Plaintiffs and the Class have suffered, currently suffer, and will continue to suffer an injury to their rights to – and expectation of – privacy afforded to them by DPPA until Local 150 tenders to this Court all of the motor vehicle records in its possession that were unlawfully obtained. An injunction is necessary to spare Plaintiffs and the Class further unnecessary and irreparable harm.

### C. The Harm To Plaintiffs Absent Injunctive Relief Substantially Outweighs Any Potential Harm To Local 150.

In balancing the movant's interests with the harm to the nonmoving party if relief is granted, a court performs a "sliding scale" analysis: "the greater the moving party's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor; conversely, the less likely it is that the moving party will succeed on the merits, the more the balance need weigh towards its side." *Duct-O-Wire*, 31 F.3d at 509. In this case, not only have Plaintiffs demonstrated a strong showing on the merits, but the balancing of potential harms also weighs heavily in favor of issuing an injunction against Local 150.

As stated above, the denial of injunctive relief would cause Plaintiffs and the Class to suffer additional injury in the form of further and unwarranted intrusions upon their privacy by Local 150, a harm that cannot possibly be effectively remedied following a trial. Local 150, on the other hand, would not be burdened or prejudiced in the least by the issuance of a preliminary injunction, except to the extent that it would no longer be able to obtain, possess, use, and/or disclose Plaintiffs' and the Class's personal information in direct violation of the DPPA for the duration of this case.

Because any potential harm to Local 150 would be self-imposed and entirely a result of its own wrongful conduct (*i.e.* Local 150 illegally obtained personal information it had no right to possess or use in the first place), and because the injunction requested merely seeks Local 150's compliance with the DPPA, the balancing of harms weighs strongly in favor of granting a preliminary injunction. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F. Supp. 2d 491, 498 (E.D. Pa. 2000) (granting motion for preliminary injunction; "The self-inflicted nature of any harm suffered by the wrongdoer ... weighs heavily in favor of granting preliminary injunctive relief"); *see also Int'l Kennel Club*, 846 F.2d at 1091 ("defendants brought any alleged harm onto themselves...."). Simply put, because Local 150 never had any lawful right to the personal information contained in or derived from the motor vehicle records it obtained from the Secretary of State, it cannot now contend that being forced to give up such information for the pendency of this action would cause it injury.

Finally, even with the issuance of a preliminary injunction, Local 150 would still be free to lawfully obtain and use personal information in accordance with the DPPA. If Local 150 properly acquired any of the motor vehicle records in its possession (and can prove as much to this Court), it need not give them up. Likewise, if Local 150 has a genuine authorized purpose

for obtaining certain motor vehicles record in the future, it may acquire such records (and only those records) from the Secretary of State and/or elsewhere.

Thus, no legitimate irreparable harm would befall Local 150 if this Court grants a preliminary injunction.

### D. The Public Interest Supports the Issuance of an Injunction.

Finally, the issuance of a preliminary injunction in this case overwhelmingly benefits the public interest. Indeed, the very conduct that Plaintiffs seek to enjoin – Local 150's continued possession, use, and disclosure of Plaintiffs' and the Class's personal information and future acquisition of such information – has specifically been declared unlawful by Congress in the DPPA. *See* 18 U.S.C. §§ 2722, 2724. Therefore, such conduct is clearly against the public interest. Likewise, the issuance of injunctive relief would further the policy goals established by the DPPA: namely, the public's interest in preventing unauthorized persons (in this case, Local 150) from intruding upon others' privacy through impermissibly obtaining their personal information contained in motor vehicle records. As such, this factor also weights in favor of the granting of preliminary injunctive relief.

### CONCLUSION

Issuance of injunctive relief is appropriate in this case because Plaintiffs have demonstrated that (1) there is a reasonable probability they will succeed on the merits; (2) absent injunctive relief, Plaintiffs and the Class will continue to suffer irreparable harm for which there is no adequate remedy at law; (3) a balancing of harms and the equities strongly favors Plaintiffs' position; and (4) the public interest supports the issuance of the requested injunctive relief. Accordingly, this Court should enter a preliminary injunction to preserve the rights of the parties while the pending dispute is resolved.

WHEREFORE, for all of the foregoing reasons, and those in Plaintiffs' Motion, Plaintiffs respectfully request that this Court enter a preliminary injunction against Local 150 specifically:

A. enjoining and restricting Local 150 and its officers, employees, and agents from possessing, using, or disclosing any "personal information" of Plaintiffs and the Class contained in motor vehicle records that Local 150 previously obtained in violation of the Driver's Privacy Protection Act, with Local 150 having the burden of establishing that any such personal information was lawfully obtained (*see Pichler v. UNITE*, 457 F. Supp. 2d 524, 533-34 (E.D. Pa. 2006));

B. enjoining and restricting Local 150 from obtaining any further "personal information" contained in motor vehicle records for any purpose not permitted and enumerated by Section 2721(b) of the Driver's Privacy Protection Act;

C. ordering Local 150 to immediately tender to the Clerk of this Court all of the motor vehicle records it has obtained, including all copies thereof and all "personal information" of Plaintiffs and the Class derived therefrom, except to the extent that Local 150 establishes that any such records and information were lawfully obtained, and to certify under oath that it has done so;

D. prohibiting Local 150 from otherwise violating the Driver's Privacy Protection Act; and

E. granting such additional relief in Plaintiffs' favor and against Local 150 as this Court deems fair, just, and equitable, including without limitation an award of Plaintiffs' reasonable costs and attorneys' fees incurred in preparing and presenting their Motion pursuant to 18 U.S.C. § 2724(b)(3), such expenses to be proven by separate verified petition.

## ORAL ARGUMENT REQUESTED

Dated: August 22, 2008　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/　Michael P. McBride
　　　　　　　　　　　　　　　　　　　　One of Plaintiffs' Attorneys

Dean J. Polales (ARDC # 3125505)
Michael A. Ficaro (ARDC # 798738)
Michael P. McBride (ARDC # 6283481)
UNGARETTI & HARRIS, LLP
3500 Three First National Plaza
Chicago, Illinois 60602
(312) 977-4400

Robert T. Hanlon (ARDC # 6286331)
Law Offices of Robert T. Hanlon & Assoc., P.C.
14212 Washington Street, #200
Woodstock, Illinois 60098

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Michael P. McBride, an attorney, certify that I caused a true and correct copy of **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** to be served electronically pursuant to ECF upon the following on August 22, 2008:

>Dale D. Pierson
>Bryan P. Diemer
>Lauren S. Shapiro
>Local 150 Legal Department
>6140 Joliet Road
>Countryside, IL 60525

>/s/   Michael P. McBride
>One of Plaintiffs' Attorneys

1174780-3