IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Barker, Timothy Robert Barker, and Melisa Merryman, on behalf of themselves and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>Local 150, International Union of Operating Engineers, AFL-CIO,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No. 08 C 50015<br>)<br>) Judge Kapala<br>) Magistrate Judge Mahoney<br>)<br>) Trial by Jury Demanded<br>)<br>) |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Plaintiffs Tammy Barker, Timothy Robert Barker, and Melisa Merryman ("Plaintiffs"), on behalf of themselves and on behalf of those similarly situated, by their undersigned counsel, submit this memorandum of law in support of their Motion For Class Certification (the "Motion").

## INTRODUCTION

This lawsuit arises from Local 150's violations of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* (the "DPPA" or the "Act"). In particular, Local 150 has obtained, used, and/or disclosed Plaintiffs' and the proposed class's personal information contained in motor vehicle records in direct contravention of the DPPA. For all of the reasons set forth below, this Court should certify this lawsuit as a class action pursuant to Rule 23(b)(2) or, alternatively, Rules 23(b)(1) or 23(b)(3).

## STATEMENT OF FACTS

Plaintiffs hereby incorporate the Statement of Facts included in their *Memorandum of Law In Support of Their Motion for Preliminary Injunctive Relief* (pp. 2-4), which is attached hereto as Exhibit A.

1194915-3

## THE PROPOSED CLASS

The proposed class is defined as follows:

> Each and every individual whose name, address, and/or driver identification number (driver's license number), are contained in motor vehicle records obtained by [Local 150] from the office of the Illinois Secretary of State, without the express consent of such individuals, commencing 4 years prior to the date of the filing of this action and through the date of judgment herein, but excluding all Federal Judges and their family members within the first degree of consanguinity and persons who have expressly authorized the Illinois Secretary of State's office to provide third parties with their "personal information" for any purpose.

(Am. Compl. ¶ 29).

## ARGUMENT

### I.     STANDARD FOR CERTIFICATION OF CLASS ACTIONS.

A plaintiff seeking class certification pursuant to Rule 23 must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 426-27 (N.D. Ill. 2007); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 623 (N.D. Ill. 2007). Once a plaintiff satisfies these requirements, he must still satisfy one of the provisions of Rule 23(b). *Flanagan*, 242 F.R.D. at 427; *Lau*, 245 F.R.D. at 623. When determining a motion for class certification, courts generally take the substantive allegations as true and do not examine the ultimate merits of the case. *Flanagan*, 242 F.R.D. at 427 (though courts will "probe the evidence available and make whatever factual and legal inquiries are necessary to determine whether plaintiffs have met their burden" under Rule 23).

A court has broad discretion in determining whether to certify a class, *see Keele v.*

*Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007), but Rule 23 is to be "liberally construed" and courts "should err in favor of maintaining a class action." *Flanagan*, 242 F.R.D. at 427. Moreover, if the plaintiff meets its burden showing that the certification requirements are satisfied, the court <u>must</u> certify the proposed class. *See Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976) (reversing denial of class certification); *Gammon v. GC Servs. L.P.*, 162 F.R.D. 313, 320 (N.D. Ill. 1995).

## II.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a).

### A.    <u>Numerosity: The Class Is So Numerous That Joinder Of All Members Is Impracticable.</u>

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiffs must provide some evidence that a class exists and that joinder of all members would be impracticable. *Lau*, 245 F.R.D. at 624; *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 212 (N.D. Ill. 2002). Plaintiffs are not required to plead or prove the number of class members with exactness; moreover, the Court may rely on common sense assumptions and reasonable inferences. *Kohen*, 244 F.R.D. at 476; *Lau*, 245 F.R.D. at 624. There is no "magic number" at which joinder becomes impractical; however, a "class of more than 40 members is generally believed to be sufficiently numerous." *Lau*, 245 F.R.D. at 625; *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000).

