UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

TAMMY BARKER, TIMOTHY ROBERT )
BARKER, and MELISA MERRYMAN, )
on behalf of themselves and on behalf of )
those similarly situated, )
                                          )
          Plaintiffs, )
                                          )
       v. )                   No. 08 C 50015
                                          )
INTERNATIONAL UNION OF )
OPERATING ENGINEERS, LOCAL 150, )
AFL-CIO, )
          Defendant. )

## MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

Plaintiffs, Tammy Barker, Timothy Barker, and Melisa Merryman, on behalf of an uncertified class, have sued defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), alleging, among other things, that Local 150 violated the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. §§ 2721-25, by knowingly obtaining, disclosing, or using their personal information, from a motor vehicle record for purposes not permitted by the DPPA. Plaintiffs have moved for a preliminary injunction and to certify the class.

### I. BACKGROUND

Plaintiffs have submitted various affidavits in support of their motions.[1] In their affidavits,

---

[1] "Affidavits are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings." Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1171 (7th Cir. 1997). The court notes that neither party has requested an evidentiary

1

Tammy and Timothy Barker state that they have been the owners of motor vehicles registered in Illinois and the holders of Illinois driver's licenses since 1985 and 1983, respectively. Neither Tammy nor Timothy have ever provided their home address to Local 150 or to any of its agents. Certain Local 150 agents have been present outside Tammy and Timothy's home and it is their belief and recollection that such agents first appeared outside their home without having followed them from another location. Tammy and Timothy have never provided Local 150 with consent to obtain, possess, use, or disclose any information about them, including information contained in motor vehicle records. Tammy and Timothy have never provided the State of Illinois, including the Illinois Secretary of State, with consent to disclose any information about them to Local 150, including information contained in motor vehicle records.

In her affidavit, Melisa Merryman states that she has been the owner of a motor vehicle registered in Illinois since 1990 and the holder of an Illinois driver's license since 1985. Melisa never provided her home address to Local 150 or to any of its agents. Certain Local 150 agents were outside Melisa's home in August 2006. Melisa has never provided Local 150 with consent to obtain, possess, use, or disclose any information about her contained in motor vehicle records. Melisa has never provided the State of Illinois, including the Illinois Secretary of State, with consent to disclose any information about her to Local 150, including information contained in motor vehicle records.

In her affidavit, Linda Soria states that she was employed by Local 150 from May 3, 1993, to September 30, 2006. During her employment she received microfiche and compact discs (CDs) containing software and Illinois motor vehicle records on an annual or bi-annual basis. Soria specifically states that in October 2004 and in 2005, Local 150 purchased searchable computer CDs

---

hearing on the motions.

containing motor vehicle records from the Illinois Secretary of State. The CDs and microfiche contained the following information: plate number, expiration date, reference number, type of vehicle, vehicle identification number, and the owner's name, address, and driver's license number. During her employment, Soria provided personal identifying information associated with various plate numbers to the Local 150 business agents at the direction of Local 150 President William E. Dugan. According to Soria, even though the information was supposed to be used to monitor construction jobs, the business agents used the personal information to locate the homes of employers, names and addresses of employees, and identify employees' spouses and friends. Soria states further that 2005 was the last year in which Local 150 obtained motor vehicle records from the Illinois Secretary of State. In 2006, the Secretary of State's office would not provide any further motor vehicle records.

In his affidavit, Thomas Merryman states that Local 150 Treasurer Joseph Ward delivered two CDs to him on or about October 10, 2006. The first CD was labeled "Vehicle Services / Secretary of State / Passenger / Fall Listing 04-05 / ISSUED OCT 04." The second CD was labeled "Vehicle Services / Secretary of State / Calendar and Fiscal / Fall Listing 04-05 / ISSUED OCT 04." According to Merryman, Ward told him that Local 150 obtained both CDs from the Illinois Secretary of State in October 2004 and similar CDs thereafter. Merryman stated that at no time did he ever use the CDs or install the CDs on any computer, and has no personal knowledge of the data contained on the two CDs.

