# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50015 | **DATE** | 3/14/2011 |
| **CASE TITLE** | Barker, et al. vs. International Union of Operating Engineers Local 150 | | |

**DOCKET ENTRY TEXT:**

Local 150's motion for summary judgment [269] is granted in part and denied in part. Local 150's motion for sanctions [263] is denied.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiffs, Tammy Barker, Timothy Barker, and Melisa Merryman have sued defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), alleging that Local 150 violated the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. §§ 2721-2725; engaged in unlawful stalking, following, intimidating and harassing; inflicted emotional distress; and violated privacy rights. Before the court are Local 150's motions for summary judgment and for sanctions. For the reasons that follow, the motion for summary judgment is granted in part and denied in part. The motion for sanctions is denied.

### I. FACTS[1]

Plaintiffs filed this case on January 21, 2008, while Tammy Barker's employer, Professional Services Industries, Inc. (PSI), and other materials testing firms, were embroiled in anti-trust litigation with Local 150 that arose out of a labor dispute between the parties. See Midwest Eng'g Servs. et al. v. Int'l Union of Operating Eng'rs Local 150, No. 05 C 50023. In Midwest, the plaintiffs sought, among other things, to enjoin Local 150 from ambulatory picketing of PSI by following Tammy Barker and other employees to their job sites. On May 6, 2009, this court granted summary judgment for Local 150 in Midwest holding that the ambulatory picketing was lawful and arose out of a labor dispute. See id. at doc. 532. On June 1, 2009, this court declined the Midwest plaintiffs' request to enjoin the ambulatory picketing involving Tammy Barker and others finding that the violence exception to the prohibition against enjoining peaceful picketing in the Norris-LaGuardia Act (NLA), 29 U.S.C. § 104(e), did not apply. See id. at doc. 539. In June 2009, the parties settled their labor dispute and all ambulatory picketing of Tammy Barker ceased.[2]

In this case, plaintiffs' first amended complaint, filed on February 22, 2008, includes four counts. In Count I, all three plaintiffs allege that Local 150 violated the DPPA by knowingly obtaining, disclosing, or using their personal information from motor vehicle records for purposes not permitted by the DPPA.[3] More specifically, it is alleged that Local 150 purchased or obtained vehicle registration microfiche in June 2003, two compact discs (CDs) embedded with motor vehicle data containing personal information in June 2004, and additional CDs containing such information in 2005.[4] Plaintiffs allege that Local 150 learned their addresses

**STATEMENT**

from these motor vehicle records such that Local 150 pursuit agents were able to appear at their homes.

In paragraph 49 of a section of the first amended complaint styled "Facts Common to Counts II, III, and IV," plaintiffs allege in subparagraphs a. through ppp. a multitude of encounters Tammy Barker had with Local 150 agents between January 2005 and October 2007. These encounters include face-to-face conversations, telephone calls, occasions when Local 150 agents surveilled Tammy Barker or her home, and occasions when Local 150 agents driving union vehicles followed Tammy Barker as she drove her automobile.

In Count II, Tammy Barker requests a declaratory judgment indicating that Local 150's conduct was unlawful and not privileged, and an order enjoining Local 150 and its employees or agents from stalking, following, intimidating and harassing Tammy Barker, or from coming within sight of her home or family. In Count III, Tammy Barker alleges the state-law tort of intentional infliction of emotional distress (IIED). In Count IV, Timothy and Tammy Barker allege the state-law tort of invasion of privacy. In each of these Counts, plaintiffs incorporate the allegations contained in paragraph 49.

Tammy and Timothy Barker maintain that they have been the owners of motor vehicles registered in Illinois and the holders of Illinois driver's licenses since 1985 and 1983, respectively. Neither Tammy nor Timothy have ever provided their home address to Local 150 or to any of its agents. Certain Local 150 agents have been present outside the Barker's home and it is their belief that such agents first appeared outside their home without having followed them from another location. Tammy and Timothy have never provided Local 150 with consent to obtain, possess, use, or disclose any information about them, including information contained in motor vehicle records. Tammy and Timothy have never provided the Illinois Secretary of State with consent to disclose any information about them to Local 150, including information contained in motor vehicle records.

In an affidavit submitted in support of plaintiffs' motion for preliminary injunction and to certify class, Merryman asserted that she has been the owner of a motor vehicle registered in Illinois since 1990 and the holder of an Illinois driver's license since 1985, that she never provided her home address to Local 150 or to any of its agents, and yet Local 150 agents were outside her home in August 2006. At her deposition, Merryman agreed that only one Local 150 agent came to her home in August 2006, he was a former employee of her husband's business, and that he had been to their home on previous occasions. Merryman conceded that she had no knowledge that this Local 150 agent obtained her address from a motor vehicle record.

