UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammy Barker, Timothy Robert Barker, and Melisa Merryman, on behalf of themselves and on behalf of those similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 08 C 50015 ) |
| v. | ) Judge Kapala ) Magistrate Judge Mahoney |
| Local 150, International Union of Operating Engineers, AFL-CIO, | ) ) Trial by Jury Demanded ) |
| Defendant. | ) |

**PLAINTIFFS' RESPONSE TO LOCAL 150'S MOTION FOR RECONSIDERATION**

Now comes Tammy Barker and Timothy Barker, by and through their counsel, the Law Offices of Robert T. Hanlon & Associates P.C. and Ungaretti & Harris with their Response to Local 150's Motion for Reconsideration and state as follows:

**Introduction**

Local 150 asks this Court to reconsider its ruling on Local 150's summary judgment motion as to Timothy Barker's claim on the basis that Plaintiffs' evidence was not disclosed to them until the day before the close of discovery, namely the affidavit of Casey Goldman as well as the Court's evidentiary decision in that regard. However, the affidavit of Casey Goldman was timely tendered to Local 150, and Local 150 could have pursued discovery related to Goldman in this case, but elected not to pursue that discovery. Rather, its defense strategy was apparently designed to focus its energy on having the witnesses exercise their Fifth Amendment privilege. Moreover, Plaintiffs had the testimony of Mr. Quigley, up to the date of his deposition (3/24/2010) in which he started exercising his Fifth Amendment privilege. See Exhibit A. The same was true of Mrs. Soria, until the time of her deposition when Ms. Soria commenced exercising her Fifth Amendment privilege. See Exhibit B. Likewise, Mr. James Schweihs

exercised his Fifth Amendment privilege on March 30, 2010. Had Mr. Schweihs testified to the truth of the matter, this Court would be hearing the pleas that his deposition was too late in the discovery process. Nevertheless, Plaintiffs counsel had not anticipated the epidemic of individuals exercising the Fifth Amendment until it had taken the depositions of the Local 150's employees. Both Plaintiffs' counsel and Local 150's counsel had the affidavit of Linda Soria with Ms. Goldman's notary stamp and full name early on in this case. Ms. Goldman's affidavit was quickly produced to the Defendants after it was obtained by Plaintiffs and timely tendered to Local 150. See Declaration of R. Hanlon. In fact, throughout discovery, the following current or former employees of Local 150 exercised their Fifth Amendment privilege in depositions in this case: Mike April, Charles August, Steven Cisco, Ryan Drew, Joe Farrell, Joseph Ward, James Miller, Stan Simrayh, James Schweihs, and Mr. Quigley. See Group Exhibit C. Further, there was repeated resistance in the scheduling of depositions by witnesses (current and former employees of Local 150) and their counsels. In fact, numerous motions to compel testimony were filed in this case which any casual review of the general docket reveals.

In direct response to the delays and refusal by Local 150 to provide discovery in this case, as well as the numerous depositions in which the Fifth Amendment privilege was asserted, Plaintiffs' counsel elected to amend its Rule 26(a) disclosures to reflect the notaries who were present when witnesses had provided earlier testimony. Plaintiffs did this to preserve the statements the actual witnesses made against their penal and pecuniary interest which were made in the affidavits disclosed to Local 150 during the course of this case. Depositions revealed to Plaintiffs that affidavits by notaries would be required because deponents were pleading the Fifth. Unfortunately, due to deponents' resistance to scheduling the depositions, Plaintiffs realized this right before the discovery cut off. For example, the Jim Schweihs deposition took place two days before discovery cut off on March 30, 2010. He pled the Fifth the entire time.

The Goldman affidavit only became necessary due to Local 150's obstructionist tactics and the deponents' refusal to testify.

Moreover, the assertion of Fifth Amendment privileges by the current and former employees of the Defendant that have collectively formed a code of silence as predicted by Local 150's oath of Secrecy, "Our secrets, I will Keep" to seek the testimony of the notaries necessitated a response to the ongoing discovery up to the close of discovery. See Group Exhibit C and charge by Local 150 General Counsel Dale Pierson against witness Joseph Ward shown in Exhibit D.

