# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50015 | **DATE** | 12/19/2011 |
| **CASE TITLE** | Barker, et al. vs. International Union of Operating Engineers Local 150 | | |

**DOCKET ENTRY TEXT:**

Local 150's motion to reconsider [316] is granted. Local 150 is now granted summary judgment on all claims. All other pending motions are denied as moot. This case is closed.

■ [ For further details see text below.]  Docketing to mail notices.

## STATEMENT

This court previously granted summary judgment in favor of Local 150 on all counts except for Timothy Barker's claim in count I brought under the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. §§ 2721-25. In denying summary judgment on that claim, this court held that there was a genuine issue of material fact as to whether Local 150 obtained Timothy Barker's personal information from a motor vehicle record in violation of the DPPA. The court found evidence in support of that claim in the form of notary public Casey Goldman's testimony that on January 11, 2008, she heard Linda Soria say that she ran the Barkers' plate when Soria worked for Local 150. The court determined that this hearsay statement would be admissible at trial under Federal Rule of Evidence 804(b)(3) as a statement against Soria's interest.

Local 150 filed a motion to reconsider which led this court to order supplemental briefing on the admissibility of the hearsay statement. The matter has been fully briefed. The court now concludes that Soria's hearsay statements are inadmissible and grants Local 150 summary judgment on the only remaining claim.

### I. BACKGROUND

As noted in this court's previous order, in her January 11, 2008 affidavit, Soria stated that she provided personal information associated with various license plate numbers to Local 150 business agents. However, in that affidavit, Soria did not identify any particular license plate that she ran or any individual whose personal information she obtained.

At her May 28, 2008 deposition, Soria refused to answer questions concerning this case asserting her Fifth Amendment privilege not to incriminate herself. Soria did answer some general background questions, but no questions pertinent to this case.

On July 9, 2009, this court held that "a private right of action does not lie under § 2724(a) [of the DPPA] based on knowing obtainment of a 'motor vehicle record' for a purpose not permitted by the DPPA absent the additional showing that 'personal information' was obtained from that record." Barker v. Int'l Union of Operating Eng'rs, Local 150, 641 F. Supp. 2d 698, 706 (N.D. Ill. 2009). The court explained that "simply obtaining the CD containing the motor vehicle records is not equivalent to obtaining the personal information contained therein."

**STATEMENT**

Id. at 705-06. Consequently, the parties were alerted that a private right of action under the DPPA exists only for the improper acquisition of personal information "from" motor vehicle records, not for the acquisition of a bulk database of such records.

On March 30, 2010, Casey Goldman executed an affidavit stating that she and plaintiffs' counsel Robert Hanlon were present when Soria executed her January 11, 2008 affidavit. Though not included in Soria's affidavit of January 11, 2008, Goldman swore that on that date Soria orally stated: "I ran the Barker's license plate." Goldman also swore that Soria stated that she, Soria, was questioned by an FBI agent about her work experience at Local 150. According to Goldman, Soria said that she wanted to help "because I know what kind of people they are, there [sic] evil."

On October 11, 2010, Soria executed another affidavit in which she swore that plaintiffs' counsel, Robert Hanlon, told her several times before she signed her January 11, 2008 affidavit that she would not get in any legal trouble by signing the affidavit. Soria also swore that Hanlon advised her that he could and would get her immunity from any legal responsibilities if she signed the affidavit.

On November 8, 2010, Goldman executed yet another affidavit in which she swore that she, Hanlon, and another attorney traveled to Soria's house again on March 21, 2008, and the other attorney questioned Soria about running license plates while she was employed at Local 150. Soria acknowledged signing her January 11, 2008 affidavit, said that she was not promised anything in return, and that, "it's all true." Goldman also swore that Soria once again stated that she ran the Barkers' plate.

In a declaration dated November 8, 2010, Hanlon swore to the following. He did not promise Soria immunity prior to her signing her January 11, 2008 affidavit. On January 11, 2008, Soria mentioned that she had already been contacted by an FBI agent. Hanlon, Goldman, and attorney Dean Polales met with Soria again on March 21, 2010. Polales asked Soria a number of questions related to the case. At the conclusion of the March 21, 2010 meeting, Soria asked Hanlon if he was going to bring a lawsuit against her. Hanlon told Soria that he had no present intention of seeking a remedy against her.