In this case, it cannot seriously be disputed that the numerosity requirement has been satisfied. Indeed, Plaintiffs seek to represent a class that has millions of members. (*See* Ex. A Ex. 6 (Jerger Aff. ¶¶ 8-9); Am. Compl. ¶ 30). Joinder of even a moderate percentage of the class members' claims would be highly inefficient, expensive, and time consuming. While courts may

consider other factors besides the size of the class in making its determination,[1] here the numbers

alone are dispositive of the impracticability of joinder. *See Leff v. Olympic Fed. Savings & Loan*

*Assoc.*, No. 86 C 3026, 1987 WL 12921, at \*2 (N.D. Ill. June 19, 1987) (class estimated at more

than 5,000 members was presumptively numerous). As such, Plaintiffs have satisfied Rule

23(a)(1).

**B.    <u>Commonality: There Are Questions Of Law Or Fact Common To The Class.</u>**

The commonality requirement of Rule 23(a)(2) is a "low hurdle" that is easily

surmounted, *see Flanagan*, 242 F.R.D. at 427; *Kohen*, 244 F.R.D. at 476, and the fact that there

is some factual variation among the class grievances will not defeat a class action. *Keele*, 149

F.3d at 594; *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Commonality is

established when a common nucleus of operative fact exists, such as where a defendant has

engaged in standardized conduct towards members of the proposed class. *See Keele*, 149 F.3d at

594; *Rosario*, 963 F.2d at 1018. In fact, it has been held that the commonality requirement is

satisfied as long as a <u>single</u> question of law or fact is common to the class. *Kohen*, 244 F.R.D. at

476; *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988); *Leff*, 1987 WL 12921, at \*2.

In the instant case, commonality is satisfied because the Complaint raises the following

overriding issues of law and fact, which unify all the class members' claims:

- whether Local 150 obtained, disclosed, and/or used "personal information" – as that term is defined in the DPPA – about the members of the class from motor vehicle records;

- whether Local 150 knew that the "personal information" it obtained, disclosed, and/or used was from motor vehicle records; and

- whether Local 150 obtained, disclosed, and/or used such "personal

---

[1] Courts may also consider, *inter alia*, judicial economy, the geographic location of the class members, the ability of members to bring individual lawsuits, the practicality of forcing relitigation of common core issues, and individual circumstances of a case. *Lau*, 245 F.R.D. at 624-25; *Massie v. Ill. Dept. of Transp.*, No. 96 C 4830, 1998 WL 312021, at \*2 (N.D. Ill. June 5, 1998).

information" for a purpose not authorized by the DPPA.

*See* 18 U.S.C. §§ 2722(a), 2724. Each of the class member's grievances against Local 150 under the DPPA requires a determination of all of the above questions. Because all of their claims arise out of the same factual circumstances – namely Local 150's conduct – and are predicated on the same legal theory, Plaintiffs have demonstrated commonality under Rule 23(a)(2).

### C.    Typicality: Plaintiffs' Claims Are Typical Of The Claims Of The Class.

The typicality requirement of Rule 23(a)(3) – that claims of the class representatives be typical of those of the class – should be liberally construed. *Massie*, 1998 WL 312021, at *4. It is closely related to the question of commonality; as such, "a finding of one often results in a finding of the other." *Parker*, 206 F.R.D. at 213; *see also Keele*, 149 F.3d at 595.

Typicality does not require that all class members suffer the same injury as the named plaintiffs. *Rosario*, 963 F.2d at 1018; *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232-33 (7th Cir. 1983). Rather, the typicality requirement is met if the named plaintiff's claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595; *Rosario*, 963 F.3d at 1018; *see also De La Fuente*, 713 F.2d at 232 ("similarity of legal theory may control even in the face of differences of fact"). Put another way, as long as the claims of the class members have the "same essential characteristics" as those of the named plaintiff, typicality is established regardless of whether there are factual distinctions between the claims. *Lau*, 245 F.R.D. at 625 (granting class certification where all class members' claims arose out of defendant's alleged violation of the Fair Debt Collection Practices Act); *see also Kohen*, 244 F.R.D. at 477. Additionally, typicality may be assumed where the nature of the relief sought is injunctive. *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001).