Plaintiffs also have submitted the affidavit of Dan Jerger, Vice President of Information Technology at Quest Consultants, Inc., in which he states that the first CD in question has 8,332,432 records and the second CD in question has 3,293,989 records. Jerger attached copies of various

"screen captures" showing his computer monitor's display of the results of various searches of the data on the CDs in question. For example, exhibit G to Jerger's affidavit depicts the results of searches for license plate numbers "4479401," "D566769," and "MRYMAN," respectively, as follows:[2]

| PLATE# | EXP | REF# | VEH | YR | BS | V.I.N. | NAME, ADDRESS, AND ZIP |
|---|---|---|---|---|---|---|---|
| 4479401 | DEC04 | 4479401 | DODGE | 03 | VN | 1D4GP25B23B110804 | BARKER TIMOTHY R. 572 W. Main Cary 60013 |
| D566769 | MAY05 | D566769 | DODGE | 02 | LL | 1B4HS48NK2F2203270 | BARKER TIMOTHY R. 572 W. Main Cary 60013 |
| MRYMAN | MAY05 | 6894496 | MERCEDES | 03 | 4D | WBDSK75FX3F054186 | MERRYMAN MELISA R. TMBERLINE TR WOODSTOCK 60098 |

In order to view the data on the CDs, the user must insert the CD into the computer's CD drive, start the application software,[3] and advance through a series of screens until a screen is reached where the user may input a license plate number. A valid license plate number will yield a motor vehicle record containing the data fields set out above. It is apparent from the other screen captures attached to Jerger's affidavit that the above information can be retrieved from the CDs in question with reference to any Illinois license plate registered at that time.

Plaintiffs also have submitted copies of agreements dated March 3, 2002, and June 4, 2003, respectively, between the Illinois Secretary of State and Local 150 under which Local 150 purchased "vehicle registration microfiche plate number sequences" for $500 and copies of the corresponding $500 checks of the same dates drawn on a Local 150 account. In these agreements, Local 150 represented that its purpose for purchasing the information was "to check plates on construction sites only."

---

[2] The screen capture for the record for the plate "MRYMAN" also includes the driver's license number for Melisa Merryman. Timothy Barker's driver's license number is not included on the screen capture of the record for the two vehicles registered to him.

[3] This occurs automatically when the CD is placed into the CD drive if the computer is equipped with Microsoft Windows Autoplay.

II. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

In their motion for preliminary injunction, plaintiffs seek the following relief: (1) enjoin Local 150 from possessing, using, or disclosing any personal information of plaintiffs and the class contained in motor vehicle records that Local 150 has obtained in violation of the DPPA; (2) enjoin Local 150 from obtaining any further personal information contained in motor vehicle records for any purpose not permitted by the DPPA; (3) order Local 150 to tender to the clerk of this court all of the motor vehicle records it has unlawfully obtained; (4) prohibit Local 150 from otherwise violating the DPPA; and (5) award plaintiffs' reasonable costs and attorneys' fees.

A. The DPPA

The DPPA regulates the disclosure and resale of personal information contained in the records of state motor vehicle departments by limiting the state's ability to disclose a driver's personal information without the driver's consent. Reno v. Condon, 528 U.S. 141, 143-45 (2000). This prohibition extends to the state and to persons who have obtained the information from the state. Id. at 146 (citing 18 U.S.C. § 2721(c)). However, the DPPA includes several mandatory and permissive exceptions to the general prohibition against the DMV's release of personal information. The mandatory disclosures are listed in section (b) which provides that the DMV "shall" disclose personal information "for use in connection with" various matters involving motor vehicle or driver safety, theft, emissions, recalls, and title clarifications. 18 U.S.C. § 2721(b). The numerous permissive exceptions include disclosures such as for use by government agencies in carrying out their functions, for research, for insurance claims investigations, for court proceedings, for employment verification, for providing notice to owners of towed vehicles, and various other uses. See id. § 2721(b)(1)-(14).