Plaintiffs hired Dan Jerger, Vice President of Information Technology at Quest Consultants, Inc., to analyze the 2004 CDs. Jerger found that the first CD had 8,332,432 records and the second CD had 3,293,989 records. Jerger ran the Barker's and Merryman's license plates on the CDs and Timothy's and Merryman's personal information was returned. Jerger agreed that Tammy Barker's name did not appear on the CDs, but indicated that an asterisk next to Timothy Barker's name denoted that there were multiple owners of the vehicles registered to Timothy Barker.

In an affidavit executed on January 11, 2008, Linda Soria stated that she was employed by Local 150 from May 3, 1993, to September 30, 2006. During her employment she received microfiche and CDs containing software and Illinois motor vehicle records on an annual or bi-annual basis. In October 2004 and in 2005, Local 150 purchased searchable CDs containing motor vehicle records from the Illinois Secretary of State. During her employment, Soria provided personal identifying information associated with various plate numbers to Local 150 business agents at the direction of Local 150 President William E. Dugan. According to Soria, even though the information was supposed to be used to monitor construction jobs, the business agents used the personal information to locate the homes of employers, names and addresses of employees, and to identify employees' spouses and friends. Soria stated further that 2005 was the last year in which Local 150 obtained motor vehicle records from the Illinois Secretary of State. In 2006, the Secretary of State would not provide any further motor vehicle records. In her January 11, 2008 affidavit, Soria did not identify any license plate that she ran or any individual whose personal information was obtained from the CDs. Soria's affidavit was notarized by Casey

Goldman. Soria refused to answer questions at her May 28, 2008 deposition after asserting her Fifth Amendment privilege not to incriminate herself.

On July 9, 2009, this court issued an opinion denying plaintiffs' motion for preliminary injunction and to certify a class. See Barker v. Int'l Union of Operating Eng'rs, Local 150, 641 F. Supp. 2d 698 (N.D. Ill. 2009). This court held "that a private right of action does not lie under § 2724(a) based on knowing obtainment of a 'motor vehicle record' for a purpose not permitted by the DPPA absent the additional showing that 'personal information' was obtained from that record." Id. at 706. The court explained that "simply obtaining the CD containing the motor vehicle records is not equivalent to obtaining the personal information contained therein." Id. at 705-06.[5]

On March 30, 2010, Casey Goldman executed an affidavit stating that she and plaintiffs' counsel Robert Hanlon were present when Soria gave her January 11, 2008 affidavit and that Soria "stated that she could not remember all of the license plates she ran using the CDs, but that Soria said: 'I ran the Barker's license plate with it.'"

On October 11, 2010, Soria executed another affidavit in which she swore to the following:

2. I executed the affidavit of January 11, 2008 at the request of Robert Hanlon. He told me several times before I signed the affidavit that I would not get in any legal trouble by signing the affidavit.

3. Robert Hanlon advised me that he could and would get me immunity from any legal responsibilities if I signed the affidavit.

4. Some days after I signed the affidavit I asked Robert Hanlon for a letter that I would get immunity. He did not get me such a letter and he then did not return my phone calls.

Casey Goldman executed a second affidavit on November 8, 2010, recounting a meeting that she, Hanlon, and Dean Polales, another attorney representing plaintiffs, had with Soria on March 21, 2008. In that affidavit, Goldman states that Soria specifically said that her affidavit of January 11, 2008 was "all true," that she ran plates using the CDs as part of her job with Local 150, and that she ran the Barker's plate.

Hanlon has submitted a declaration dated November 8, 2010. In that declaration, Hanlon swears that prior to Soria's execution of her affidavit, he did not make any promise to Soria that he could get her immunity. Hanlon also stated that after he met with Soria on March 21, 2008, Soria asked him if he was going to bring a lawsuit against her. On November 30, 2010, Soria executed yet another affidavit refuting Hanlon's claim that he did not promise her immunity and denying that she ever asked Hanlon about his suing her.

## II. SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor." Gillespie v. Equifax Info. Servs., L.L.C., 484 F.3d 938, 940 (7th Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The party opposing a properly supported motion for summary judgment, however, may not defeat it simply by resting upon the allegations and denials of his or her pleadings, but must present affirmative evidence raising a genuine issue of material fact. Anderson, 477 U.S. at 256-57.

### A. DPPA Claims (Count I)

Local 150 argues that plaintiffs have identified no evidence to support their claims that Local 150 obtained Tammy Barker's, Timothy Barker's, or Melisa Merryman's personal information in violation of the

DPPA. In response, plaintiffs maintain that they have identified facts which are sufficient to create a genuine issue of material fact as to their DPPA claims.

### 1. Tammy Barker

With regard to evidence that Local 150 obtained Tammy Barker's personal information, the threshold issue is whether the motor vehicle records to which Local 150 had access even contained personal information pertaining to Tammy Barker.