Finally and most significantly, the Affidavit of Linda Soria is and was admissible in connection with the summary judgment motion in spite of the fact that Ms. Soria invoked her Fifth Amendment right at her later deposition.

## Argument

Local 150 asks this Court to reconsider its ruling because the Plaintiffs' disclosure of the Goldman affidavit constitutes a discovery violation. Local 150's Motion is based on an argument that was not fully developed in Local 150's earlier briefs. *But see Argyropoulos v. City of Alton*, 539 F.3d 724 (7th Cir. 2008) (underdeveloped arguments are waived); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (same). More specifically, Local 150's Motion and Memorandum for Rule 11 Sanctions and its Motion and Memorandum seeking Summary Judgment argued that the Goldman Affidavit was not admissible. See Dock. 263, 272. However, nowhere in Local 150's Rule 11 letter or Rule 11 sanctions motion did Local 150 state why Local 150 believed the Goldman Affidavit was inadmissible. (See Dock. 263) Similarly, Local 150 failed to identify any discovery error or violation as the basis for its conclusion that the Goldman Affidavit was inadmissible in its opening brief in connection with its motion for Summary Judgment. *See* Local 150 Brief (Dkt. No. 272). Local 150 left Plaintiffs' counsel guessing at the purported basis for Local 150's

inadmissibility claim regarding the Goldman Affidavit. Although Local 150 complains that the Plaintiffs sandbagged the Defendant, Local 150 has taken and continues to take unfair advantage by raising arguments for the first time in its reply briefs or in connection with its motion to reconsider. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Baer-Stefanov v. White*, No. 08 C 3886 (N.D. Ill. Oct. 22, 2009) ("As an initial matter, the defendant's failure to raise this argument in his opening motion means it is waived.") (citing *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (holding that arguments raised for the first time in a reply brief are considered waived)).

Clearly, Local 150 was aware of the Goldman and Soria Affidavits when it brought its Rule 11 Sanctions motion. Later when Local 150 filed its motion for Summary Judgment it failed to complain about the submission of the Goldman Affidavit as a discovery violation and raised the issue for the first time in its reply. Local 150 attempted to tarnish Plaintiffs' counsel in this case by filing its Rule 11 Sanctions Motion when it knew it actually engaged in the conduct that its secrecy oath was designed to conceal; that it ran plates including that of Barkers, and wanted to sandbag the plaintiffs in raising arguments in its reply that had not been raised earlier

In the earlier pleadings related to this motion to reconsider, Local 150 failed to develop any argument related to discovery violations as the basis for inadmissibility. This left the Plaintiffs in a position of inferring what Local 150 meant by the inadmissibility of the Goldman affidavit. Moreover, when Plaintiffs obtained the Goldman Affidaivt, they timely turned that evidence over to Local 150, before the discovery cut-off. The Goldman affidavit was executed on or around March 29, 2010. On March 30, 2010, Attorney Hanlon conducted the deposition of James Schweihs. He returned to his office late on 3/31/2010 and faxed the affidavit to Local 150 upon his return to his office.

    A.    **Plaintiffs Did Not Violate Rule 26(e)**

Rule 37 is not triggered and sanctions do not bar evidence if plaintiff complies with Rule 26(e), and supplements disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See Malozienc v. Pacific Rail Services*, 572 F. Supp. 2d 939, 943 (N.D. Ill. 2008) (denying request to sanction plaintiff where plaintiff complied with Rule 26(e), even if the disclosure did not occur until more than seven <u>months after close of discovery</u> and two weeks after defendant filed motion for summary judgment).

In this case, Plaintiffs disclosed Goldman as a witness first when Plaintiffs tendered to Local 150 the Soria Affidavit, which on its face shows that Goldman was a witness to the Soria Affidavit, and second when Plaintiffs disclosed to Local 150 the existence of the affidavit shortly after it was executed and without delay. *See* Declaration of Attorney Hanlon. Goldman executed the affidavit and when Hanlon returned from the Schweihs Deposition, he faxed a copy of the Goldman Affidavit to Local 150.