In its previous order denying Local 150 summary judgment on Timothy Barker's DPPA claim, this court held that Soria's hearsay statement, submitted through Goldman's affidavit, that she ran the Barkers' plate was admissible as a statement against interest under Federal Rule of Evidence 804(b)(3). The court determined that the two foundational requirements of Rule 804(b)(3) were satisfied because it was undisputed that Soria was unavailable to testify at trial and that Soria's affidavit of October 11, 2010 contained sufficient indicia that she was aware of some potential for penalties or liability at the time she executed her January 11, 2008 affidavit. Specifically, in her affidavit of October 11, 2010, Soria stated that Hanlon told her several times before she executed her January 11, 2008 affidavit that she would not get in any legal trouble by signing the affidavit, thereby indicating that Soria was hesitant to make the statements. Also, although Hanlon disputes it, Soria also indicated that Hanlon promised her immunity from any legal trouble. Thus, this court held that on January 11, 2008, Soria was on notice of potential legal consequences as a result of her statements.

After Local 150 filed its motion to reconsider, the court ordered supplemental briefing and explained as follows:

> [T]he court suspects that Soria's October 11, 2010 affidavit was not properly before the court because she had previously invoked her Fifth Amendment rights preventing her deposition and disqualifying her from testifying at trial. See Laborers' Pension Fund v. Surface Dimensions, Inc., No. 07 C 3860, 2011 WL 841515, at *5 (N.D. Ill. Mar. 8, 2011) ("The court may strike an affidavit (or paragraphs thereof) in support of or in opposition to a motion for summary judgment when the affidavit seeks to establish facts about which the affiant refused to testify pursuant to the Fifth Amendment privilege against self-incrimination."). Such an affidavit is not properly considered for summary judgment purposes because the Fifth Amendment privilege "cannot be invoked as

a shield to oppose depositions while discarding it for the limited purpose of making statements to support [or oppose] a summary judgment motion." In re Edmond, 934 F.2d 1304, 1308 (4th Cir. 1991); see also United States v. Parcels of Land, 903 F.2d 36, 43-46 (1st Cir. 1990) (upholding district court's decision to strike claimant's affidavit offered in opposition to motion for summary judgment after claimant invoked Fifth Amendment privilege and refused to answer deposition questions).

. . . Under these circumstances, based on the above cited authority, it seems that Soria's October 11, 2010 affidavit cannot be considered at the summary judgment stage. Without the October 11, 2010 affidavit –and the testimony it represents– there would be no evidence establishing that Soria knew her statement was against her penal or civil interest at the time she made it, an element necessary to admit her hearsay statement to Goldman –that she ran Barker's license plate– under Rule 804(b)(3). Without admissible evidence that Soria said she ran Barker's license plate while employed at Local 150, the record would be devoid of any evidence that Local 150 obtained Timothy Barker's personal information from a motor vehicle record in violation of the DPPA. Under those circumstances, summary judgment for Local 150 on this last pending claim would be appropriate.

## II. ANALYSIS

Not surprisingly, in its supplemental brief, Local 150 agrees with this court's suggestion that Soria's October 11, 2010 affidavit was not properly before the court at summary judgment due to her previous invocation of her Fifth Amendment privilege. Consequently, Local 150 maintains that there is insufficient foundation to admit Soria's hearsay statements at trial under Rule 804(b)(3) and no genuine issue of material fact exists as to Timothy Barker's DPPA claim. Plaintiffs, on the other hand, advance four arguments in support of the admissibility of Soria's hearsay statements under Rule 804(b)(3): (1) the sword and shield rule should not be applied in this case because the purpose of the rule is not served, (2) only those portions of Soria's October 11, 2010 affidavit about which she refused to testify at her deposition should be stricken, (3) evidence other than that contained in Soria's October 11, 2010 affidavit shows that Soria's statements were against her interest, and (4) an adverse inference should be drawn from the assertion of the Fifth Amendment privilege and that inference precludes summary judgment. The court will address each argument in turn.