In this case, Plaintiffs' claims are certainly typical of those of the potential class members

in that they are all seeking relief from Local 150 under the DPPA, alleging violations of the very same statutory section under the same legal theory. *See Keele*, 149 F.3d at 595. More specifically, Plaintiffs and the proposed class are challenging the same unlawful course of conduct by Local 150: its unauthorized obtaining of personal information contained in motor vehicle records from the Secretary of State for a purpose not authorized by the DPPA, and the use, disclosure, and continued possession of such information. Plaintiffs have also requested remedies on behalf of, and for the benefit of, all class members, including preliminary and permanent injunctive relief, as well as statutory damages for each of the class members. (*See* Compl. ¶ 32, pp. 15-16). Plaintiffs have therefore satisfied the requirements of Rule 23(a)(3).

**D.    Adequacy: Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class.**

The inquiry under Rule 23(a)(4) has three components designed to ensure that the absent class members' interests are pursued fully. To be an adequate class representative, a named plaintiff must: (1) not have claims that are antagonistic to or conflict with those of the other class members; (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have counsel that is competent, experienced, and generally able to conduct the litigation vigorously. *Massie*, 1998 WL 312021, at *5. All of these factors lead to the conclusion that Plaintiffs and their counsel will fairly and adequately protect the interest of the class in this case.

*1.    Plaintiffs' Claims Are Not Antagonistic and Do Not Conflict With the Class Members' Claims.*

Certification of a class should be denied on the grounds of antagonism only if that antagonism goes to the subject matter of the litigation. *Leff*, 1987 WL 12921, at *4. In this case, Plaintiffs have no interests potentially antagonistic to the unnamed class member, nor – as shown above – does any conflict exist between Plaintiffs and the class.

### 2.     *Plaintiffs Have an Interest In the Outcome of the Case to Ensure Vigorous Advocacy.*

Typicality and adequacy of representation are overlapping considerations. *Flanagan*, 242 F.R.D. at 429. Because, as stated above, Plaintiffs' DPPA claims are typical of the class, they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy. *See id.* Moreover, because Plaintiffs seek relief that is directed to all class members, they are adequate representatives. *See Ringswald*, 196 F.R.D. at 513.

In particular, Plaintiffs are challenging the same unlawful conduct by Local 150 as the remainder of the class. Plaintiffs' right to recovery, like that of the absent class members, depends upon establishing Local 150's liability for violating the DPPA by obtaining, disclosing, and/or using personal information contained in motor vehicle records without authorization and for an unauthorized purpose. Likewise, because Plaintiffs seek – and certainly stand to benefit from – class-wide injunctive relief (*e.g.* enjoining Local 150 from further violating the DPPA and expunging all personal information in its possession), and because successful prosecution of this action is a prerequisite for any such relief, they have an obvious interest in vigorously pursuing liability against Local 150.

Finally, Plaintiffs have shown their willingness and ability to take an active role in this litigation as class representatives and to protect the interests of the absent class members. They have, *inter alia*, participated in the retention of counsel, monitored and assisted in the litigation, expressed their intention to vigorously prosecute the case on behalf of the class, and understand that they will have to be active participants in discovery and the trial of this matter.

### 3.     *Plaintiffs' Counsel is Competent, Experienced, and Prepared To Vigorously Prosecute This Action.*

Finally, Plaintiffs have engaged competent counsel with many years of litigation experience, who are prepared to vigorously prosecute this action. Ungaretti & Harris has

significant complex federal trial experience, including the litigation and settlement of multiple class actions. Moreover, Messrs. Polales and Ficaro, who will act as trial counsel in this matter, are highly accomplished attorneys and well-respected members of this Court's Trial Bar.

Mr. Polales has considerable complex federal jury trial experience, including having spent more than twenty years as an Assistant U.S. Attorney representing the United States in enforcing and prosecuting violations of federal statutes, including 4 multi-defendant RICO jury trials ranging from two to six months in length, and covering offenses involving narcotics, commodities fraud, accounting and insurance fraud, and organized crime. Mr. Polales served as Chief of Special Prosecutions for seven years and Counsel to United States Attorney Patrick Fitzgerald during his last two years in the United States Attorney's Office.