The DPPA authorizes a private right of action in federal court:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

Id. § 2724(a). The DPPA defines "person" as "an individual, organization or entity, but does not include a State or agency thereof." Id. § 2725(2). "Motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." Id. § 2725(1). "Personal information," is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." Id. § 2725(3).

### B. Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quotation marks omitted). The Seventh Circuit has stated the applicable standard as follows:

> [A] party seeking a preliminary injunction must satisfy three requirements. First, that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims. Second, that traditional legal remedies would be inadequate. And third, that its claim has some likelihood of succeeding on the merits. If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction. If, however, the court finds that the moving party has passed this initial threshold, it then proceeds to the balancing phase of the analysis.

Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc., 549 F.3d 1079, 1086

(7th Cir. 2008) (citations omitted).

The United States Supreme Court has made clear that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." Winter v. Nat'l Res. Defense Council, Inc., 553 U. S. ___, 129 S. Ct. 365, 375 (2008). Plaintiffs maintain that they and the class already have suffered irreparable harm in the form of the invasion of their privacy, including the acquisition and use of their personal information.[4] Plaintiffs maintain further that they and the class will continue to sustain further irreparable harm if this court does not intervene and restrain Local 150 from continuing to possess, use, and/or disclose their personal information, and restrain Local 150's unlawful acquisition of additional personal information contained in motor vehicle records.

The three named plaintiffs and the putative class members are dissimilarly situated for purposes of deciding whether irreparable harm likely will be suffered prior to final resolution of plaintiffs' claims. If the facts contained in the affidavits submitted by plaintiffs prove true, Local 150 already has invaded the named plaintiffs' privacy by obtaining and using their personal information. However, no facts in the affidavits demonstrate that between now and final disposition of this case Local 150 will use the named plaintiffs' personal information in a manner that will cause them further harm. Moreover, the only evidence before the court that is relevant to whether Local

---

[4] In a footnote within their reply brief, plaintiffs state that "Federal and state courts have widely recognized the general principle that irreparable harm need not be shown if the statute provides for injunctive relief." In support of this statement, plaintiffs cite PepsiCo, Inc. v. Redmond, No 94 C 6838, 1996 WL 3965, at *28 (N.D. Ill. Jan. 2, 1996), and Illinois Bell Telephone Co. v. Illinois Commerce Commission, 740 F.2d 566, 571 (7th Cir. 1984). Plaintiffs proceed to inform the court that the DPPA expressly provides for preliminary and injunctive remedies. However, the Seventh Circuit explicitly stated in Bedrossian v. Northwestern Memorial Hospital, 409 F.3d 840, 843 n.1 (7th Cir. 2005), that the broad interpretation of Illinois Bell that plaintiffs advance is not the law.

7

150 will obtain additional personal information from motor vehicle records is that Local 150 ceased obtainment of such records after 2005. Consequently, the court finds that the named plaintiffs have not established that absent a preliminary injunction they are likely to suffer irreparable harm prior to the resolution of their clams. Therefore, plaintiffs have not satisfied the first threshold element for obtaining a preliminary injunction on behalf of themselves.

The analysis with respect to the putative class differs, however, because there is the potential that Local 150 could unlawfully obtain, use, or disclose the personal information of the putative class members between now and the time this case is resolved. Nevertheless, Local 150 argues that it is not proper to consider the likelihood that the putative class will suffer harm prior to the resolution of this case because the class is not yet certified. In response, plaintiffs argue that where, as here, class certification is "extremely likely," class-wide injunctive relief does not pose a problem. Plaintiffs also argue that class-wide preliminary injunctive relief is proper even without class certification if the relief granted the individual plaintiffs necessarily includes similarly situated putative class members.