In addition to criminal penalties, the DPPA authorizes a private right of action in federal court. It provides:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual <u>to whom the information pertains</u>, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a) (emphasis added). "Motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." <u>Id.</u> § 2725(1). "Personal information," is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." <u>Id.</u> § 2725(3).

In this case the record reveals that Local 150 purchased from the Illinois Secretary of State vehicle registration microfiche and then CDs searchable by license plate number which will yield personal information. There is no evidence, however, that any such motor vehicle records pertained to Tammy Barker and would yield her personal information.[6] In fact, plaintiffs' information technology consultant, Dan Jerger, testified at his deposition that Tammy Barker's name does not appear in the records on the CDs. Under these circumstances, Tammy Barker has no standing to sue. <u>See</u> <u>McCready v. White</u>, 417 F.3d 700, 703 (7th Cir. 2005) (holding that "[§ 2724(a)] authorizes private suits, but only by persons whose information has been disclosed improperly"); <u>see also</u> <u>Pichler v. UNITE</u>, 542 F.3d 380, 390 (3rd Cir. 2008) (holding that plaintiffs who were not the registered owners of vehicles about which defendant union obtained information suffered no invasion of privacy that the DPPA protects and therefore lacked standing to sue).

As noted in this court's previous opinion, the record evidence in this case shows that the CDs contain two vehicle registration records that list Timothy Barker's name and address as the owner. <u>See</u> <u>Barker</u>, 641 F. Supp. 2d at 701. However, the fact that Timothy Barker and Tammy Barker share the same address does not mean that the address in those records pertained to Tammy as required by the DPPA. On this issue, this court finds the <u>Pichler</u> court's reasoning persuasive:

> It is undisputed that Russell Daubert and Jose Sabastro had a viable cause of action under the DPPA because they were, respectively, "the individual" who was the registered owner of a vehicle about which UNITE obtained information. In contrast, neither Carri Daubert nor Deborah Sabastro were registered owners of the vehicles and, in fact, their names did not appear anywhere on the motor vehicle records. Nonetheless, in arguing that they have standing to sue under the DPPA, they focus on the fact that they share personal information -such as their addresses- with their husbands and, therefore, the personal information "pertains" to them as well. We believe that this argument reads § 2724(a) too broadly.
>
> The DPPA protects the privacy interests of "the individual to whom the [personal] information pertains . . . ." <u>Id.</u> Notably, Congress chose to employ the singular term "the individual" in this section. To adopt Carri Daubert's and Deborah Sabastro's argument, we would have to rewrite the statute to replace 'the individual' with the words '<u>any</u> individual<u>s</u>.' Taking

**STATEMENT**

their argument to its logical conclusion, the DPPA would grant a cause of action to anyone (e.g., spouses, children, parents, friends, other relatives) who, for instance, resides at an address improperly obtained from motor vehicle records. This would be an unwarranted extension of § 2724(a).

Pichler, 542 F.3d at 391 (footnote omitted). Thus, on this record, to the extent that there is evidence that Local 150 obtained personal information from a motor vehicle record in violation of the DPPA, the cause of action belongs to Timothy Barker, not Tammy Barker. Therefore, Local 150 is granted summary judgment on Tammy Barker's DPPA claim in Count I.

**2. Timothy Barker**

With regard to Timothy Barker, plaintiffs maintain that the following facts are sufficient to create a genuine issue of material fact as to his DPPA claim: (1) Local 150 applied for a complete set of motor vehicle records; (2) Local 150 obtained computer searchable CDs embedded with the personal information of plaintiffs in 2004 and 2005; (3) Local 150 ran plates at least 2-3 times per week for the duration of Soria's employment; (4) Soria ran the Barker's license plate; (5) Local 150 and the Indiana Illinois and Iowa Foundation for Fair Contracting (IIIFFC) shared personal information from motor vehicle records as an ordinary business practice; and (6) the Local 150 business agents who obtained the personal information from motor vehicle records used the information for any purpose, as opposed to a specified exemption under the DPPA.

Items (1) through (3), (5) and (6) are evidence that Local 150 possessed motor vehicle records containing personal information and that on occasion it obtained the personal information of unidentified individuals from these records for unpermitted purposes. However, only the individual to whom the information pertains, may bring a civil action. See 18 U.S.C. § 2724(a). In addition, as this court has previously determined, "§ 2724(a) requires that plaintiffs show that Local 150 knowingly obtained 'personal information, from a motor vehicle record,' and not that Local 150 simply obtained the 'motor vehicle record' itself." Barker, 641 F. Supp. 2d at 705. In other words, "simply obtaining the CD[s] containing the motor vehicle records is not equivalent to obtaining the personal information contained therein." Id. at 705-06. Therefore, items (1) through (3), (5) and (6) are not evidence that Local 150 obtained Timothy Barker's personal information in violation of the DPPA.