Plaintiffs learned that their Rule 26(a) disclosure was incomplete when the Plaintiffs realized that all the witnesses were pleading the Fifth, which was right before the discovery cut off. At that time, Plaintiffs immediately produced the Goldman Affidavit. There is no Rule 26(e) violation here, and therefore, Rule 37(c) is not triggered and sanctions are not warranted.

### B. Local 150's Argument Is Underdeveloped And Waived.

Local 150 comes to this Court too late with an argument predicated on a discovery dispute. Local 150 represented to this court on April 8, 2010 that it would file an appropriate motion to object to the timeliness of Plaintiffs' supplement to their Rule 26(a) disclosures. Local 150 never filed that motion and, therefore, waived its objection to the timeliness.

Moreover, Local 150 failed to develop an argument at summary judgment or in connection with Rule 11 Sanction's motion. It is in essence developing an argument for the first time in a motion to reconsider, which is too late. *See Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (*citing Brooks v. City of Chicago,* 564 F.3d 830, 833 (7th Cir.2009) ("[A]ny arguments ... raised for the first time in [a] motion to reconsider are waived.")). Arguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited. *Mungo v. Taylor,* 355 F.3d 969, 978 (7th Cir.2004). Similarly where a party fails to make an argument in its opening brief those arguments are likewise waived. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Baer-Stefanov v. White*, No. 08 C 3886 (N.D. Ill. Oct. 22, 2009) ("As an initial matter, the defendant's failure to raise this argument in his opening motion means it is waived.") (citing *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (holding that arguments raised for the first time in a reply brief are considered waived)).

In this case, Local 150 failed to develop an argument in the earlier motions and memorandum regarding any purported discovery violation. It only points to a scant record where it suggested in a reply (not in an opening brief) that this purported discovery violation makes the Goldman affidavit inadmissible. Plaintiffs' counsel sought the testimony of a vast number of individuals in this cause as referenced above. Prior to the close of discovery, Plaintiffs' counsel was under the belief that they could in fact solicit testimony from Michael Quigley to support the claims of the Plaintiffs in this case. On March 24, 2010, approximately 1 week before the close of discovery, Mr. Quigley proceeded to exercise his Fifth Amendment privilege at his deposition. Recognizing that Mr. Quigley was not going to testify as previously had been hoped, Plaintiffs sought the testimony of James Schweihs and the notaries that had notarized the various affidavits in this case (excluding current employees of Local 150). On March 30, 2010, Attorney Hanlon took the deposition of James Schweihs, in which Schweihs too exercised his Fifth Amendment privilege. Attorney Hanlon forwarded the Goldman Affidavit to Local 150 without delay.

Local 150 expend much of its resources in pursuing its hearsay arguments but only provided a brief, underdeveloped argument regarding discovery issues in its reply for summary judgment. Similarly, the arguments that comprise much of its motion to reconsider were not made at all before the motion to reconsider.

### C. Local 150 moved to take Kathryn Black's Deposition but failed to ask for Goldman's Deposition.

On April 1, 2010, the date for the close of discovery, Local 150 moved this Court for leave to take the deposition of Kathryn Black beyond the end of discovery. (Dkt. No. 230). However, Local 150 filed no such motion with respect to Ms. Goldman and did not include her in its motion to depose Ms. Black, even though Local 150 knew of the Goldman Affidavit. Local 150 could have moved to depose Ms. Goldman, as it sought to depose Ms. Black, yet, Local 150 chose not to advance or even include Ms. Goldman in its motion seeking post-discovery cut-off deposition of Ms. Black. Thus, not only could Local 150 have pursued a remedy to take the discovery deposition of witnesses they discovered towards the end of discovery, Local 150 did so, but excluded Ms. Goldman from its motion and thus waived the issue.