### A. Sword and Shield Rule

First, plaintiffs argue that applying the so-called sword and shield rule to strike Soria's October 11, 2010 affidavit does not advance the purpose of that rule. Plaintiff suggests that while Soria asserted her Fifth Amendment privilege at Local 150's behest and that it was Local 150 that procured her October 11, 2010 affidavit, Local 150 is not the party seeking to utilize that affidavit. Plaintiffs conclude that, because they had nothing to do with Soria's refusal to testify at her deposition or the procurement of her October 11, 2010 affidavit, the sword and shield rule should not hinder them.

Plaintiffs' argument assumes that Soria's interests are somehow aligned with Local 150's, a proposition that is far from clear in view of Soria's purported opinion that "there [sic] evil" and her apparent untimely separation from her long-time employment with the union. In any event, the sword and shield rule "is grounded in the reasoning that it is unfair to invoke the Fifth Amendment to avoid answering an opponent's inquiries during discovery, only to surprise the other side with favorable, self-serving testimony at the summary judgment stage." Surface Dimensions, Inc., 2011 WL 841515, at *5. Under these circumstances, regardless of who benefits by the testimony, it is not fair to admit Soria's hearsay statements within her October 11, 2010 affidavit for any purpose, including to determine the admissibility of Soria's other hearsay statements under Federal Rule of Evidence 104(a), when neither party has had the opportunity to depose her and to flesh out the circumstances of her account and her motivations. Moreover, plaintiff has not advanced authority to convince this court that the sword and

shield rule can be ignored in a case where a witnesses' loyalties change merely because the rule's purpose is no longer directly met. Thus, Soria's October 11, 2010 affidavit is stricken and cannot be used to establish the foundation for admitting Soria's hearsay statements at trial under Rule 804(b)(3).

### B. Limited Application of the Sword and Shield Rule

Plaintiffs' second argument is that the sword and shield rule should only be applied to strike those portions of Soria's January 11, 2008 affidavit that speak to the subject matter on which Soria refused to testify during her deposition. Plaintiffs maintain that, at her deposition, Soria was not asked questions about the circumstances surrounding the execution of her January 11, 2008 affidavit, and therefore she did not refuse to answer such questions. The court disagrees.

At her May 28, 2008 deposition, Soria was asked whether an attorney talked to her about her having previously signed an affidavit and she responded, "I respectfully refuse to testify based on my privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution." When asked whether she would even identify her previously executed affidavit, Soria gave the same response. Hence, it is clear that Soria was refusing to answer any questions concerning her January 11, 2008 affidavit, including the circumstances surrounding its execution. Thus, plaintiffs' second argument also lacks merit.

### C. Other Evidence that Soria Knew her Statements Were Against her Interest

Plaintiffs' third argument is that even if Soria's October 11, 2010 affidavit is stricken, other evidence shows that Soria knew her statements were against her interest at the time she made them. Specifically, plaintiffs maintain that (1) the caption on Soria's January 11, 2008 affidavit gave her notice that a lawsuit would be filed and that her affidavit would be a key piece of evidence, (2) the complaint filed in this case gave Soria further notice that the lawsuit was related to her activity while employed at Local 150, (3) Goldman's March 30, 2010 affidavit indicates that on January 11, 2008 Soria said she had been interviewed by an FBI agent, and (4) Hanlon's November 8, 2010 declaration indicates that on March 21, 2008, Soria asked him if he was going to file a lawsuit against her.

Rule 804(b)(3) provides, in pertinent part, that an unavailable declarant's statement is not excluded by the hearsay rule if "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3). It remains undisputed that Soria is unavailable to testify at trial because she asserted her rights under the Fifth Amendment at her deposition, and neither party has indicated that they expect her to waive that right at any point in the future. What remains in dispute is whether plaintiffs can establish the second foundational requirement of Rule 804(b)(3): that a reasonable person in Soria's position would have believed at the time of her statement that she was exposing herself to civil of criminal liability. This is a question of admissibility for the court to resolve under Federal Rule of Evidence 104(a) and in making this determination, with the exception of privileges, the court is not bound by the rules of evidence. Fed. R. Civ. P. 104(a); <u>United States v. Amerson</u>, 185 F.3d 676, 692 (7th Cir. 1999) (Posner, J. dissenting) (noting that the foundation for the admission of a Rule 804(b)(3) hearsay statement can be established through the use of hearsay testimony for the purpose of a Rule 104(a) preliminary determination of admissibility).