Mr. Ficaro also has extensive experience in all facets of litigation, including trying complex commercial litigation and class actions. All told, he has participated in more than 100 jury trials and more than 1,000 bench trials. Recently, Mr. Ficaro tried a $135 million class action and obtained a verdict of no liability in the case of *Donald E. Casey, et al. v. QT, Inc., et al.* (No. 03 CH 1134) in the Circuit Court of Cook County, Illinois. He also served as Plaintiffs' counsel in a significant class action lawsuit involving interest rates calculated on floor plan financing before this Court captioned *Jack Winters, et al. v. General Motors Acceptance Corp.* (N.D. Ill. 1:94-cv-04591), which ultimately resulted in a settlement. Prior to entering private practice, Mr. Ficaro served as First Assistant Attorney General of Illinois, Cook County Deputy State's Attorney and Chief of Criminal Prosecution Bureau, and Special Assistant United States Attorney and Special State's Attorney of Cook County.

Plaintiffs' counsel is fully prepared to prosecute this action vigorously and with adequate financial commitment. *See Ringswald*, 196 F.R.D. at 513. For the aforementioned reasons,

1194915-3                                    8

Plaintiffs will adequately represent the unnamed class, satisfying Rule 23(a)(4).

## III.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF EACH OF RULE 23(b)'S SUBSECTIONS.

Having satisfied each of the requirements of Rule 23(a), Plaintiffs need only show that one of Rule 23(b)'s provisions applies such that certification of the proposed class would be proper. *See* FED. R. CIV. P. 23(b); *Lau*, 245 F.R.D. at 623.  In this case, however, the proposed class qualifies for certification under all three of Rule 23(b)'s subsections.  Plaintiffs seek class certification under Rule 23(b)(2) or, alternatively, Rules 23(b)(1) or (b)(3).

### A.    The Proposed Class Qualifies For Certification Under Rule 23(b)(1).

Rule 23(b)(1) provides for two types of class actions to prevent prejudice to parties from potential multiple suits arising from the same matter.  The first type occurs when multiple lawsuits would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish "incompatible standards of conduct" for the party opposing the class. FED. R. CIV. P. 23(b)(1)(A).  The second type occurs when multiple lawsuits would create a risk that the adjudications with respect to some individual class members would as a practical matter be dispositive of the interests of other members or otherwise impair or impede their ability to protect their interests. FED. R. CIV. P. 23(b)(1)(B).

Absent class certification, numerous separate actions could be brought by individuals in the proposed class challenging Local 150's conduct as violating the DPPA.  If relief were to be granted in some actions but not in others, and if the DPPA were to be construed differently by different courts, the inconsistent adjudications would establish an incompatible standard of conduct for Local 150. *See Pichler v. UNITE*, 228 F.R.D. 230, 254 (E.D. Pa. 2005) (DPPA claim could be certified under Rule 23(b)(1)(A)).  As such, certification pursuant to Rule 23(b)(1)(A) is proper.

The class could also be certified under Rule 23(b)(1)(B) because the threat of inconsistent adjudications would adversely affect the interests of the absent class members or subsequently impair their ability to adequately protect their interests. *See* FED. R. CIV. P. 23(b)(1)(B).

**B.      The Proposed Class Qualifies For Certification Under Rule 23(b)(2).**

Rule 23(b)(2) permits a lawsuit to be maintained as a class action if a plaintiff establishes that: (1) the defendant has acted (or refused to act) in a consistent manner toward members of the class so that its actions may be viewed as part of a pattern of activity (*i.e.* the challenged conduct is premised on grounds that generally apply to the class); and (2) final injunctive or corresponding declaratory relief must be appropriate. *See* FED. R. CIV. P. 23(b)(2); *Massie*, 1998 WL 312021, at *5. The Rule 23(b)(2) class action is intended for cases where broad wide injunctive or declaratory relief is necessary to redress a group-wide injury. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001). Rule 23(b)(2) generally does not require notice to class members or allow members to opt out of the class. *Gammon*, 162 F.R.D. at 319. The proposed class in the instant case certainly qualifies for certification pursuant to Rule 23(b)(2).

First, as already discussed, Local 150 acted in a consistent manner towards the members of the proposed class when it obtained all of their personal information contained in millions of motor vehicle records received on disks from the Secretary of State. The sole legal issue raised is whether Local 150's acquisition of such information violates the DPPA; as such certification under Rule 23(b)(2) is proper. *See Gammon*, 162 F.R.D. at 319.