First, for the reasons stated below, this court denies plaintiff's motion to certify class and therefore it cannot at this point share plaintiffs' confidence that certification of a class is extremely likely. Relief cannot be afforded to a class prior to class certification. See Davis v. Hutchins, 321 F.3d 641, 648 (7th Cir. 2003). Second, plaintiffs' reliance upon Wagner v. Duffy, 700 F. Supp. 935, 947 (N.D. Ill. 1988), in support of their position that this court can grant a preliminary injunction based on the circumstances of the putative class prior to class certification, is misplaced. Wagner acknowledges the general rule that "'[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis.'" Id. at 947 (quoting Zepeda v. United States, 753 F.2d 719, 728 n.1 (9th Cir.

1983).  Wagner also recognizes the practical effect on a putative class of granting an injunction on behalf of named plaintiffs where the relief afforded to the named plaintiffs is identical to the relief sought by the putative class.  Id.  The Wagner court specifically concluded, however, that "such a practical effect does not persuade courts to grant class-wide relief as a matter of law."  Id. at 948. Thus, in this case, while it is true that the three named plaintiffs and the putative class seek identical preliminary injunctive relief, the court cannot rely on evidence showing a likelihood that the putative class members will suffer interim harm and grant a preliminary injunction on behalf of a class not yet certified.  Obviously, plaintiffs can seek the same preliminary injunction on behalf of a class should one be certified in the future.

Because the court has determined that plaintiffs have failed to demonstrate the first threshold requirement for obtaining a preliminary injunction, the court need not consider the other factors and must deny plaintiff's motion for a preliminary injunction.  See Girl Scouts, 549 F.3d at 1086.

## III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In Count I of the first amended complaint, plaintiffs allege that Local 150 obtained personal information of plaintiffs and members of the putative class from the motor vehicle records contained on two CDs and on microfiche film.  Plaintiffs move pursuant to Federal Rule of Civil Procedure 23(c)(1) to certify Count I as a class action.  Plaintiffs have proposed the following class definition:

> Each and every individual whose name, address, and/or driver identification number (driver's license number), are contained in motor vehicle records obtained by [Local 150] from the office of the Illinois Secretary of State, without the express consent of such individuals, commencing 4 years prior to the date of the filing of this action and through the date of judgment herein, but excluding all Federal Judges and their family members within the first degree of consanguinity and persons who have expressly authorized the Illinois Secretary of State's office to provide third parties

with their "personal information" for any purpose.[5]

District courts have broad discretion to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. Chavez v. Ill. State Police, 251 F.3d 612, 629 (7th Cir. 2001). To obtain class certification, a plaintiff must satisfy all four requirements of Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy of representation). Fed. R. Civ. P. 23(a); Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). Even if a plaintiff meets all of the Rule 23(a) requirements, he or she also must satisfy one of the requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b).

In response to plaintiff's motion, Local 150's primary argument is that merely possessing the CDs that contain motor vehicle records without proof that personal information was obtained from those motor vehicle records is not sufficient to sustain a cause of action under § 2724(a). Accordingly, Local 150 concludes that numerosity is lacking in this case because plaintiffs have not advanced evidence showing that Local 150 obtained from motor vehicle records the personal information of anyone other than the named plaintiffs.[6] Plaintiffs maintain that because Local 150 actually possesses the motor vehicle records of millions of people, it cannot be disputed that the

---

[5] Plaintiffs estimate that the class includes in excess of 5 million members.

[6] In fact, Local 150 contends that plaintiffs have not shown any evidence that the personal information of Tammy Barker was obtained from a motor vehicle record because plaintiffs have not demonstrated that her name and address is within any identified motor vehicle record.

numerosity requirement is satisfied. Plaintiffs contend that merely obtaining a motor vehicle record containing personal information for an unpermitted purpose is sufficient for a DPPA violation.