In contrast, item (4), evidence that Soria ran the Barker's plate, if admissible, constitutes evidence that Local 150 obtained Timothy Barker's personal information from a motor vehicle record. Plaintiffs maintain that Goldman's hearsay testimony as to Soria's statement is admissible as a statement against penal interest under Federal Rule of Evidence 804(b)(3).[7]

Rule 804(b)(3) provides that an unavailable declarant's statement is not excluded by the hearsay rule if:

(A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3). Local 150 does not dispute that Soria is unavailable to testify because she asserted her rights under the Fifth Amendment. Instead, Local 150 argues that Soria's statement was not against her penal interest because she did not make the purported statement knowing it was against her penal interest.[8] Violators of the DPPA are subject to a criminal fine, 18 U.S.C. § 2723(a), as well as civil liability, 18 U.S.C. § 2724(a).

The court finds that there is sufficient indicia that Soria was made aware of some potential for penalties or liability on January 11, 2008, when she made the statements against interest. In her affidavit of October 11, 2010, Soria states that Hanlon told her several times before she executed her January 11, 2008 affidavit that she

**STATEMENT**

would not get in any legal trouble by signing the affidavit, thereby indicating that Soria was hesitant to make the statements. Although Hanlon disputes it, Soria also indicated that Hanlon promised her immunity from any legal trouble and that Soria asked Hanlon for a letter of immunity. Thus, on January 11, 2008, Soria was on notice of potential legal consequences as a result of her statements. That Hanlon allegedly promised Soria immunity does not alter this conclusion because a reasonable person in Soria's position would not conclude that Hanlon, a civil attorney representing plaintiffs, could grant her immunity for criminal liability, see United States v. Lawrence, 934 F.2d 868, 873 (7th Cir. 1991) (noting that only the government can grant immunity from criminal liability), or civil liability to individuals he did not represent. Local 150 also argues that there are no corroborating circumstances clearly indicating the trustworthiness of Soria's statement. However, the corroborating circumstances requirement of Rule 804(b)(3)(B) applies only in criminal cases. See Fed. R. Evid. 804(b)(3)(B).

Local 150 argues further that, even if admissible, Goldman's affidavit does not create a genuine issue of material fact as to Timothy Barker's DPPA claim because simply running a plate does not establish that Soria, or anyone else affiliated with Local 150, actually obtained, used or disclosed Timothy Barker's personal information from a motor vehicle record. The court disagrees. Evidence that Soria ran the Barker's plate, together with Soria's statement in her January 11, 2008 affidavit that Local 150 business agents would regularly call her and ask for identifying personal information for a given license plate, constitutes evidence that Local 150 obtained Timothy Barker's personal information as defined in § 2725(3) of the DPPA.[9]

Local 150's last argument as to Timothy Barker's DPPA claim is that it is barred because he could have intervened in the Midwest case and because his marital relationship with Tammy Barker places him in privity with her. Local 150 does not explain, however, why the ability to join in the prior action as a plaintiff would bar his claim. Judge v. Quinn, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (quotation marks omitted)). In any event, Local 150 fails to demonstrate that Timothy Barker's DPPA claim was subject to joinder by establishing that he asserted a right to relief jointly or severally with the plaintiffs in the Midwest case, or that his claim arose out of the same transaction or occurrence as the Midwest plaintiffs' federal anti-trust and labor claims against Local 150. See Fed. R. Civ. P. 20(a).

Local 150's argument that Timothy Barker's marital relationship with Tammy Barker places them in privity and is sufficient to bar his DPPA claim incorrectly assumes that the judgment entered in the Midwest case would be res judicata on Tammy Barker's DPPA claim, or that she would be collaterally estopped from bringing that claim. Res judicata, or claim preclusion, has three elements: "a final decision in the first suit; a dispute arising from the same transaction (identified by its 'operative facts'); and the same litigants (directly or through privity of interest)." Czarniecki v. City of Chi., ___ F.3d ___, 2011 WL 181471, at *3 (7th Cir. 2011) (quotation marks omitted). With respect to the same transaction element, "[t]wo claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations." Id. at *4 (quotation marks omitted). The factual allegations of Tammy Barker's DPPA claim are very different from plaintiffs' factual allegations in Midwest. In this case, Tammy Barker alleges that Local 150 violated the DPPA by knowingly obtaining her personal information, i.e. her address, from a motor vehicle record for a purpose not permitted by the DPPA. No such factual allegations were made by plaintiffs in Midwest. Instead, the operative factual allegations in that case were that the actions of Local 150 agents in following Tammy Barker from various locations, including her home, to work sites –irrespective of how the agents learned her address– violated federal anti-trust and labor laws. For this reason, the judgment entered in Midwest would not be res judicata on Tammy Barker's DPPA claim.