### D. Disclosure was Substantially Justified and Harmless to Local 150

Plaintiffs supplemented their disclosure as soon as they learned that their disclosures were incomplete. Therefore Plaintiffs did not violate Rule 26(e) and Rule 37(c) does not apply in this case. Even if there was a Rule 26(e) violation, Rule 37 (c)(1) sanctions are not warranted where the delay is substantially justified or harmless. The Seventh Circuit stated the following:

> This court has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998). However, we also have stated that "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th

> Cir.1996); *see also Salgado*, 150 F.3d at 739 (stating that a district court's ruling on a motion to exclude testimony for noncompliance with Rule 26(a) is reviewed for an abuse of discretion and "[u]nder this standard, we shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose"). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999). However, we have indicated that the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir.1995) (*citing Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir.1982)); *see also Woodworker's Supply, Inc.*, 170 F.3d at 993. (emphasis added)

*David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (affirming district courts admission of evidence where party seeking to strike evidence failed to seek continuance to obtain rebuttal evidence). None of the factors warrant exclusion of the Goldman affidavit.

The prejudice to Local 150 could have been remedied when it sought to take the deposition of Kathryn Black by also seeking to depose Goldman, but Local 150 failed to do so. Local 150's motion to take the deposition of Kathryn Black shows that it had the ability to cure any prejudice. Similarly, the Plaintiffs, without any undue delay, tendered the affidavit to Local 150 prior to discovery cut-off. Additionally, there is no likelihood of any disruption at trial because all of the witnesses with first had knowledge have exercised their Fifth Amendment Right to remain silent. And finally, there was no bad faith or willfulness in failing to disclose the affidavit before March 31, 2010. Plaintiffs did not have the affidavit until shortly after it was executed and then timely tendered it to Local 150. Similarly, Plaintiffs disclosed the Soria Affidavit in its initial Rule 26(a) disclosures. The Soria affidavit was notarized and had Ms. Goldman's notary seal and full name. Thus, Plaintiffs were aware of Ms. Goldman at the same time as Local 150. Accordingly, even if there was a Rule 26(e) violation, which there was not,

all of the factors set forth by the *David* Court militate towards the admission of the Goldman Affidavit and not its exclusion.

Additionally, this case involves the highly unusual situation where all of the individuals with knowledge of the facts exercised their Fifth Amendment Privilege. It was only at the end of discovery, faced with witnesses pleading Fifth Amendment privilege, when Attorney Hanlon sought to obtain information from the notaries, which led to the affidavit of Ms. Goldman. Plaintiffs only became aware of the potential significance of the notary of the Soria Affidavit in the last days of discovery because witnesses such as Mr. Quigley, who prior to his deposition was willing to provide information to Plaintiffs counsel, began to plead the Fifth. Likewise, Plaintiffs were anticipating the testimony of Mr. Schweihs, who ultimately exercised his Fifth Amendment privilege on March 30, 2010.

### E. Soria's October 2010 Affidavit is not a bar to Admissibility of Goldman's Affidavit

The second Soria affidavit included in Local 150's October 26, 2010 letter showed that Mrs. Soria knew that she did not have any immunity when she made the statements that Goldman referred to in her affidavit. Moreover, Soria never indicated in her October 26, 2010 affidavit that she lied in her first affidavit, ostensibly because it was true. Notably, Local 150 chose to wait nearly eight months after the close of discovery to use a new affidavit of a witness who previously pled the Fifth to attempt to sanction the Plaintiffs' counsel. However, even though Plaintiffs timely disclosed the Goldman affidavit shortly after its execution and timely disclosed it to Local 150 within the discovery period, Local 150 argues that Plaintiffs should be barred from doing so and asks the Court to create a double standard.