Plaintiff has not convinced this court that the caption on Soria's January 11, 2008 affidavit or the complaint that was filed in this case put Soria on notice that her statements that she ran the Barkers' plate were against her criminal or civil interest. The caption on her affidavit indicates that a lawsuit was going to be filed against Local 150, not Soria. As for the complaint, Soria could not have read it prior to making her purported statement on January 11, 2008, because it was not filed until January 21, 2008. Moreover, there is no indication in this record that Soria ever saw the complaint before she purportedly made the same statement on March 21, 2008.

Soria's purported January 11, 2008 statement that she was interviewed by an FBI agent, as reported in

| STATEMENT |
|---|

Goldman's affidavit, is incomplete in that there is nothing indicating what was said during the interview. Consequently, the court cannot conclude that the FBI agent made Soria aware of the prohibitions within the DPPA or its civil and criminal penalties.

Although Hanlon's testimony that Soria asked him if he was going to sue her is hearsay, it would be admissible for purposes of this court's Rule 104(a) admissibility determination. See Amerson, 185 F.3d at 692. However, there are at least four problems with using this testimony to establish the foundation for a Rule 804(b)(3) statement against interest.

First, Hanlon's testimony does nothing to establish that on January 11, 2008, Soria understood that her statement that she ran the Barkers' plate exposed her to civil or criminal liability. Second, careful examination of both Goldman's affidavit of November 8, 2010 and Hanlon's declaration of the same date reveals that they collectively claim that on March 21, 2008, Soria asked the question about being sued after she said that she ran the Barkers' plate. Thus, there is doubt as to whether she came to that conclusion before making the statement. Third, Hanlon is an attorney of record for the plaintiffs in this case. Absent extraordinary circumstances or compelling reasons an attorney of record should not be called as a witness. See United States v. Britton, 289 F.3d 976, 982 (7th Cir. 2002). Fourth, and most importantly, Hanlon has not been disclosed by plaintiffs as a witness as is required under Federal Rule of Civil Procedure 26(a). Therefore, it would be at most improper, and at least unfair, to allow Hanlon to serve as a foundational witness for the admission of Soria's purported hearsay statement. For these reasons, plaintiffs have not persuaded the court that there is other admissible evidence showing that Soria's statements were made at a time when she realized she was exposing herself to civil or criminal liability.

### D. Adverse Inference

Plaintiffs' fourth argument is that an adverse inference should be drawn against Local 150 based on Soria's –as well as other current and former Local 150 employees'– assertion of the Fifth Amendment privilege in response to questions concerning Local 150's obtaining personal information from motor vehicle records. Plaintiffs maintain that the adverse inference is sufficient to create a genuine dispute of material fact precluding summary judgment. The court disagrees.

"The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized." LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 390 (7th Cir. 1995). However, an adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself to create an issue of material fact precluding summary judgment. Curtis v. M & S Petroleum, Inc., 174 F.3d 661, 674-75 (5th Cir. 1999); Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir. 1991) ("Invocation of the fifth amendment privilege did not give rise to any legally cognizable inferences sufficient to preclude entry of summary judgment. The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production."); Thompson v. City of Chi., No. 07 C 1130, 2009 WL 674353, at *3 (N.D. Ill. Mar. 12, 2009). Therefore, this court cannot accept plaintiffs' argument that an adverse inference arising from witnesses asserting their Fifth Amendment rights creates a genuine dispute of material fact precluding summary judgment.

### III. CONCLUSION

For the foregoing reasons, Local 150's Rule 54(b) motion to reconsider is granted. Local 150 is now granted summary judgment on all claims. All other pending motions are denied as moot.