Second, final injunctive relief is appropriate in this case. For a class to be certified under Rule 23(b)(2), injunctive or declaratory relief must be the predominant remedy requested for the class members. This requirement does not, however, preclude the award of monetary recoveries

on a class-wide basis. *See Massie*, 1998 WL 312021, at *6 (certifying a Rule 23(b)(2) class where complaint sought both injunctive relief and ancillary money damages); *Gammon*, 162 F.R.D. at 321-22 (certifying class under Rule 23(b)(2) despite fact that complaint sought statutory damages in addition to declaratory relief).

In this case, Rule 23(b)(2) is satisfied because the Complaint seeks relief that is predominantly injunctive on behalf of the class. In addition to preliminary injunctive relief, the Complaint requests that this Court grant a permanent injunction restraining Local 150 from possessing, retrieving, disclosing, and/or using any personal information obtained in violation of the DPPA, and to require Local 150 to tender all records containing such information to the Clerk of this Court. (Compl. pp. 15-16). Moreover, Defendants have filed a Motion for Preliminary Injunctive Relief against Local 150, which request this Court to (a) enjoin Local 150 from possessing, using, or disclosing personal information it has previously obtained in violation of the DPPA; (b) order Local 150 to immediately tender to the Clerk of this Court all such information; (c) enjoin Local 150 from obtaining any further personal information in contravention of the DPPA; and (d) enjoin Local 150 from otherwise violating the DPPA. (*See* Ex. A p. 15).

Because injunctive relief is an integral part of the relief sought by Plaintiffs for the benefit of the entire class, certification under Rule 23(b)(2) is appropriate even though the Complaint also seeks statutory and punitive damages under the DPPA. *See Patrykus*, 121 F.R.D. at 363 (certifying class under Rule 23(b)(2) despite plaintiffs also seeking substantial damages). This is so because it "cannot fairly be said that [Plaintiffs' statutory] damage claims predominate their prayer for relief." *See id.*

**C.** **The Proposed Class Qualifies For Certification Under Rule 23(b)(3).**

The showing for a Rule 23(b)(3) certification is that (1) common issues of law and fact predominate over any questions affecting only individual members, and (2) a class action is superior to other forms of adjudication. *See* FED R. CIV. P. 23(b)(3); *Ringswald*, 196 F.R.D. at 511. The proposed class easily satisfies both criteria.

### 1.    *Predominance: Common Issues of Law and Fact Predominate.*

In making a determination whether common questions of law or fact predominate, courts must consider whether the class seeks to remedy a common legal grievance. *See Kohen*, 244 F.R.D. at 479. Predominance is satisfied when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. *Lau*, 245 F.R.D. at 626. The common issues, however, need not be dispositive of the entire litigation. *Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995). The fact that questions peculiar to the individual members of the class may remain after the common questions have been resolved does not dictate that a class action is not permissible. *Leff*, 1987 WL 12921, at *6.[2]

In this case, as stated previously, there is a common nucleus of operative fact and the class is seeking to remedy a common legal grievance. The predominant issue is whether Local 150 obtained the class members' "personal information" – defined by the DPPA – from motor vehicle records, and whether the acquisition of such information violates the DPPA. The evidence required to establish liability is general and objective: (a) did Local 150 at least *obtain* the information from motor vehicle records, (b) did it know it was doing so; and (c) did Local

---

[2] For instance, it is very common for Rule 23(b)(3) class actions to involve differing damages awards for different class members. *De La Fuente*, 713 F.2d at 233 (noting that administrative complications in managing a distribution of damages to a broadly-defined class were not substantial enough to not certify class); *see also Chandler*, 162 F.R.D. at 310 (predominance is not precluded even if individualized proof of damages is required); *Kohen*, 244 F.R.D. at 480 (courts generally focus on the showing of predominance of common questions at the liability stage of litigation rather than at the damages stage).

150 obtain such information for a purpose not enumerated in the DPPA. *See Lau*, 245 F.R.D. at 626. If Plaintiffs can prove this, then injury will have been established for all members of the class. *See Kohen*, 244 F.R.D. at 480. Because of the nature of the DPPA, individual issues such as each class member's knowledge of Local 150's conduct and proof of actual damages are irrelevant for purposes of establishing liability. Finally, common issues would even predominate in the damages phase of this litigation, in that most – if not all – of the class members would simply request statutory liquidated damages of $2,500. *See Leff*, 1987 WL 12921, at *6 (when an appropriate monetary remedy for the class can be calculated by a formula, even the remedial phase of the litigation is common rather than individualized in nature). Therefore, the first criterion of Rule 23(b)(3) is satisfied.