The parties' debate is resolved by a plain reading of § 2724(a). In all cases involving statutory construction, the court starts with the language employed by Congress and assumes that the legislative purpose is expressed by the ordinary meaning of the words used. INS v. Phinpathya, 464 U.S. 183, 189 (1984). In this case, there is no dispute that the CDs in question contain "motor vehicle records" which in turn contain the "personal information" of millions of owners of motor vehicles registered in Illinois.[7] However, § 2724(a) requires that plaintiffs show that Local 150 knowingly obtained "personal information, from a motor vehicle record," and not that Local 150 simply obtained the "motor vehicle record" itself. As explained by plaintiffs' information technology consultant, the user of the CDs has to perform a sequence of steps to initiate a license plate search that will yield, among other things, personal information in the form of the registered owner's name and address. Thus, simply obtaining the CD containing the motor vehicle records is not equivalent to obtaining the personal information contained therein.

The court finds instructive Local 150's argument that the mere possession of CDs containing motor vehicle records is not meaningfully distinguishable from having a Westlaw account and password that permits the user to access motor vehicle records on Westlaw's electronic database. With respect to Illinois motor vehicle records, Westlaw has a database called "Public Records Combined - Illinois" (PUBRECS-IL) under which the user can search, among other public records, Illinois motor vehicle records. With access to this database, the user can search the license plate

---

[7] The parties arguments are based on the CDs as opposed to the microfiche. All the evidence referred to in the materials filed in support of and in opposition to the instant motions is in regard to the data on the CDs and not on the microfiche. Consequently, the court refers to the CDs only.

11

number of a vehicle and learn the name and address of the registered owner of that vehicle. As noted by Local 150, the holder of such a Westlaw account has not obtained personal information from the motor vehicle records contained therein just by having the account and password. This is true even though the holder of such a Westlaw account is in possession of all the Illinois motor vehicle records on the database in the same way the possessor of a CD containing the same data is in possession of all the Illinois motor vehicle records.

Plaintiffs attempt to distinguish the Westlaw database from the data on the CDs at issue by noting that the Westlaw searcher must identify what exception to the DPPA the user is relying upon before the personal information will be returned. While this is true, the distinction does not change the analogy. Someone wishing to obtain personal information from a motor vehicle record on the Westlaw database can easily by-pass the inquiry by checking an inapplicable exception such that he or she in effect has the same unfettered access to the entire database of motor vehicle records as does the possessor of the CDs at issue.[8] In any event, the important factor is whether personal information was obtained. Whether the user is obtaining the personal information from the motor vehicle record for a lawful or unlawful purpose, it is not obtained until the personal information is accessed in some manner, and having the ability to obtain the personal information (lawfully or unlawfully) is not the same as actually obtaining the personal information. Whether the motor vehicle records are on a CD or an electronic database, an individual with access to either can obtain the personal information therein for a purpose permitted or not permitted by the DPPA. The lawfulness of the obtainment is an issue apart from whether personal information was in fact

---

[8] It appears from plaintiffs' first amended complaint that Local 150 also misrepresented its purpose when it contracted for the CDs by stating that the reason for purchasing the motor vehicle records was to check license plates on construction sites only.

obtained.

Based on the foregoing, the court concludes that a private right of action does not lie under § 2724(a) based on knowing obtainment of a "motor vehicle record" for a purpose not permitted by the DPPA absent the additional showing that "personal information" was obtained from that record. See McCready v. White, 417 F.3d 700, 703 (7th Cir. 2005) (holding that "[§ 2724(a)] authorizes private suits, but only by persons whose information has been disclosed improperly"). In this case, plaintiffs have not shown that Local 150 obtained, from a motor vehicle record, the personal information of anyone other than the named plaintiffs. As for the alleged class members, plaintiffs have shown only that Local 150 has the ability to access their personal information; they have not shown that the class members' personal information has been obtained. Therefore, numerosity is lacking at this point and the court need not discuss the merits of the other Rule 23(a) factors.

Because the court finds that plaintiffs have not met the numerosity requirement, plaintiffs' motion for class certification is denied without prejudice to refiling a petition and showing, in addition to meeting the other requirements, that Local 150 obtained from the motor vehicle records on the CDs or microfiche the personal information of a number of plaintiffs so numerous that joinder of all members is impracticable.

ENTER:

_____
FREDERICK J. KAPALA
District Judge

Date: July 9, 2009