As for collateral estoppel, or issue preclusion, the party seeking to invoke the doctrine is required to establish that (1) the issue sought to be precluded was the same as that involved in the prior litigation, (2) the issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action. H-D Mich., Inc. v. Top Quality

Serv., Inc., 496 F.3d 755, 760 (7th Cir. 2007). Whether Tammy Barker's personal information was obtained in violation of the DPPA was not litigated in the Midwest case, nor was the issue essential to this court's judgment that federal anti-trust and labor laws were not violated. Therefore, Tammy Barker would not be collaterally estopped from brining her DPPA claim in the present case, and as such, neither is Timothy Barker.

Because the court has rejected all of Local 150's arguments attacking Timothy Barker's DPPA claim, that claim will stand. Thus, Local 150 is denied summary judgment on Timothy Barker's DPPA claim in Count I.

### 3. Melisa Merryman

With regard to Merryman, Local 150 suggests that the only basis for her DPPA claim is that a Local 150 agent came to her home in August 2006 even though she never provided her home address to anyone at Local 150. Local 150 points out, however, that Merryman agreed at her deposition that the Local 150 agent was a former employee of her husband's business and that he had been to their home on previous occasions. Merryman also agreed that she had no knowledge that Local 150 obtained her address from motor vehicle records. Based on the foregoing, Local 150 argues that there is no evidence that it obtained Merryman's personal information from a motor vehicle record in violation of the DPPA and that it is entitled to summary judgment as a mater of law.

Plaintiffs do not directly respond to Local 150's argument that there is no evidence to support Merryman's DPPA claim and thereby concede the issue. See Wojtas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (stating that the failure to oppose arguments constitutes waiver); Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc., 991 F.2d 1249, 1258 (7th Cir. 1993) (holding that summary judgment arguments not responded to are conceded and waived); see also Bleichner v. Spies Painting & Decorating, Inc., No. 08-cv-057-bbc, 2009 WL 281145, *4 (W.D. Wis. 2009) (noting that legal issues raised in summary judgment that either are explicitly conceded or not responded to are waived). Moreover, for the reasons already stated in the preceding section, factual points (1) through (3), and (5) and (6) do not support a DPPA claim and item (4) does not pertain to Merryman. Consequently, the court agrees that plaintiffs have failed to identify evidence to support Merryman's DPPA claim and summary judgment is entered for Local 150 on that claim.

For the these foregoing reasons, Local 150 is granted summary judgment on plaintiffs' claims within Count I that Local 150 obtained the personal information of Tammy Barker and Melisa Merryman from motor vehicle records in violation of the DPPA. Local 150's motion for summary judgment is denied with respect to plaintiffs' claim that Local 150 obtained the personal information of Timothy Barker from a motor vehicle record in violation of the DPPA.

### B. Declaratory Judgment Claim (Count II)

Local 150 contends that (1) the allegations of Count II do not meet basic notice pleading standards because plaintiffs fail to identify the substantive basis of their claim; (2) without a substantive basis for plaintiffs' claim, this court lacks subject matter jurisdiction to enter a declaratory judgment; (3) the NLA prohibits federal courts from issuing injunctions in cases like this one which grow out of labor disputes; (4) this court has already determined that the conduct complained of was lawful ambulatory picketing not subject to injunction; and (5) the relief sought in Count II is moot because the labor dispute between Local 150 and Tammy Barker's former employer is over and Local 150 agents have not followed Tammy Barker or appeared outside the Barker home since June 2009.

The court need not resolve Local 150's jurisdictional and procedural arguments, and will put aside the possibility that the requested declaration is barred by this court's previous holding that Local 150 was engaged in lawful ambulatory picketing, because plaintiffs do not respond to Local 150's mootness argument and thereby concede the issue. See Wojtas, 477 F.3d at 926; Lac Du Flambeau Band of Lake Superior Chippewa Indians,

**STATEMENT**

991 F.2d at 1258.

Even without the concession and waiver, the court would find the relief sought in Count II to be moot as there is no evidence indicating that there is any on-going conduct on Local 150's part to enjoin and no actual dispute between the parties. "Federal courts do not, as a rule, enjoin conduct which has been discontinued with no real prospect that it will be repeated." Wis. Right to Life, Inc. v. Schober, 366 F.3d 485, 492 (7th Cir. 2004) (quotation marks omitted). "Under Article III, § 2 of the United States Constitution, federal court jurisdiction is limited to actual, ongoing controversies." St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 626 (7th Cir. 2007) (quotation marks omitted). In this case, it is undisputed that all ambulatory picketing of Tammy Barker has ceased, and the labor dispute between Local 150 and Tammy Barker's former employer has been settled. Because the relief requested is moot, Local 150 is granted summary judgment on Count II.