### F. Inferences from Assertions of Fifth Amendment Privilege.

In this case, as noted above, the Local 150's business agents identified in Linda Soria's Affidavit invoked their Fifth Amendment Privilege when asked about their conduct related to obtaining,

using or disclosing personal information from motor vehicle records. They have not denied that they in fact obtained, used or disclosed personal information from motor vehicle records. Thus, the Plaintiffs contend that they enjoy the benefit of the implication that the Defendant's agents engaged in the conduct for which they have elected to exercise the Fifth Amendment privilege. See Exhibits A, B & C and see C & W Construction Company v. Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO 108 F.R.D. 389.

The Court addressed the issue of undertaking an inference related to a Fifth Amendment assertion in *Baxter v. Palmigiano*. There, the Court found that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment "does not preclude the inference where the privilege is claimed by a party to a Civil cause." 425 U.S. 308, 96 S.Ct. 1551. In this case the Defendant is a labor union comprised of its members and agents, which have relied upon the Fifth Amendment Privilege.

Furthermore, *Daniels v. Pipefitters' Ass'n Local Union No. 597,* 983 F.2d 800, 802 (7th Cir. 1993), affirms that "Most lower courts read *Baxter* as permitting an adverse inference to be drawn from a party's invocation of the privilege." It references *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54, 44 S.Ct. 54, 55-56, 68 L.Ed. 221 (1923,) which states that "Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character." In *United States v. Hale*, 422 U.S. 171, 176 (1975), the Court discusses the probative value of silence. There the Court stated:

> "silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question."

*Daniels* was cited in *Greviskes v. Universities Research Ass'n, Inc.* 417 F.3d 752 (7th Cir. 2005), in which Angelita Greviskes asserted her Fifth Amendment privilege to all questions asked of her regarding fraudulent faxes, despite considerable implicating evidence. Under *Greviskes* "the district court is permitted to draw negative inferences from the assertion of privileges, as it did from (her) testimony."

Just as in *Greviskes* and *Daniels v. Pipefitters' Ass'n Local Union No. 597,* numerous current and former Business Agents of Local 150 have invoked their Fifth Amendment rights in this civil matter. Just as in *Bilokumsky*, their silence forms a basis for evidence. Since these witnesses are relying upon their Fifth Amendment right to nearly all questions, even the most innocuous, the rationale used in *Greviskes* requires that serious adverse inferences can be made from their silence.

In this case, Local 150 required its members to take the oath of Our Secrets I will Keep, and based upon that compelling oath the witnesses who had knowledge of the events have subsequently exercised the Fifth Amendment privilege. Accordingly, the close connection of the witnesses to the matters in controversy here and their invocation of the Fifth Amendment privilege allows an adverse inference to be drawn from their silence, based on *Greviskes* and *Daniels*. Since there is other evidence that speaks against these witnesses, their unwillingness to testify should compromise their credibility.

## Conclusion

For the reasons set forth above, Plaintiffs respectfully request that this Court deny the Motion of Local 150 to reconsider its ruling with respect to the denial of Local 150's summary

judgment on the claims of Timothy Barker and deny Local 150's request to bar timely disclosed Goldman Affidavit.

Dated: May 2, 2011

Respectfully submitted,

  /s/ Robert T. Hanlon
One of the Attorneys for Plaintiffs
Dean J. Polales (ARDC # 3125505)
Michael A. Ficaro (ARDC # 798738)
Timothy E. Horton (ARDC # 6277683)
Nile N. Park (ARDC #6297375)
UNGARETTI & HARRIS, LLP
3500 Three First National Plaza
Chicago, Illinois 60602
(312) 977-4400

Robert T. Hanlon (ARDC # 6286331)
Law Offices of Robert T. Hanlon & Assoc., P.C.
14212 Washington Street, #200
Woodstock, Illinois 60098

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Robert T. Hanlon, an attorney, certify that I caused a true and correct copy of **Response to Local 150's Motion for Reconsideration** to be served electronically pursuant to ECF upon the following on May 2, 2011:

> Dale D. Pierson
> Bryan P. Diemer
> Lauren S. Shapiro
> Local 150 Legal Department
> 6140 Joliet Road
> Countryside, IL 60525

/s/ Robert T. Hanlon
One of Plaintiffs' Attorneys

1916241-1