### 2. *Superiority: A Class Action Is the Superior Method of Adjudication.*

The second criterion of Rule 23(b)(3), that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy," is also satisfied in this case. Factors pertinent to this evaluation include the interest of class members in litigating their claims in separate actions; litigation already commenced; the desirability of concentrating the litigation in a particular forum; and managing any difficulties that may arise. FED. R. CIV. P. 23(b)(3). A class action in the instant case would be superior for several reasons.

First, efficiency and consistency concerns favor trying the legality of Local 150's conduct in one consolidated litigation rather than forcing each class member to litigate his or her claim individually and creating a legion of individual trials. *See Chandler*, 162 F.R.D. at 310-11. Judicial resources would be used most efficiently by certifying this class to resolve these common questions. *See Kohen*, 244 F.R.D. at 481. A class action would also serve the interests of fairness by preventing the possibility of disparate treatment of Local 150's conduct and the

DPPA by different courts and judges.

Second, most of the proposed class members are individual citizens "who are probably unaware of their rights" under the DPPA and that such rights have been violated. A class action, therefore, would help "ensure that their rights are protected." *See Chandler*, 162 F.R.D. at 310.

Third, the "size of each individual claim is relatively small" such that many class members, "even if aware of their rights, likely would lack the initiative to bring suit individually." *See Chandler*, 162 F.R.D. at 310; *see also Kohen*, 244 F.R.D. at 481 (class actions "permit pooled claims that otherwise would be uneconomical to litigate individually to have their day in court"). Individual DPPA actions against Local 150 – where actual damages must be proven in order to recover more than $2,500 – would not be economically feasible for many, if not most, class members. *See Leff*, 1987 WL 12921, at *6 (class treatment particularly appropriate where average class member suffered less than $1,000 damages); *see also Parker*, 206 F.R.D. at 213. The class members have an interest in commonly facing Local 150's defense to this action.

Finally, the management of this case as a class action should not be difficult. The suit primarily seeks class-wide injunctive relief and it is not anticipated that problems of allocating individualized damages will be present being that the DPPA affords a $2,500 liquidated damages award. *See Chandler*, 162 F.R.D. at 310. As such, there is no benefit to be derived from multiple duplicative DPPA lawsuits against Local 150. Based on the forgoing, the proposed class meets the requirements of Rule 23(b)(3).

In conclusion, the proposed class should be certified under Rule 23(b)(2) or, alternatively, Rules 23(b)(1) or (b)(3). *See, e.g., Pichler*, 228 F.R.D. at 260 (E.D. Pa. 2005) (certifying class pursuant to Rule 23(b)(3) in case alleging union's violation of DPPA).

1194915-3                                        14

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its Motion

and certify Count I of the First Amended Complaint as a class action, and grant such other relief

as it deems just and proper.

### ORAL ARGUMENT REQUESTED

Dated:  August 22, 2008                          Respectfully submitted,

                                                 /s/   Michael P. McBride
                                                 One of Plaintiffs' Attorneys

Dean J. Polales (ARDC # 3125505)
Michael A. Ficaro (ARDC # 798738)
Michael P. McBride (ARDC # 6283481)
UNGARETTI & HARRIS, LLP
3500 Three First National Plaza
Chicago, Illinois  60602
(312) 977-4400

Robert T. Hanlon (ARDC # 6286331)
Law Offices of Robert T. Hanlon & Assoc., P.C.
14212 Washington Street, #200
Woodstock, Illinois 60098

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Michael P. McBride, an attorney, certify that I caused a true and correct copy of **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** to be served electronically pursuant to ECF upon the following on August 22, 2008:

> Dale D. Pierson
> Bryan P. Diemer
> Lauren S. Shapiro
> Local 150 Legal Department
> 6140 Joliet Road
> Countryside, IL 60525

<br>

/s/   Michael P. McBride
One of Plaintiffs' Attorneys

1194915-3