### C. State-law Claims (Counts III & IV)

Local 150 contends that the Barkers are not entitled to relief under their state-law claims for IIED and invasion of privacy because these claims are preempted by federal law under the preemption principles stated in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959), and its progeny. In response, plaintiffs argue that Local 150's preemption argument has been heard and rejected by this court and an exception to Garmon preemption applies in this case.

On March 28, 2008, Local 150 filed a motion to dismiss or to stay in which it argued, among other things, that plaintiffs' state-law claims were Garmon preempted. On March 24, 2009, this court granted Local 150's motion to stay without ruling on the motion to dismiss. On June 9, 2009, this court lifted the stay. The court's docket entry on July 15, 2009, erroneously indicates that Local 150's motion to dismiss was denied by the district court on March 24, 2009, as it is clear that the merits of the motion to dismiss were never ruled upon. Therefore, contrary to plaintiffs' argument, Local 150's preemption argument has not been heard and rejected by this court.

"Garmon pre-emption is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA." Chamber of Commerce of the United States v. Brown, 554 U.S. 60, 65 (2008) (citation and quotation marks omitted). "The NLRA preempts state claims based on conduct that is arguably protected, arguably prohibited, or left to the domain of market forces by the NLRA." Smart v. Local 702 Int'l Bhd. of Elec. Workers, 562 F.3d 798, 805 (7th Cir. 2009) (quotation marks omitted). Under Garmon, a State is prohibited from regulating conduct that is not only actually protected or prohibited by the NLRA, but also conduct that is arguably protected or prohibited by the NLRA. Brown, 554 U.S. at 65.

The state-law claims alleged in Counts III and IV incorporate the allegations in paragraph 49 of the first amended complaint as the outrageous conduct upon which the IIED claim is based and as the means of invading the Barkers' privacy. These are the same incidents which Tammy Barker testified to at the hearing on the motion to enjoin ambulatory picketing in the Midwest case. This court held that the conduct Tammy Baker testified to, although negligent, reckless, and sometimes contrary to the Illinois vehicle code, was lawful ambulatory picketing which this court did not have subject matter jurisdiction to enjoin. Midwest, No. 05 C 50023, at doc. 539. This court's holding that Local 150 was engaged in a lawful ambulatory picket precludes the Barkers' claims for IIED and invasion of privacy because lawful picketing is protected by § 7 of the NLRA, 29 U.S.C. § 107. Thus, the state-law claims in Counts III and IV are preempted.

There are exceptions to Garmon preemption such as where the regulated activity is deeply rooted in local feeling and responsibility or if the claim raises issues that are merely collateral or peripheral to federal labor law. Garmon, 359 U.S. at 243-44. In support of their position that such an exception applies, plaintiffs cite Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25, 430 U.S. 290 (1977), a case where the Supreme Court refrained from finding that the NLRA pre-empted state tort remedies for IIED. However, in Farmer, the outrageous conduct was not protected peaceful picketing but, rather, unprotected threats, ridicule,

intimidation, and other verbal abuse causing the plaintiff emotional harm. Id. at 301-02 ("No provision of the National Labor Relations Act protects the 'outrageous conduct' complained of by petitioner Hill in the second count of the complaint."). In contrast, the state-law claims in this case are squarely based on the conduct of Local 150 agents which was also lawful ambulatory picketing protected under § 7 of the NLRA.[10] If Counts III and IV are allowed to proceed, there is a risk that the protected conduct will be deemed to violate state tort law which would threaten undue interference with the federal regulatory scheme. See id. at 302. It is important to note that violent picketing is not protected under the NLRA. As a result, if the Barker's state-law claims were based on violent picketing they would not be pre-empted. Of course this court has already determined that the picketing involved here did not involve violence or the threat of violence. Due to Garmon preemption, the Barkers state-law claims for IIED and invasion of privacy are barred. Therefore, Local 150 is granted summary judgment on Counts III and IV.

### D. Summary Judgment Conclusion

In sum, Local 150 is granted summary judgment on the DPPA claims in Count I brought by Tammy Barker and Melisa Merryman. Local 150 is denied summary judgment on Timothy Barker's DPPA claim in Count I. Local 150 is granted summary judgment on Counts II, III, and IV.

### III. SANCTIONS

Local 150 moves for sanctions against plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent authority. Plaintiffs and their counsel oppose the motion. For the reasons that follow, the motion is denied.

### A. Rule 11 and § 1927

Rule 11 requires an attorney to certify, to the best of his knowledge, that the legal contentions asserted in the pleading are nonfrivolous and have or are likely to have evidentiary support. Fed. R. Civ. P. 11(b). Under Rule 11, "a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A finding of vexatious conduct under § 1927 requires "either subjective or objective bad faith." Kotsilieris v. Chalmers, 966 F.2d 1181, 1184 (7th Cir. 1992). However, "[s]ubjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis." Dal Pozzo v. Basic Mach. Co., Inc., 463 F.3d 609, 614 (7th Cir. 2006). Reckless indifference for the law qualifies as objective bad faith. Id. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." Id. (quotation marks omitted). The court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by pursuing a claim that is without a plausible legal or factual basis. Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006). Additionally, § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." Id. (quotation marks omitted).

In their reply brief, Local 150 makes clear that its motion is based on the notion that plaintiffs' counsel was obligated under Rule 11 and § 1927 to dismiss plaintiffs' claims based on law that came to light after the filing of the complaint and after no evidence in support of their claims materialized during discovery. With regard to Tammy Barker's DPPA claim in Count I, Local 150 argues that no later than December 2008, when the Third Circuit decided Pichler, plaintiffs' counsel knew that Tammy Barker's claim was no longer viable because her name did not specifically appear on a motor vehicle record and their failure to dismiss that claim at

that point was sanctionable. The court disagrees. District courts in the Seventh Circuit must "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can," but those decisions are not binding. Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1123 (7th Cir. 1987); see also Varitalk, LLC v. Lahoti, No. 07 C 1771, 2007 WL 1805086, at *3 (N.D. Ill. June 19, 2007). Therefore, because Pichler is not a Seventh Circuit decision, it was not objectively unreasonable for plaintiffs to maintain that this court should not follow it. Moreover, it would not be objectively unreasonable to take the position that Pichler is legally distinguishable because the motor vehicle records of the two vehicles owned by Timothy Barker contained asterisks indicating multiple owners. Therefore, the court will not impose a sanction for failure to dismiss Tammy Barker's DPPA claim.

With regard to Timothy Barker's DPPA claim, Local 150 makes the same arguments that it advanced in support of its motion for summary judgment on that claim. Because the court rejected those arguments and the claim stands, there is no basis to impose a sanction for failing to dismiss Timothy Barker's DPPA claim.

With regard to Merryman's DPPA claim, Local 150 argues that the lack of evidence that Local 150 obtained Merryman's personal information –which became clear after Merryman's October 23, 2008 deposition– together with this court's holding on July 9, 2009 that "a private right of action does not lie under § 2724(a) based on knowing obtainment of a 'motor vehicle record' . . . absent the additional showing that 'personal information' was obtained from that record," Barker, 641 F.Supp.2d at 706, should have caused plaintiffs' counsel to dismiss Merryman's DPPA claim. Local 150 maintains that the failure to do so was sanctionable. However, as noted in section II.A.3. of this order, plaintiffs did not specifically respond to Local 150's argument that there was no evidence to support Merryman's DPPA claim and therefore conceded the argument. District courts may deem a claim abandoned or withdrawn when a party opposing a motion for summary judgment fails to address a movant's argument as to a particular claim on a specific ground. Palmer v. Marion County, 327 F.3d 588, 597-98 (7th Cir. 2003) (claims not addressed in a summary judgment opposition brief are abandoned). Under these circumstances, where plaintiffs took no affirmative action to advance Merryman's DPPA claim, the court exercises its discretion and finds that it should not award attorneys' fees as a sanction for failure to dismiss the claim.[11]

The foregoing rationale also applies to Local 150's request for sanctions based on plaintiffs' maintenance of the declaratory judgment and injunctive relief claims alleged in Count II. Local 150 argues that plaintiffs should have dismissed Count II once the Midwest case settled and all ambulatory picketing ceased. However, as noted in section II.B. of this order, plaintiffs did not respond to Local 150's mootness argument and thereby conceded the issue. Id. Under these circumstances, the court exercises its discretion and will not award attorneys' fees as a sanction for failure to dismiss Count II.

Local 150 also argues that plaintiffs should be sanctioned for advancing the state-law claims alleged in Counts III and IV beyond this court's 2009 finding in the Midwest case that Local 150's ambulatory picketing was lawful and not subject to injunction because that finding defeated the Barker's state law claims as a matter of law based on Garmon preemption. The court disagrees. Plaintiffs made an objectively reasonable argument that their state-law claims were not preempted under the authority of Farmer and the other cases cited in their brief. Consequently, the court will not impose a sanction for failing to dismiss Counts III and IV following this court's findings in the Midwest case.

### B. Court's Inherent Authority

The inherent authority of the court "is a residual authority, to be exercised sparingly" and only when other rules do not provide sufficient basis for sanctions. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 390-91 (7th Cir. 2002). In this case, Local 150 has not demonstrated that Rule 11 and § 1927 fail to provide a sufficient basis for sanctions. Instead, Local 150 has failed to establish that sanctions are appropriate under either Rule 11 or § 1927. Consequently, the court cannot utilize its inherent authority to

**STATEMENT**

impose sanctions.

The court has rejected Local 150's arguments in favor of imposing sanctions against plaintiffs and their counsel. Therefore, Local 150's motion for sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, Local 150's motion for summary judgment is granted in part and denied in part. Local 150's motion for sanctions is denied.

1. The facts are taken from the pleadings, the parties' Local Rule 56.1 statements of material fact, the responses and replies thereto, as well as the exhibits attached thereto, and are either undisputed or have been viewed in the light most favorable to plaintiffs, the non-moving parties.

2. Paragraph 98 of Local 150's Rule 56.1(a)(3) statement of undisputed material facts, which states that "[a]ll ambulatory picketing, including that involving Ms. Tammy Barker, ceased" after the labor dispute was settled. Plaintiffs object on relevancy and hearsay grounds. This objection is posed even though in answering Local 150's third set of interrogatories plaintiffs admitted "that since June 2009 they are unaware that Local 150 or persons associated with it followed either Tammy Barker or Timothy Barker." The fact is clearly relevant to the viability of plaintiff's request to enjoin the picketing and is not hearsay but rather is based on the personal knowledge of Local 150 President James M. Sweeney, which he certified under penalty of perjury to be true in his supplemental certification. Based on these circumstances, this material fact is deemed admitted. See N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.")

3. Count I also includes class allegations but plaintiffs were unsuccessful in certifying a class and have not attempted to re-certify a class.

4. The specific evidence referred to in the materials filed in support of and in opposition to the motion for summary judgment is with respect to the data on the 2004 CDs and not on the microfiche or the 2005 CDs. Consequently, hereafter the court refers only to the 2004 CDs only.

5. On August 11, 2009, the Seventh Circuit denied plaintiffs' Federal Rule of Civil Procedure 23(f) petition for leave to appeal this court's order denying class certification.

6. There is evidence that the asterisk next to Timothy Barker's name as registered owner of the vehicles denotes that there are multiple owners. However, nothing in the motor vehicle record reveals the name or any personal information of the unlisted owners.

7. Plaintiffs also argue that other current or former employees of Local 150 have made prior statements against their penal interest indicating that they ran license plates, including those of the Barkers, on behalf of Local 150. Plaintiffs argue that such prior statements are admissible under Rules 804(b)(3) and 804(b)(6). However, plaintiffs fail to direct the court to any witnesses' prior statements specifically indicating that they ran the Barker's license plates. As a result, there are no relevant hearsay statements to admit under these Rules.

8. Local 150 also argues that Goldman was not properly disclosed as a fact witness because she was not disclosed until March 31, 2010, the day before discovery closed in this case. As a result, Local 150 maintains that her affidavit is not properly before the court. Local 150 posed an objection to

this late disclosure at a discovery hearing before the Magistrate Judge on April 8, 2010, and indicated that an appropriate motion would be filed. No such motion was filed. Due to the lack of a contemporaneous Rule 37(c) motion, the court was not able to remedy any prejudice and plaintiffs were not able to argue that the late disclosure was harmless. As a result, Local 150 will not be heard to complain of the late disclosure at this juncture.

9. These hearsay statements would presumably also be admissible under Rule 804(b)(3).

10. The other cases cited by plaintiffs applying an exception to Garmon preemption are similarly inapposite. See Loewen Group Int'l., Inc. v. Haberichter, 65 F.3d 1417, 1422 (7th Cir. 1995) (holding that breach of contract claim not pre-empted under § 301 of the NLRA); Keehr v. Consol. Freightways of Dela., Inc., 825 F.2d 133, 137 (7th Cir. 1987) (holding that employee's claim for IIED based on supervisor's comment about employee's wife's sexual promiscuity not pre-empted by NLRA); Veal v. Kerr-McGee Coal Corp., 682 F. Supp. 957, 963 (S.D. Ill. 1988) (finding plaintiff's IIED claim based on employer's vigorous and malicious harassment of plaintiff for joining the union and filing a workman's compensation claim not pre-empted by NLRA).

11. Local 150 also requests that sanctions be imposed against Merryman for filing a false affidavit. More specifically, Local 150 maintains that Merryman stated that Local 150 "agents" came to her home in August 2006 and later admitted at her deposition that it was just one agent. The court fails to see the advantage Merryman would have gained in deliberately misrepresenting the number of agents that came to her house. With regard to her DPPA claim, the evidence that is lacking is that Local 150 agents learned her address by obtaining her personal information from a motor vehicle record, not how many agents came to her house as a result of learning that information. In addition, when Merryman acknowledged the error in her affidavit, she explained that "she must have missed it." The court declines Local 150's invitation to impose sanctions on Merryman for this insignificant error.